UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KASHMIR GILL, Individually,

       Plaintiff,

v.                                                CASE NO. 1:19-CV-4216(ILG)(PK)

JUS BROADCASTING CORP;
JUS PUNJABI, LLC; JUS ONE, CORP;
JUS BROADCASTING CORP PVT LTD;
and PENNY SANDHU

       Defendants.

**LEGAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY PAUL BATISTA, ESQ. FROM REPRESENTING DEFENDANTS**

'

On the Brief:

       Alan R. Ackerman, Esq.
       Steven A. Jayson, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. II

FACTS ............................................................................................................................................. 1

LEGAL ANALYSIS ........................................................................................................................... 3

CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Federal Cases**

*Bd. of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) ........................ 4

*Brooks v. Knowledge Eng'g lnc.*, 1994 WL 121851, at *2 (S.D.N.Y. Apr. 7, 1994) (Sotomayor, J.) ................................................................................................................................................ 4

*Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975) ................................... 5

Cinema 5, 528 F2d at 1387 ............................................................................................................ 9

*Diversified Group, Inc. v. Daugerdas*, 139 F.Supp.2d 445,454 (S.D.N.Y.2001) ........................... 3

*Filippi v. Elmont Union Free Sch. Dist. Bd. Of Educ.*, 722 F.Supp.2d 295 (E.D.N.Y., 2010) ...... 8

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2nd Cir., 1981) ................................................... 6

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)............... 4

*Medical Capital Corp. v MRI Global Imaging, Inc.*, 27 A.D.3d 427 [2006] ................................ 8

*Merck Eprova Ag and Merck KgaA, v.Prothera, Inc.*, 670 F.Supp.2d 201, 210 (S.D.N.Y.2009) . 3

*Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) .................................................................. 4

*Reyes v. Golden Krust Caribbean Bakery, Inc.*, 2016 WL 4708953, at *8 (S.D.N.Y. Sept. 1, 2016) ................................................................................................................................................ 4

*The NCK Organization Ltd. and William E. Greene, Jr., v. Walter W. Bregman*, 542 F.2d 128, 132 (2d, Cir. 1976) ........................................................................................................................ 4

**State Cases**

*C.K. Industries Corp. v. C.M. Industries Corp.*, 623 N.Y.S.2d 410 (N.Y. App. Div., 1995)......... 7

*HRH Constr. LLC v. Palazzo*, 15 Misc 3d 1130(A) (Sup Ct., New York County 2007) ........... 8, 9

*ITAL Assocs. V. Axon*, 2016 NY Slip Op 30858(U) (N.Y. Sup. Ct., 2016).............................. 8, 9

*Little Rest Twelve, Inc. v. Zajic*, 2014 NY Slip Op 33222(U) (N.Y. Sup. Ct., 2014).................... 9

*McCutchen v. 3 Princesses & AP Trust* Dated Feb. 3, 2004, 138 A.D.3d 1223, 1226 [2016]....... 8

*McLenithan v. McLenithan*, 273 A.D.2d 757 (N.Y. App. Div., 2000) .......................................... 7

*Mediaceja v Davidov*, 119 A.D.3d 911 [2014] ................................................................................ 8

*Moran v. Hurst*, 32 A.D.3d 909 (N.Y. App. Div., 2006) ................................................................. 7

*Moray v. UFS Industries, Inc.*, 67 N.Y.S.3d 256, 156 A.D.3d 781 (2017) ..................................... 8

*Pellegrino v. Oppenheimer & Co., Inc.*, 49 A.D.3d 94, 98 [2008]) ................................................ 8

*Talansky v. Schulman*, 2 A.D.3d 355 (N.Y. App. Div., 2003) ........................................................ 7

*Tekni-Plex, Inc. v Meyner & Landis*, 89 N.Y.2d 123, 131 [1996].................................................. 8

**State Court Rules**

Comment [5] to RPC 1.8 (b) ........................................................................................................ 10

Comment 23 to RPC 1.7(b)(3) ....................................................................................................... 6

R.P.C. 1.8 (b) ................................................................................................................................. 9

RPC 1.7 ...................................................................................................................................... 5, 8

RPC 1.7(b)(3) ............................................................................................................................. 8, 9

Rule 1.7 [a] .................................................................................................................................... 9

**FACTS**

This legal memorandum is submitted in support of Plaintiff's application to disqualify Paul Batista, Esq. as attorney for all Defendants in the within action. As set forth in the Declaration of Kashmir Gill, Mr. Batista was previously counsel for Plaintiff's entity, Creative Management, Inc., has interacted with Plaintiff concerning related actions instituted by third parties against Defendant Penny Sandhu and the corporate Defendant entities in legal proceedings which are essentially identical in nature to this litigation, and offered Kashmir Gill legal advice concerning his rights and causes of action in this litigation.

Plaintiff's Complaint seeks a variety of relief stemming from an advancement of funds in excess of $2.2 million by Plaintiff to Defendants Sandhu, Jus Punjabi, LLC and Jus Broadcasting Corp for use by all Defendant entities. Defendant Sandhu promised and represented to Plaintiff that these funds would be converted into an equal ownership interest in all of the Defendant entities. Defendant Sandhu breached this promise and now denies her representation of granting Plaintiff an ownership interest in the Defendant entities. Defendant Sandhu also claims that there is no obligation to repay the monies advanced by Plaintiff, which she received and used for corporate purposes.

Kashmir Gill's Declaration delineates his involvement with Paul Batista, Esq. during Mr. Batista's representation of the Defendant entities in three separate actions. As set forth in Gill's Declaration, Mr. Batista, Defendant Sandhu and Plaintiff regularly discussed the allegations in the complaints mentioned hereinafter, formulated strategy for Defendants and interacted on a regular basis.

Batista's first representation of the Defendants occurred in the spring of 2014 when Batista filed a complaint against Get Punjabi seeking damages for slander. The second litigation, in February 2015, involved the defense of a lawsuit filed by Karl Khandalwala and his wife who sued

1

for the return of their investments and the surrender of their ownership interest in the Defendant entities to Defendant Sandhu.  Thereafter, in the early months of 2016, another former partner of Sandhu commenced a similar action. This litigation was dismissed within months of its filing. Batista did not represent Sandhu or the defendant entities after the Singh lawsuit was terminated.

Subsequently, Plaintiff's relationship with Defendant Penny Sandhu deteriorated, and he was excluded from Defendants' business.  Plaintiff demanded that Defendant Sandhu prepare the Partnership Agreement and issue Gill's ownership interest in the Defendant entities.  Defendant Sandhu refused.  Plaintiff Gill then demanded the return of his advancement of $2.2 million. Defendant Sandhu again refused.

Plaintiff Gill turned to Mr. Batista during the summer of 2017 for legal advice.  Mr. Batista was aware of Plaintiff's investment because the funds were used for business purposes and to resolve the third party litigation referenced above and in Gill's Declaration.  At a dinner meeting in New York with Batista, Plaintiff discussed his ongoing dispute with Defendant Sandhu and intricate details about the advancement of funds.  Mr. Batista expressed surprise that Plaintiff had not been issued his ownership interest in the Defendant entities.  He then offered Kashmir Gill legal advice opining that Defendant Sandhu may be liable for mail and wire fraud, a claim of ownership interest in Defendant entities, and the return of his funds.  Mr.  Batista said he could not represent Mr. Gill because of a conflict of interest and urged Mr. Gill to secure representation of another attorney.  During these conversations Gill imparted confidential information to Batista and both relied on Gill's statements of his intentions and strategy.  Batista was then aware of the strategy and confidential information of both Parties.

Following an exchange of correspondence with Sandhu, which was responded to by Batista, a four-way conference was arranged at Mr. Batista's office with Mr. Batista representing

2

the Defendant entities. At the meeting, Plaintiff's counsel, Alan R Ackerman, Esq., reminded Paul Batista, Esq. that his involvement and representation of Plaintiff's entity, Creative Management, Inc., along with legal advice given by Mr. Batista to Mr. Gill at the New York meeting, and thereafter, disqualified him from representing either party. For purposes of resolution, the meeting proceeded without Plaintiff waiving his rights.

## LEGAL ANALYSIS

Paul Batista Esq. must be disqualified from representing the Defendants herein based upon the conflict of interest which prohibits his representation of all defendants. As discussed below, New York's Rules of Professional Conduct, which Batista is bound to observe, prohibits his ongoing representation. Batista represented Penny Sandhu and the Defendant entities in three matters between 2014 and 2016. Batista represented Plaintiff's corporation, Creative Management Inc. and 2017. Batista also provided legal advice to plaintiff on this litigation in the summer of 2017.

It is undisputed that the relationship between Batista and Gill constitutes an attorney-client relationship. The creation of an attorney-client relationship is dependent upon the belief by the client that he has consulting with an attorney for the purpose of obtaining legal advice. See *Diversified Group, Inc. v. Daugerdas*, 139 F.Supp.2d 445, 454 (S.D.N.Y.2001). This relationship is not dependent upon a written retainer agreement. In the matter of *Merck Eprova Ag and Merck KgaA, v.Prothera, Inc.*, 670 F.Supp.2d 201, 210 (S.D.N.Y.2009), the Court set forth six factors to be considered in determining whether or not an attorney-client relationship was created.

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in one aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of [the] litigation in order to

3

>protect another (or a) client's interest; 6) whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

Plaintiff acknowledges that there was no written agreement nor fee paid by Gill to Batista for the advice which he gave to Plaintiff about his claims against defendants in this litigation. However, the ongoing and informal relationship between the two placed Batista on notice that Gill was requesting legal advice against claims which he had against Sandhu and the Defendant entities. Batista willingly rendered legal advice to Gill.

Disqualification of an attorney is solely within the Court's discretion. See *Brooks v. Knowledge Eng'g lnc.*, 1994 WL 121851, at *2 (S.D.N.Y. Apr. 7, 1994) (Sotomayor, J.). See also *Reyes v. Golden Krust Caribbean Bakery, Inc.*, 2016 WL 4708953, at *8 (S.D.N.Y. Sept. 1, 2016) (disqualification motions "are 'committed to the sound discretion of the district court' ") (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)). The authority of the federal district courts to disqualify attorneys "derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

New York courts have long held that "… for attorney disqualification to be appropriate, see note 1 supra, matters within the pending suit must be "substantially related" to the matters involved in the prior representation. Judge Weinfeld's decision in *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268-69 (S.D.N.Y.1953), is oft-cited for this proposition." See *The NCK Organization Ltd. and William E. Greene, Jr., v. Walter W. Bregman*, 542 F.2d 128, 132 (2d, Cir. 1976). Therein, the Court upheld the disqualification of the attorney who was the recipient of the confidential information and held that the attorney is presumed to possess the confidential information resulting from the conversations and representation. In its well-reasoned decision, the Court stated: "… It may be presumed that Randall possessed confidences of his client ORG, and

4

the possibility that breach of these confidences was committed by Randall is sufficient to make disqualification a necessary and desirable remedy "to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information. *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975)."

Herein, the conversations were not a casual exchange of requests for assistance. Plaintiff consulted with Batista seeking his legal advice. Batista advised Gill of his rights and remedies. Gill conveyed the detailed history of his dealings with Penny Sandhu, from the inception of the relationship thru the ongoing stream of monetary advances. There were discussions surrounding the circumstances of the requests by Sandhu, the thought processes of Gill and his ultimate decision to tender the funds. Batista did not listen as a friend. If so, he would have stopped Gill and stated that he represented Sandhu and the Defendant entities. Further discussions may jeopardize both Batista and Gill's rights. Instead Batista listened to Gill for an extended period of time and then gave legal advice. The RPCs strictly prohibit this type of behavior. Now, Batista knows Gill's strategy, litigation strengths and weaknesses, and can formulate a defense which he would not have been able to do with Gill imparting this information and Batista providing legal advice. This Court must disqualify Paul Batista, Esq. based upon his actions.

Attorney conflicts of interest are governed by New York Rules of Professional Conduct 1.7 ("RPC 1.7"). CONFLICT OF INTEREST: CURRENT CLIENTS

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
> (1) the representation will involve the lawyer in representing differing interests; or
> (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

5

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

The facts herein represent the classic example of a conflict of interest. Batista is (1) representing one client against another; (3) the allegations are in the same litigation and (4) Batista has not sought or obtained a waiver of the conflict in writing. In fact, his actions bespeak an attorney who ignores his ethical responsibility. The language is clear regarding disqualifying an attorney due to a conflict. This litigation requires Mr. Batista to decline representation of both Plaintiff and Defendants. He has interacted with both concerning the issues involved. Batista has a non-waivable conflict in representing any party to this action.

The comments to RPC 1.7(b) (3) serve only to strengthen the Court's intent to avoid attorney conflicts between parties. It states "[23] Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent." (Comment 23 to RPC 1.7(b)(3)). The overarching theme in application of this Rule is: would the disqualification "pose [] a significant risk to trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2nd Cir., 1981). The legal advice given by Batista to Gill requires Batista's disqualification. Mr. Batista knows that once a conversation with a potential client has occurred and legal advice has been given, the attorney-client relationship attaches.

Defendants will attempt to distinguish Plaintiff from his company, and that this distinction should not disqualify Mr. Batista, Defendants are wrong. The scope of the engagement between Plaintiff's corporation included discussions beyond the issues involved in that that litigation. It included discussions about Plaintiff's Investment in the Defendant Entities and His Dispute with

6

Sandhu. Mr. Batista and Gill had continual contact regarding legal matters of the Defendants. (Declaration of Kashmir Gill ¶4, 5, 10). It was Gill, in his capacity as business advisor and partial owner of Defendants, who retained Mr. Batista as Defendants attorney on other matters. (Declaration of Kashmir Gill ¶4, 5, 10). However, as attested by Gill, Mr. Batista's relationship extended to Gill personally. (Declaration of Kashmir Gill ¶14, 15). Mr. Batista heard Gill's description of his investment and ownership issues with Sandhu and the Defendant entities, including asking questions about the matter.

The Court held in *C.K. Industries Corp. v. C.M. Industries Corp.*, 623 N.Y.S.2d 410, 412 (N.Y. App. Div., 1995), "[s]ince *formality is not essential to the formation of the contract*, it is necessary to look to the words and actions of the parties to ascertain if an attorney-client relationship was formed [citation omitted]." (emphasis added). The informality of the formation of an attorney-client relationship is long established in New York law. (*see McLenithan v. McLenithan*, 273 A.D.2d 757, 759 (N.Y. App. Div., 2000); see also *Talansky v. Schulman*, 2 A.D.3d 355, 358 (N.Y. App. Div., 2003); *see also Moran v. Hurst*, 32 A.D.3d 909, 911 (N.Y. App. Div., 2006) "**an attorney-client relationship does not depend on the existence of a formal retainer agreement or upon payment**." (emphasis added).

It was not until after Gill told Mr. Batista all of his issues with the Defendants, and his likelihood of filing suit, and legal advice given by Batista concerning claims against Sandhu and the Defendant entities did Mr. Batista mention that he could not represent Gill. Mr. Batista leveraged this ambiguity to learn information that would otherwise be protected by attorney-client privilege.

A party seeking to disqualify an attorney or a law firm for an opposing party on the ground of conflict of interest has the burden of demonstrating (1) the existence of a prior attorney-client

7

relationship between the moving party and opposing counsel, (2) that the matters involved in both representations are substantially related, and (3) that the interests of the present client and former client are materially adverse.  See *Moray v. UFS Industries, Inc.*, 67 N.Y.S.3d 256, 156 A.D.3d 781 (2017); Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.10; *Tekni-Plex, Inc. v Meyner & Landis*, 89 N.Y.2d 123, 131 [1996]; *Mediaceja v Davidov*, 119 A.D.3d 911 [2014]; *Medical Capital Corp. v MRI Global Imaging, Inc.*, 27 A.D.3d 427 [2006]). When the moving party is able to demonstrate each of these three factors, an irrebuttable presumption of disqualification follows (see *McCutchen v. 3 Princesses & AP Trust* Dated Feb. 3, 2004, 138 A.D.3d 1223, 1226 [2016]; *Pellegrino v. Oppenheimer & Co., Inc.*, 49 A.D.3d 94, 98 [2008]).

The District Court for the Eastern District of New York was required to rule on this issue in *Filippi v. Elmont Union Free Sch. Dist. Bd. Of Educ.*, 722 F.Supp.2d 295, 310-311 (E.D.N.Y., 2010). The Court held the attorney should be disqualified under RPC 1.7(b)(3). (*Id*. 310). In ruling in favor of disqualification the Court found that the attorney ". . . stands on both sides of this litigation. . .. When such a situation is present and counsel's clients stand on both sides of the same litigation, the conflict is non-waivable under Rule 1.7 ." (*Id*.). However, even if such a conflict did not exist, the Court would still disqualify the attorney as there was not "informed, written consent, by [one of the parties]." (*Id*.). As described, *supra*, both situations are present in this matter. Mr. Batista must be disqualified.

In *ITAL Assocs. V. Axon*, 2016 NY Slip Op 30858(U), 12-13 (N.Y. Sup. Ct., 2016) the Court quoted *HRH Constr. LLC v. Palazzo*, 15 Misc 3d 1130(A) (Sup Ct., New York County 2007) that " '[A]dverse representation is prima facie improper. . . and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation' (*HRH Constr. LLC v. Palazzo*, 15 Misc 3d 1130(A) [Sup Ct,

8

New York County 2007] [emphasis in text; citation omitted]." The Court continued by holding that "'[A]ttorneys have a responsibility to avoid not only the fact, but even the appearance, of representing conflicting interests.'" (*HRH Const.*, 15 Misc 3d 1130(A) at 3-4, quoting Cinema 5, 528 F2d at 1387) As the lawyer who would sue his own client hoping to balance competing interests is treading on thin ice, the burden he carries is so heavy that it will be rarely met." (*Id*. at 13). This is Mr. Batista's issue. He is straddling the line in representing one client against another, and he cannot waive that conflict. Therefore, Mr. Batista must be disqualified.

In *Little Rest Twelve, Inc. v. Zajic*, 2014 NY Slip Op 33222(U), *3 (N.Y. Sup. Ct., 2014), the Court restated the District Court's ruling in *Filippi* that "[t]he Rules of Professional Conduct prohibit an attorney from representing clients with differing interests, absent a waiver by each affected client. (Rule 1.7 [a] [1] [22 NYCRR 1200.0].)." It continued with holding in *Filippi* that "[t]he Rules do not, however, permit waiver where the conflict involves 'the assertion of a claim by one client against another.'" (Rule 1.7 [b] [3] . [22 NYCRR 1200.0].)." (*Id*.). In disqualifying the Plaintiff's law firm, the Court held that

> service of the [additional] complaint created adverse interests on the part of Gusrae Kaplan's clients - plaintiff LR12 and the attorneys from its firm. The indemnification claim sets up an unwaivable conflict because, if the individual Gusrae Kaplan attorneys (as third-party defendants) were obligated to indemnify Zajic and the Kays (as third-party plaintiffs), the Gusrae Kaplan firm (as counsel for its own attorneys) would have the incentive to achieve as limited as possible a recovery on behalf of LR12, its other client in the action.[2].

(*Id*. 3-4).

R.P.C. 1.8 (b) provides further guidance, stating "A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules." Comment [5] to RPC 1.8 (b) addresses the situation where the lawyer is information from two clients. The comment states "A

9

lawyer's use of information relating to the representation to the disadvantage of the client violates the lawyer's duty of loyalty. Paragraph (b) applies when the information is used to benefit either the lawyer or a third person, such as another client or a business associate of the lawyer, at the expense of a client."

In the matter before the Court, Mr. Batista has an adverse interest to one of his clients. Having represented both Gill and the Defendants, his incentive to achieve any outcome for his clients would be self-serving. If he loses this case, it could influence his attorney-client relationship with Gill to the detriment of the Defendants. If he is successful in the matter, it could influence his attorney-client relationship with the Defendants to the detriment of Gill. Mr. Batista cannot dutifully represent his clients as they are both Plaintiff and Defendants in this matter.

## CONCLUSION

For the above-stated reasons, the Court should grant Plaintiff's motion and disqualify Mr. Batista from serving as counsel to any parties to this litigation.

Law Offices of Alan R Ackerman<br>
Attorneys for Plaintiff<br><br>
_____<br>
Steven A. Jayson, Esq. (SJ4285)<br>
1719 Route 10 East, Suite 106<br>
Parsippany, NJ 07054<br>
(973) 898-1177 (T)<br>
(973) 898-1230 (F)<br>
sjayson@alanackermanlaw.com