UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

KASHMIR GILL,

        Plaintiff,

    v.

JUS BROADCASTING CORP.;
JUS PUNJABI, LLC; JUS ONE, CORP.;
JUS BROADCASTING CORP PVT LTD;
and PENNY SANDHU,

        Defendants.

:  Case No. 1:19 –
:  cv-04216 (ILG) (PK)

-------------------------------------------------------------x

**DECLARATION OF DEFENDANT PENNY K. SANDHU
IN OPPOSITION TO PLAINTIFF'S MOTION
<u>TO DISQUALIFY DEFENSE COUNSEL</u>**

PENNY K. SANDHU declares under penalty of perjury as follows:

1. I am one of the defendants in his action. I am the owner of all the entity defendants – Jus Broadcasting Corp., Jus Punjabi, LLC, Jus One, Corp. and Jus Broadcasting Corp PVT Ltd. (collectively, the "Jus Punjabi entities" or "Jus Punjabi"). I submit this declaration in vigorous opposition to the motion of plaintiff Kashmir Gill to disqualify Paul Batista as my attorney and the attorney for the Jus Punjabi entities. Except as otherwise specifically indicated, I have personal knowledge of the facts set forth in this declaration.

2. My key purpose in submitting this declaration is to underscore the keen importance to me and the other defendants that we continue to be represented by Mr. Batista.

3. I am a journalist by training and a broadcast entrepreneur by profession and choice. I was born in the Punjabi region of India and am a legal resident of the United States. I have lived in this country for more than 20 years.

4. Since the mid-2000s, I have conceived, founded and expanded the Jus Punjabi business. At this point, after approximately twelve years of operations, Jus Punjabi is among the largest satellite broadcasting businesses in North America serving the Indian language audience in the United States and Canada through quality news and entertainment programming.

## The Centrality of Mr. Batista's Role

5. My essential point is simple and unequivocal. *Mr. Batista, who has represented Jus Punjabi and me since 2014, is the only lawyer I trust.* Jus Punjabi and I have come to rely for years on his role as attorney, counsellor and advisor.

6. Significantly, it is Mr. Batista who has successfully represented Jus Punjabi and me in several lawsuits since 2014. Two of the lawsuits asserted absurd claims similar to those Mr. Gill has raised in the 192-paragraph Complaint he filed in this case in February 2019 in the United States District Court for the District of New Jersey. In other words, there have been claims by other individuals that they are "partners" of mine in Jus Punjabi or hold some kind of ownership or equity interest in the Jus Punjabi entities. Mr. Batista's efforts have consistently resulted in successful outcomes for the Jus Punjabi entities and for me. More specifically, not one of the two other claims, which were filed in 2015 and 2016, has resulted in the granting of any equity or any type of ownership interest in the Jus Punjabi entities to the claimants.

7. Mr. Gill, whom I met in 2010 several years after I founded Jus Punjabi and began its on-air operations in 2007, is well aware of Mr. Batista's successes for my business and me. This motion is a cynical tactical effort by Mr. Gill and his counsel to separate Jus Punjabi and me from the only lawyer we trust.

### The Details of Mr. Batista's Interactions with Mr. Gill

8. As Mr. Batista explains in greater detail in his accompanying affirmation, he first met Mr. Gill at a conference in April 2014 which I attended with Mr. Gill and Karamvir Dahiya ("Dahiya"), an inexperienced lawyer who claimed a friendship with Mr. Gill and myself. Throughout this brief declaration, I will rely on the accuracy and veracity of the far more detailed accompanying declaration of Mr. Batista, but I do stress that, when I first met Mr. Batista at Dahiya's recommendation in April 2014, Dahiya stressed that Mr. Batista was the author of a prominent legal treatise and was highly recommended as an attorney for people such as myself and their companies facing dire threats as a result of illegal conduct by others.

9. At that critical juncture – April 2014 – the business I had conceived and steadily built since the mid-2000s was under attack by a group of Punjabi men who had recently established a network they identified as *Get Punjabi*.

10. Although Mr. Gill, whom I had first met several years after I was able to launch broadcasting by Jus Punjabi in 2007 as a result of years of organizing effort, and Dahiya were present at the initial meeting, I made the decision to hire Mr. Batista. I impressed on him the need to proceed against *Get Punjabi* and its cohort of wealthy Punjabi supporters as soon as possible because *Get Punjabi* – in invading my staff, my broadcasters

and advertisers, among other things – represented an existential threat to Jus Punjabi. *Get Punjabi* had comparatively enormous financial resources behind it, even to the point of somehow persuading Jus Punjabi's "independent" accountant to turn over Jus Punjabi's and my most sensitive financial information.

11. True to his commitment to Jus Punjabi and me, Mr. Batista by early May 2014, after several meetings with me alone and not with Dahiya or Mr. Gill, quickly assembled a lawsuit against *Get Punjabi* and others associated with it. The action was filed in the United States District Court for the Southern District of New York.

12. Within approximately a day of Mr. Batista's filing of the lawsuit in May 2014, *Get Punjabi* was literally taken off the air by the Punjabi men who controlled and financed it. *Get Punjabi* also ceased all of its related illegal activities, such as the theft of Jus Punjabi's most important documents and personnel.

### B.   The Two Subsequent Actions Successfully Resolved by Mr. Batista

13. Given Mr. Batista's success with the *Get Punjabi* matter, I turned to him again in two litigations, brought in 2015 and 2016, by Karl Khandawala (the "*2015 Khandawala Action*") and by Lakhvinder Singh and his wife, Parveen Singh (the "*2016 Singh Action*").

14. Since Mr. Batista has described these two actions in sufficient and accurate detail in his accompanying declaration, I will confine myself only to a few essential points. *First*, it was I, not Mr. Gill, who retained Mr. Batista in both cases.

15. *Second*, Mr. Batista was the sole lawyer who represented Jus Punjabi and me in the *2015 Khandawala Action* and the *2016 Singh Action*.

16.     *Third*, both of those cases demanded the transfer of equity interests in one or more Jus Punjabi entities to the plaintiffs, just as in the present litigation Mr. Gill is demanding, through his outrageous action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, the transfer to him of dominant interests in the Jus Punjabi businesses.

### The Crucial Points

17.     At this juncture, it is essential for me to re-iterate the central facts. *I created the Jus Punjabi businesses, which have now, under my guidance, expanded to all of North America, the United Kingdom and India. Moreover, I have always been the overwhelmingly dominant owner and control person of the Jus Punjabi entities and businesses.*

18.     Mr. Gill apparently believes that by insinuating himself into my life from 2010 through 2017 he has somehow miraculously become my "partner" in Jus Punjabi, and that he is now in addition entitled to the issuance of documents that somehow formalize and legalize his dreams of "partnership" and "ownership." (Mr. Gill is a man of enormous business experience, wealth and unscrupulous business tactics; he owns and controls very large and successful oil and gasoline distribution businesses in the Northeast.)

19.     Here are several core points, none of which Mr. Gill will ever be able to refute:

- Mr. Gill never had a partnership agreement with me with respect to Jus Punjabi or anything else.

- I never promised to invite Mr. Gill to become a partner of mine.

5

- Indeed, I consistently told Mr. Gill for years that I did not need and would never accept him as a business partner.
- Mr. Gill does not possess a single document that could in any way be construed as a legal or equitable partnership agreement.
- Mr. Gill has never received a share certificate, option or any other indicia of ownership of any Jus Punjabi entity that was or is now a corporation.
- Mr. Gill has never received a membership or other certificate reflecting any ownership interest by him, directly or indirectly, in any Jus Punjabi entity that is now or may have been a limited liability company or limited liability partnership.
- Mr. Gill has no document, such as a loan agreement or promissory note, that describes any funds he may ever have advanced to Jus Punjabi or me as a "loan" or anything else.

### Mr. Gill's Conduct

20. Although not directly relevant to the disqualification motion, I feel compelled as a single woman – indeed, I was a single mother when I conceived and formed Jus Punjabi in the 2000s – to draw the Court's attention to certain issues that are of concern to me and to my lawyer, Mr. Batista.

21. There is no doubt that Mr. Gill has a strong and egocentric personality. Even though he never had a managerial or other role at Jus Punjabi, he

treated the studios and facilities of Jus Punjabi in Long Island City from 2010, when I first met him, to 2018 as his personal domain.

22. There were literally several hundreds of occasions when, unannounced and uninvited, Mr. Gill, who claimed to live with his wife in New Jersey, walked into Jus Punjabi's premises, and inspected the work done by accountants, bookkeepers, and on-air personnel, as though they were his employees.

23. At the same time, Mr. Gill always made it a practice to sit down in my Chief Executive Office and talk to me about any issue he wished, no matter what deadlines or tasks I faced in my role as the driving force in a multi-national business.

### The Recent Necessity to Bar Mr. Gill From Contact with Jus Punjabi and Me

24. Approximately a year ago, and even though Mr. Gill always presented a somewhat troublesome side to his personality, my sense of concern about him escalated even further. Very troublesome to me was the fact that Mr. Gill on several hundred occasions between 2010 and 2018 appeared at my personal residence on Long Island, unannounced and uninvited, claiming he was in my neighborhood on "business" on the weekends. His perennial explanation was that he saw my car parked outside my house and decided to stop in for tea.

*A.* **Mr. Gill's Surreptitious Recording of Conversations**

25. In addition, and quite ominously, Mr. Gill, approximately a year ago, on one of his hundreds of unannounced and unwelcome visits to Jus Punjabi's studio, sat as was his practice at the visitor's chair in my office.

7

26. During the course of that conversation, I noticed that Mr. Gill in an oddly deliberate manner positioned his briefcase on a chair next to him. The dubious nature in which he was glancing at and fidgeting with the briefcase made me suspect something was not right.

27. As the conversation progressed, my skepticism regarding his true intention for the visit that day which he claimed was just to "talk," was furthered when Mr. Gill again expressed his wish to be a "partner" with me in Jus Punjabi – a long-term, highly repetitive proposition and dream of his to which I never agreed.

28. I became highly suspicious, given Mr. Gill's behavior, the placement of his briefcase and the manner in which he kept repeating false claims and attempting to goad me into accepting his claims, that he might be surreptitiously recording the conversation.

29. Since my concerns had escalated because of his bizarre behavior, I asked him, point-blank, if in fact he was secretly recording our conversation.

30. Although Mr. Gill kept denying that he was recording the conversation, I demanded to verify this claim by looking through the contents of his briefcase. Mr. Gill at first acquiesced but then, significantly, grew very agitated when I started examining a particular pen belonging to him.

31. When I asked him whether the pen was a recording device, he denied it and became extremely abrasive and loud.

32. When I took possession of the pen, I immediately arranged to have a technical employee of Jus Punjabi come to my office and take the pen to determine whether

8

it was a recording device. Mr. Gill, who continued to be very agitated and angry, attempted several times to seize the pen from me but, in an effort to protect myself and the pen, I managed to elude Mr. Gill until the Jus Punjabi technician could take and examine the pen.

33. Jus Punjabi's computer technician rapidly determined while Mr. Gill was still in my office that *the pen was in fact a sophisticated recording device*. Mr. Gill, who is physically a large and powerful man, admitted to me that he was in the habit of using sophisticated recording devices surreptitiously to record his conversations with me *and* with many of the other business men and women with whom he has conversations. He had never previously told me he recorded our conversations, and obviously never asked for my permission to record any of my conversations with him.

34. Moreover, a full search of Mr. Gill's briefcase on that day yielded not one but three separate voice activated recording devices, all of which were activitated by the time of discovery.

## B. The Direction to Mr. Gill Not to Have Contact with Jus Punjabi or Me

35. Because I was very disturbed by many aspects of Mr. Gill's long-term conduct, and because I was outraged by Mr. Gill's outrageous recording of our conversations, I decided to direct Mr. Gill *never* to enter Jus Punjabi's premises or contact me.

36. Not long after this episode in which I finally learned that Mr. Gill secretly recorded our conversations, Mr. Gill had a Parsippany, New Jersey, lawyer, Alan R. Ackerman, send a letter directed at Jus Punjabi and me making utterly false claims and asserting unjustified demands.

37. Although my attorney, Mr. Batista, has advised that it was improper for them to do so, Mr. Ackerman and Mr. Gill, through Mr. Gill's declaration on this motion, refer to a settlement discussion that Mr. Ackerman and Mr. Batista arranged after Mr. Ackerman's letter was sent and received. Attended by Mr. Ackerman, Mr. Gill, Mr. Batista and myself, the meeting was held approximately a year ago at Mr. Batista's office.

38. At the "settlement" meeting, which lasted for one to two hours, Mr. Ackerman was advised about the years of Mr. Gill's hundreds of unannounced and unwelcome intrusions into Jus Punjabi's studios and Mr. Gill's insistence on speaking to me.

39. In my presence and in the presence of Mr. Batista, Mr. Ackerman told Mr. Gill to cease having any contact, directly or indirectly, with Jus Punjabi, its offices, its staff members and me. Mr. Batista and I reiterated to Mr. Gill that, in the event he violated Mr. Ackerman's no-contact instructions, Mr. Batista and I would have no choice but to seek a restraining order and order of protection against him. Mr. Gill said he understood the no-contact instructions from his own lawyer, from Mr. Batista, and from me, and that he would obey the instructions.

40. As events after the settlement meeting have revealed, Mr. Gill had no intention of abiding by his lawyer's directions. Among other things employees of Jus Punjabi have on several occasions observed Mr. Gill parked in one of his cars on the street in front of Jus Punjabi's studios, often for hours at a time.

41. Moreover, Mr. Gill has directed his friends and associates, including Dahiya, to contact me to make statements about this litigation and how it is in my and Jus

Punjabi's best interests to give Mr. Gill what he wants. Some of those calls and text messages have been placed by Mr. Gill himself to my 29-year-old daughter, a college graduate who several years ago joined Jus Punjabi, at all hours of the day and even at night.

## Conclusion

42. For all the foregoing reasons, as well as for the reasons set forth in the accompanying declaration of Mr. Batista and the legal memorandum, I respectfully request that the Court deny in its entirety plaintiff's motion to disqualify defense counsel.

_____
PENNY K. SANDHU

Dated: September 6, 2019

11