STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KASHMIR GILL,

                                    Plaintiff,

v.                                                                         Case No. 19: cv-04216 (ILG) (PK)

JUS BROADCASTING CORP.,
JUST PUNJABI LLC; JUST ONE, CORP.,
JUST BROADCASTING CORP PVT LTD;
& PENNY SANDHU,

                                    Defendants.
----------------------------------------------------------X

## DECLARATION OF KASHMIR GILL IN SUPPORT OF DISQUALIFICATION OF PAUL BATISTA

      I, Kashmir Gill, under the penalty of perjury state as follows in support of my application to have Mr. Paul Batista disqualified.

      1.     I would like to shed some light on the underlying facts and reality which has been so conveniently twisted by Mr. Batista and Ms. Penny Sandhu. All I submit here is based on my knowledge and personal experience dealing with Ms. Sandhu and Mr. Batista. I am victim here of, not only of Ms. Sandhu maneuvering, also of Mr. Batista's disingenuous claims and unethical approach. His obsession to represent Ms. Sandhu makes us pause.

      2.     Paul Batista has carefully crafted Declaration does not deny any of the essential elements in my prior Affirmation. Instead, he attempts to refocus his efforts away from me and toward Jus Punjabi and Penny Sandhu. However, his statements are incomplete and misleading. For example, he states that I had no involvement in the initial litigation against Get Punjabi. He conveniently omits the fact that I supplied all of the information and documents for Mr. Batista to

prepare the complaint. Of course, my name is not mentioned. The complaint was by Jus Punjabi against Get Punjabi.

3. Paul Batista's recollection of the Khandalwala litigation is surprisingly poor. Penny Sandhu did not want to retain Paul Batista to handle this litigation. She was upset with him because of the poor result in prior litigation. He did not want to represent Penny Sandhu because he felt that she was a not truthful with him. As a partner, I prevailed on her to hire Mr. Batista. She placed me in charge of interacting with Mr. Batista throughout this litigation. Mr. Batista, our attorney, communicated with me as a partner in Jus Punjabi. I annex a series of emails **(Exhibit "A")** to both Ms. Sandhu and me at the time in the litigation when settlement discussions were attempted. Please note that Mr. Batista was emailing me at my Jus Punjabi email address and not my business email address. Mr. Batista has no explanation for the reason that he communicated with me throughout the Khandalwala litigation since I was not the "Client". Clearly, I was the client's representative in charge of this litigation.

4. During the Khandalwala litigation, Mr. Batista and I discussed my partnership interest in the defendant entities because he knew that I was the individual who was investing my funds into Jus Punjabi to purchase my ownership interest.

5. At paragraphs 24 and 25, Mr. Batista italicizes the words to underscore an obvious point that I have never been issued a unit or stock certificate from any of the defendant entities. If my ownership interest had been honored by Penny Sandhu, it would be no litigation and the Jus Punjabi network would be prospering. My attorney, Mr. Ackerman, forwarded loan documents to Mr. Batista which Ms. Sandhu refused to sign. I annex Mr. Ackerman's cover letter to Mr. Batista as **(Exhibit "B")**.

2

6. Mr. Batista conveniently forgets our conversations concerning my ownership interest in the defendant entities, my advancement of monies, and the legal advice he gave to me which are set forth in detail in my prior certification. Mr. Batista's statement is either a product of a memory loss or is patently disingenuous. At paragraph 36, when discussing the settlement conference in his office Mr. Batista states "(2) Ackerman and Mr. Gill never took the position that I had a conflict of interest;". When the meeting started, Mr. Ackerman advised Mr. Batista and Ms. Sandhu of Mr. Batista's conflict of interest. Numerous times Mr. Ackerman stated that if litigation started, Mr. Batista could not represent the defendants because of this conflict.

7. As a result of my conversations with Mr. Batista concerning the money which I invested with the defendant entities and my claim of ownership in them, Mr. Batista now possesses privileged and confidential information concerning this litigation. I provided him with confidential information in hopes that he could broker a resolution. He never once stated to me that I should stop talking because he represents the defendant entities. To the contrary, he gave me legal advice opined that Penny Sandhu and the defendant entities, by extension, were guilty of fraud, mail fraud and claims. His comment to me, as I have said before was "you have a good case." A careful reading of this portion of Mr. Batista's certification reveals that he does not deny that the conversations took place. His denial is that he gave me legal advice. I am disheartened that Mr. Batista continues this charade.

8. I am shocked that Mr. Batista would make the statement that the subject of his conflict was never raised. Mr. Ackerman not only raised the conflict issue at the meeting, on June 20, 2018, he corresponded with Mr. Batista which was one in a series of communications between them. Of note, Mr. Ackerman stated in the letter "As you are aware, you have a conflict of interest having previously represented Mr. Gill and having engaged Mr. Gill in several conversations

concerning the money lent to Ms. Sandhu stating to Mr. Gill, "You have a good case." Unless the parties can reach an agreement, Ms. Sandhu and the entities will need to retain a different attorney." (**Exhibit "C"**).

9.  Ms. Sandhu makes bogus claims in her Declaration to purposely mislead the Court. Ms. Sandhu does not respond to a single assertion made by me as to how Mr. Batista continues to violates ethics and that there is a conflict by his presence in this case. He is a witness who possesses relevant and confidential information from both parties. Even though lot of what Ms. Sandhu states is false, I will respond to each statement of her, line by line in interest of truth and transparency. Ms. Sandhu makes lot of false statement and all she does here is character assassination.

### FIRST FALSE STATEMENT BY MS. SANDHU IN PARAGRAPH 3

10.  Ms. Sandhu claims she is *"a journalist by training and a broadcast entrepreneur by profession and choice."*

Ms. Sandhu is not a reporter or journalist, and never has been one. She has never authored an article or broadcast journalism. Ms. Sandhu might have been in United States for 20 years, but it was just now a couple of years back that she got her green card. Prior to her acquiring Green Card, she did not have any status to run or own a business. Her Visa did not allow her to do that. She misled all investors including me about her status, solely to raise capital. She basically misled the public and other investors. I am one of the victims. This lawsuit is my attempt to vindicate my position and claim for relief for the hurt caused by her deceptive conduct, which is a Ponzi scheme.

4

## SECOND FALSE STATEMENT BY MS. SANDHU IN PARAGRAPH 4

11. Ms. Sandhu makes an incorrect statement that she *"since the mid-2000s, I have conceived, founded and expanded the Jus Punjabi business."*

It was, Mr. Lakhvinder Singh who paid for the entire project, constructed the office and the studio, bought the initial equipment. He had his wife become partners with Ms. Sandhu. They were under the impression that Ms. Sandhu was legal and engage in the cable television industry. Ms. Sandhu projected herself as a well-known businesswoman. But Ms. Sandhu's projection was false. It was Mr. Singh who had the contacts with cable Network companies to start the TV transmissions etc. Ms. Sandhu very mischievously took over the entire company when Mr. Lakhvinder had to leave the country owing to his own immigration issues. Ms. Sandhu took advantage and assumed control.

## THIRD FALSE STATEMENT BY MS SANDHU IN PARAGRAPH 6

12. Ms. Sandhu makes false statement about the *"Two of the lawsuits assert[ing] absurd claims."* She says that *"there have been claims by other individuals that they are "partners" of mine in Jus Punjabi or hold some kind of ownership or equity interest in the Jus Punjabi entities."* She further claims that *"specifically, not one of the two other claims, which were filed in 2015 and 2016, has resulted in the granting of any equity or any type of ownership interest in the Jus Punjabi entities to the claimants."*

Her statements are misleading. These two lawsuits were not attempting to claim partnership, or ownership---they were already PARTNERS. These two lawsuits were commenced by Partners clearly with majority or at least half of the company's interest. The following were the lawsuits:

a. Khandalwala v. Jus Punjabi.

b. Singh v. Jus Punjabi.

Khandalwala's lawsuit was about not being paid when he relinquished his partnership interest. It was not about claiming partnership or ownership. Mr. Singh's case was also about deception and misleading acquisition of their interest in Jus Punjabi. Their lawsuit too was not about partnership, it was about the money given to them for their interest. The tragedy is that the entire creation, sustenance or operation of Jus Punjabi was acquired by Ms. Sandhu by deception from Khandalwala and Mr. Singh. Ms. Sandhu never put a single dime of her own for the business.

## **FOURTH FALSE STATEMENT BY MS. SANDHU IN PARAGRAPH 7**

12. Ms. Sandhu was not a success when she met me, rather she was sinking under debt and completely insolvent. Also, about Mr. Batista success, this is what I know:

Mr. Batista who was introduced by a common friend, filed on behalf of or defended Ms. Sandhu and her companies in the following lawsuit:

a. *Jus Punjabi v. Get Punjabi.* I trusted Mr. Dahiya who introduced me to Mr. Batista and thus was retained. He filed a racketeering lawsuit against Get Punjabi, and he lost it.

b. *Khandalwala v. Jus Punjabi.* Mr. Batista did not win this case. Rather he had apprehensions about it right from the beginning as he discussed it with me. Mr. Batista was not convinced of Ms. Sandhu explanations about her role and defenses in dealing with Khandalwala. Frustrated, he asked me to do something and speak to Khandalwala. I was the one who finally brokered a deal with Khandalwala and his wife. I had them agree to a settlement, proposed by me.

c. *Singh v. Jus Punjabi.* This was dismissed not because of any merit but because of statute of limitation.

6

### FIFTH FALSE STATEMENT BY MS. SANDHU IN PARAGRAPH 8

13. Ms. Sandhu makes a disingenuous statement about Mr. Dahiya. Mr. Dahiya, her lawyer, saved her house, saved her from judgments and legal process and even went to India to save broadcasting rights of Indian TV called Doordarshan, including having her divorce finalized. It was Dahiya who drafted the agreement of transfer of membership from Mr. Khandalawala back to Ms. Sandhu. Also, Penny Sandhu requested that Mr. Dahiya filed the initial lawsuit against Get Punjabi. Mr. Dahiya filed a pre suit discovery against Get Punjabi. And then Mr. Dahiya took us to Mr. Batista to file the racketeering lawsuit.

### SIXTH FALSE STATEMENT IN PARAGRAPH 9

14. Ms. Sandhu claims since *"At the critical juncture- April 2014 - the business I had conceived and steadily built since the mid-2000s,"* is false and not complete. All Ms. Sandhu had was an idea to start a Punjabi channel. Ms. Sandhu did not have knowledge, money, connection, studio, equipment or intelligence to launch the channel. In order to complete her vision, she offered a partnership interest to Mr. Lakhvinder Singh and upon his departure to Karl Khandalwala and then to me. We agreed on my partnership interest in 2013. Pursuant to that agreement, I invested more than 2 million dollars. Yet, there is not a single word from Ms. Sandhu denying receipt of the money or her verbal agreement to make me an equal partner.

### SEVENTH FALSE STATEMENT IN PARAGRAPH 10

15. Ms. Sandhu declares: *"I made the decision to hire Mr. Batista."* This is false. After meeting Mr. Batista, we decided that lawsuit against Get Punjabi was very necessary. Ms. Sandhu was afraid for her security and she felt that the owners of *"Get Punjabi"* can harm her physically.

Jus Punjabi did not had money to pay for the retainer. I paid for the retainer. I paid $20,000 as demanded by Mr. Batista. It was my duty; I was the equal partner in Jus Punjabi.

### EIGHTH FALSE STATEMENT IN PARAGRAPH 11

16. Ms. Sandhu also claims—*"Mr. Batista by early May 2014, after several meetings with me alone and not with Dahiya or Mr. Gill quickly assembled a lawsuit against Get Punjabi and others associated with it."* It is a false statement. The telephone and email records of Batista, Ms. Sandhu and me well document my frequent discussions with Mr. Batista concerning this litigation. I challenge Ms. Sandhu to produce any documentation proving that neither I nor Mr. Dahiya were involved. This is patently false.

### NINETH FALSE STATEMENT IN PARAGRAPH 13

17. Ms. Sandhu says: "*Given Mr. Batista's success with the Get Punjabi matter, I turned to him again in two litigations, brought in 2015 and 2016, by Karl Khandalwala (the "2015 Khandalwala Action") and by Lakhvinder Singh and his wife, Parveen Singh (the "2016 Singh Action)".*

Mr. Batista lost the Get Punjabi case. He filed an appeal and that too was dismissed. Not sure if that was success. The real reason behind the closure of Get Punjabi was the in-fighting among the partners of Get Punjabi. After the Get Punjabi loss, she said she would not hire Mr. Batista, as he had done a sloppy job, did not properly draft the Complaint, did not spend time on the appeal. Thus, when *2015 Khandalawala Action* was initiated, she did not want to hire him. It was I that convinced her to go back to Mr. Batista, as we had already paid him monies, also that that the lawsuit would have to be settled ultimately.

8

### TENTH FALSE STATEMENT IN PARAGRAPH 14

18. Ms. Sandhu falsely summarizes: "First, it was I, not Mr. Gill, who retained Mr. Batista in both cases."

As with 2015 *Khandalawala Action,* even for 2016 *Singh Action,* she did not want Mr. Batista. She took me to another firm on Long Island, Certilman Balin to meet Mr. Jaspreet Mayall and his team. The cost of hiring them was intimidating. I convinced her to go back to Mr. Batista. I was the one who forwarded *"2016 Singh Action"* to Mr. Batista.

### ELEVENTH FALSE STATEMENT IN PARAGRAPH 16

19. Ms. Sandhu further proclaims: *"Third, both of those cases demanded the transfer of equity interests in one or more Jus Punjabi entities to the plaintiffs, just as in the present litigation Mr. Gill is demanding . . ."*

These lawsuits were about enforcement of non-payment (Khandalwala) and about deception, breach of contract etc. related to under valuing his membership interest (Singh). Whereas my claim is that she lied to me and misrepresented that I will be an equal member in all her business enterprises if I invested my money and to perform the services which I did. I invested money. I settled debts. I engaged services of professionals. I found that the employees of the defendant did not have proper employment contracts. I took Ms. Sandhu to see Ms. Donna Thomas an attorney, Astrachan, Gunst & Thomas in Baltimore, Maryland. I hired Donna Thomas to draw the contracts for the employees.

## TWELTH FALSE STATEMENT IN PARAGRAPH 17

20. Ms. Sandhu thunders: "*I created the Jus Punjabi businesses, which have now, under my guidance, expanded to all of North America, the United Kingdom and India. Moreover, I have always been the overwhelmingly dominant owner and control person of the Jus Punjabi entities and businesses.*"

She makes this utterly false statement. It was my idea that we must have a presence in Chandigarh, India the center of Punjabi folks. I emphasized that it would be very profitable because the rents are low and owing to currency value, would be able to hire more staff, as the quality of the work cannot be allowed to suffer. Ultimately, we are dealing with the Punjabi diaspora. I paid more than $20,000 to set up the entire studio. That is a substantial sum in India. Interestingly, majority of the programming is being produced in that studio, which keeps this channel live.

With reference to the United Kingdom, I had as a partner investor advised her to Not to start anything in U.K. She did not listen to me. She put pressure on me to invest $100,000 for start of business in U.K. As was expected in less than 18 months, the business failed.

I negotiated to buy *"Channel Punjabi"*, a full time Punjabi channel in Canada in 2014. We wanted to replace that channel with Jus Punjabi, which would have opened the doors to entertain more than two million Punjabi speaking clients. After signing the memorandum prepared by her Mr. Dahiya (her inexperienced lawyer), she backed out of the deal. I don't know what success she is talking about. She owes more money than ever to people around the world. The employees are not getting paid on time.

10

## THIRTEENTH FALSE STATEMENT IN PARAGRAPH 18

21. Ms. Sandhu professes: *"Mr. Gill apparently believes that by insinuating himself into my life from 2010 through 2017 he has somehow miraculously become my "partner" in Jus Punjabi, and that he is now in addition entitled to the issuance of documents that somehow formalize and legalize his dreams of "partnership" and "ownership." (Mr. Gill is a man of enormous business experience, wealth and unscrupulous business tactics; he owns and controls very large and successful oil and gasoline distribution businesses in the Northeast.)*

This statement is palpably false. It was not I that was "insinuating …into . . . [her] life from 2010 through 2017,". Rather it was she who came to my office with business proposals and ideas and laid the fine ground for extracting monies using deceptive means, playing on my simplicity. She brought me into the business and had me pay for retiring preexisting debts and recurring expenses. She indeed was so grateful from the monies doled out that she offered me an equal partnership in her business enterprise.

I stand in line behind the trail of other victims. She exploited everyone that came her way. Ms. Sandhu persuaded me to help her with her debtors, partners and day to day operation. She told me that her business was on the verge of collapse. Everything is stored in the emails and that's why she turned my email off. Unlike Ms. Sandhu, I enjoy a great deal of respect and exposure all over in USA and Canada. She is right about me being man of enormous business experience. In 1990 when I was working as a gas station attendant, my day started and ended by cleaning toilets in the gas station. I worked 12-14 hours a day for seven days of the week to achieve my "American Dream". Even today while Ms. Sandhu wakes up at 10 am on weekdays and take weekends off, I start working at 7.30 in the morning and work till 5 PM, Monday through Saturday. I am not at all a wealthy man. But I do have a great heart that cares, and I care for all the human beings, and Ms.

Sandhu took advantage of my goodness. Ms. Sandhu's statement about me as a man of "Unscrupulous business tactics" fits more on her own personality.

### FOURTHEENTH FALSE STATEMENT IN PARAGRAPH 19

22. In her Core points, she claims just the opposite of what she did.

- *Mr. Gill never had a partnership agreement with me with respect to Jus Punjabi or anything else.*

Partnership agreement existed; this was the bait used by her. This is how the money was transferred to her and on behalf of her. She does not explain the basis of my extending so much of money that I had saved for my children's higher education.

- *I never promised to invite Mr. Gill to become a partner of mine.*

Here is what she wrote on a dollar bill on March 3rd, 2013 after we decided to become partners *"Partnership for Life"* This is the bait. She also requested a letter from me to moralize the understanding. I did whatever was asked for me to help the defendant's businesses.

- *Indeed, I consistently told Mr. Gill for years that I did not need and would never accept him as a business partner.*

There is not one email or record during this time when she deceptively accepted money from me when she said that I was not or ever would be, a partner. She made representations of business partnership, using my investment to grow the businesses, and then with the intent to take my money under false pretenses. I under the impression of that my partnership interest was paid with the money which I gave to her. Had I known that she was a fraud, I would not have given her any money.

- *Mr. Gill does not possess a single document that could in any way be construed as a legal or equitable partnership agreement. Mr. Gill has never received a share certificate, option or any other indicia of ownership of any Jus Punjabi entity that was or is now a corporation. Mr. Gill has never received a membership or other certificate reflecting any ownership interest by him, directly or indirectly, in any Jus Punjabi entity that is now or may have been a limited liability company or limited liability partnership. Mr. Gill has no document, such as a loan agreement or promissory note, that describes any funds he may ever have advanced to Jus Punjabi or me as a "loan" or anything else.*

Writing on a dollar, sending her statement about the conversion of loan into stock is my agreement. Now she denies that she signed it and its effect and impact. Having exploited and drained me, now she is asking for a proof of partnership.

### FIFTEENTH FALSE STATEMENT IN PARAGRAPH 20

23. At Paragraph 20, Ms. Sandhu says *"Although not directly relevant to the disqualification motion, I feel compelled as a single woman - indeed, I was a single mother when I conceived and formed Jus Punjabi in the 2000s -to draw the Court's attention to certain issues that are of concern to me and to my lawyer, Mr. Batista."*

Ms. Sandhu was not single in 2000. She was married to Mr. Yogesh Yogiraj. Both husband and wife worked for ITV, a TV channel in Astoria NY. Now she assails my character, for she has no excuse for failing to honor the commitment she made. And then took more than $2,000,000 from me. Now she claims the mantle of "Single woman." I do not wish to make any comments about it. I will stoop to her level. Also, this is exactly how she approached me. Ms. Sandhu stated

that she needed support to grow the business and as a single woman she was finding it too difficult to cope up with the pressure.

### SIXTEENTH STATEMENTS IN PARAGRAPHS 21

24. *"There is no doubt that Mr. Gill has a strong and egocentric personality. Even though he never had a managerial or other role at Jus Punjabi, he treated the studios and facilities of Jus Punjabi in Long Island City from 2010, when I first met him, to 2018 as his personal domain."*

Ms. Sandhu invited me to become an equal partner. She gave me an email address to further boost the impression of partnership. My email address was: kashmirgill@jusbroadcasting.com. I cannot imagine that I was persona non grata, while money was flowing to the business from 2010 until 2018.

### SEVENTEENTH FALSE STATEMENT IN PARAGRAPH 22

25. *"There were literally several hundreds of occasions when, unannounced and uninvited, Mr. Gill, who claimed to live with his wife in New Jersey, walked into Jus Punjabi's premises, and inspected the work done by accountants, bookkeepers, and on-air personnel, as though they were his employees."*

Ms. Sandhu's took my labor, money and time, sought proactively my role to mediate the employee relationship, the creditors' claims. I was tasked with improving the employer and employee relationship paperwork to upgrade the company working. I purchased the necessary equipment to upgrade the studio. I went with Ms. Sandhu to business meetings. Of course, I had to see that the business of Jus Punjabi was operating properly. I fulfilled my obligation as a partner. She did not. I am not sure what my wife has to do with it. A lawyer's craftsmanship and a dirty mind of a cunning person. All they are trying to do is discredit me of my sincere belief in the business proposal and paint a picture of me.

14

### EIGHTEENTH FALSE STATEMENT IN PARAGRAPH 23

26. *"At the same time, Mr. Gill always made it a practice to sit down in my Chief Executive Office and talk to me about any issue he wished, no matter what deadlines or tasks I faced in my role as the driving force in a multi-national business"*

Ms. Sandhu makes a ridiculous statement. As a partner, I was brought in because of my business acumen, an area in which Penny Sandhu was extremely lacking. It was my function to handle business issues and discuss them with her. I had to take time out from my other business to come to tackle and take care of issues at Jus Punjabi. Ms. Sandhu had zero experience in business but voluminous experience misleading partners. I never approached any employee directly except to say "hello".

### NINETEENTH FALSE STATEMENT IN PARAGRAPH 24

27. *Approximately a year ago, and even though Mr. Gill always presented a somewhat troublesome side to his personality, my sense of concern about him escalated even further. Very troublesome to me was the fact that Mr. Gill on several hundred occasions between 2010 and 2018 appeared at my personal residence on Long Island, unannounced and uninvited, claiming he was in my neighborhood on "business" on the weekends. His perennial explanation was that he saw my car parked outside my house and decided to stop in for tea."*

This is false. I am sure Ms. Sandhu has cameras installed on her house. Let her produce any photos or video showing that I am stalking her. If they existed, Penny Sandhu would have used them by now.

### TWENTYTH FALSE STATEMENTS IN PARAGRAPHS 25-34

28. Ms. Sandhu, after having drained me of my monies under the false pretense of partnership now claims that I secretly record me. Ms. Sandhu's statement is incorrect. I did have

15

a recording device which was not recording and was given to her at her request. The device was turned on by Ms. Sandhu. The recording delineates my frustration with her deceptive manners. She is beseeched to give my money back, for I had come to know that I was defrauded by her.

## TWENTY- FIRST FALSE STATEMENT

29. Ms. Sandhu claims that she "decided to direct Mr. Gill never to enter Jus Punjabi's premises or contact me," for the reasons that she enumerates in statements. It is false. The truth finally came out this time, painful though that, I was a victim. I demanded that she pay me whatever that has been paid to the business. At that point, I had no interest in business, I asked her to immediately make payments. Since she had dishonest intention, she refused to talk to me, thinking that I will just walk away. I will not. She must be held accountable for what she did.

## TWENTY- SECOND FALSE STATEMENT

30. Ms. Sandhu claims, that I directed other people to get in touch with me and talk about the case etc. this statement is patently false. I challenge her to produce any individual to whom this request was made. Ms. Sandhu's daughter is a great kid and we did exchange texts occasionally. She calls me uncle and I always addressed her "Beta", as I address my own two daughters. I have three grown up children. I have nothing but great affection for others and my own kids. It is a shameless attempt to shrug off moral responsibilities and now it does not amaze me the extent people can go to avoid their obligation. Ms. Sandhu forgets that the money invested put into the business of the defendants was my heard earned money saved for my children's education. It was done so in good faith, trusting her and in good faith that it would produce a return on my investment. What came out of this is deception. I now stand in line as another victim.

I certify the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

Dated: 09/16/2019

_____
KASHMIR GILL