
# LAW OFFICES OF
# ALAN R. ACKERMAN

New Jersey Office
1719 Route 10 East
Suite 106
Parsippany, NJ 07054
T. (973) 898-1177
F. (973) 898-1230

New York Office
26 Whittier Road
Blauvelt, NY 10913
Please respond to NJ Office

Alan R. Ackerman, Esq.
Counsellor at Law
aracesq@alanackermanlaw.com
Admitted NJ, NJ District Court
3rd Cir. Court of Appeals

Steven A. Jayson, Esq.
sjayson@alanackermanlaw.com
Admitted NJ, NY
NJ District Court, EDNY, SDNY

November 8, 2019

Honorable Peggy Kuo, U.S.M.J.
U.S. District Court Eastern District of New York
U.S. Courthouse
Room 1207S
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   *Gill v. Jus Broadcasting Corp. et al.*
>          *Case No. 1:19-cv-4216 (ILG)(PK)*

Dear Magistrate Judge Kuo:

Pursuant to Your Honor's October 23, 2019 Scheduling Order, the Court instructed the parties to file the Transcript of the July 19, 2019 hearing before the Honorable Freda L. Wolfson, U.S.D.J.  Judge Wolfson commented on Defendants' Motion to admit Paul Batista, Esq. *pro hac vice* at Pages 5:19 -7:5.  Plaintiff intends to utilize Judge Wolfson's comments at the time of oral argument next Friday.

Respectfully submitted,

LAW OFFICES OF ALAN R. ACKERMAN

BY:   ALAN R. ACKERMAN, ESQ.

ARA/bc

cc:   Mr. Kashmir Gill (via email only)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 19-6742 (FLW)

1

_____ :

KASHMIR GILL,                 :   <u>TRANSCRIPT OF</u>
          Plaintiff,          :   <u>MOTION TO DISMISS</u>
          v.                  :   <u>THE COMPLAINT</u>
                              :
JUS BROADCASTING CORP., et    :   <u>JULY 19, 2019</u>
al.                           :
          Defendants.         :
-------------------------- :

CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608

B E F O R E:  THE HONORABLE FREDA L. WOLFSON, USDJ

A P P E A R A N C E S:

    LAW OFFICES OF ALAN R. ACKERMAN
    BY:  ALAN R. ACKERMAN, ESQUIRE
    On behalf of Plaintiff

    KATES, NUSSMAN, ELLIS, FARHI & EARLE, LLP
    By:  MICHAEL FARHI, ESQUIRE
              -and-
       PAUL A. BATISTA, ESQUIRE  (NEW YORK.)
    On behalf of Defendants

**\* \* \* \* \***
**VINCENT RUSSONIELLO, CCR**
**OFFICIAL U.S. COURT REPORTER**
**(609-588-9516)**

2

1          (In open court.)

2

3          THE DEPUTY CLERK:  All rise.

4          THE COURT:  Thank you.

5          I'll have the appearances.  Everyone else may

6   be seated.

7          MR. ACKERMAN:  Good morning, your Honor.

8          On behalf of plaintiff, Kashmir Gill, Alan

9   Ackerman.

10          MR. FARHI:  Good morning, your Honor.

11          Michael Farhi,  F-A-R-H-I, from Kates,

12   Nussman, Ellis, Farhi & Earle, for the defendants

13   moving party on this application.

14          I'm accompanied this morning by Paul Batista,

15   essentially, the attorney for the defendants.  We

16   have, as your Honor is aware, a pending pro hac

17   motion.

18          The second thing I want to say, which should

19   have been the first after I identified myself quickly,

20   was I want to apologize to the Court.  We've already

21   apologized to Mr. Ackerman for our error, my error, in

22   not appearing the last time and causing the Court to

23   reschedule for today.

24          So we apologize for any convenience to the

25   Court.  Again, we've made that apology to Mr.

3

1   Ackerman, do so again now, and we are ready to proceed

2   this morning.

3           THE COURT:  Okay.  Have a seat for a moment.

4           I know that Mr. Ackerman also filed his

5   application for fees in connection with appearing last

6   week.  I'll deal with that at some later point.

7           Mr. Farhi, yesterday you filed the application

8   on behalf of Mr. Batista for his pro hac admission.

9           MR. FARHI:  Yes, your Honor.

10          THE COURT:  One, I don't understand the late

11  filing, and then of course you made a request for an

12  adjournment of the hearing today to permit me to rule

13  on or for Judge Bongiovanni to rule on it.

14          You made this motion --

15          MR. FARHI:  Yes, Judge.

16          THE COURT: -- a few months ago.  And all in

17  this interim time, you've never moved for his pro hac

18  admission.  So you understand why I did not adjourn

19  this as well.  You certainly were aware of his

20  involvement in some way.  So I don't appreciate the

21  late filing, and then using that as a reason to

22  request an adjournment.

23          MR. FARHI:  May I respond, your Honor.

24          THE COURT:  Yes, please.

25          MR. FARHI:  Thank you.

4

1    Your Honor, there are two reasons for that,

2    which I'll candidly present to the Court.  I'm not

3    sure the extent to which Mr. Ackerman is aware, but I

4    think he is aware of some of it.

5    No. 1, Judge, I suffered a stroke in April.

6    While I'm back on my feet here, in another aspect, my

7    practice, it did impair me for a period of time.  It

8    has somewhat, but not impairing me from doing anything

9    here.  But more significantly, Mr. Batista's wife a

10   few weeks ago was diagnosed with cancer and Mr.

11   Batista's attention has been directed to that.

12   I'm not here to complain or whine or beg.  I'm

13   just responding to the Court's inquiry with candid

14   information.

15   THE COURT:  Well, I understand, and I'm sorry

16   for Mr. Batista's personal health issues with his

17   wife, and your own.  I do know you were on trial last

18   week when you didn't appear before me, so actively

19   engaged.

20   MR. FARHI:  That's right, Judge.

21   THE COURT:  But that's not the issue.

22   You filed the motion and you filed it a couple

23   of months ago.  When you filed the motion, which was

24   the first real entry of appearance because there had

25   been no answer filed --

5

1        MR. FARHI:  Yes, Judge.

2        THE COURT: -- that would have been the

3    appropriate time to make the pro hac application as

4    well, because I know you also submitted a declaration

5    for Mr. Batista in connection with the motion at some

6    point, and why that wasn't done.

7        And while I appreciate the health issues that

8    have been raised, it really doesn't explain why that

9    was done, particularly since the motion that was filed

10   yesterday is really scant.  It's simply the normal

11   affidavit of he's been admitted and he has no pending

12   disciplinary matters, not as if it required a brief or

13   anything else.

14       MR. FARHI:  Yes, your Honor.  I have nothing

15   else to say or submit beyond what I have.

16       THE COURT:  I understand.

17       MR. FARHI:  I'm not going to make anything up.

18       THE COURT:  Okay.

19       Well, how about the issue that's been raised

20   in the letter that was filed by Mr. Ackerman yesterday

21   that he would be opposing it, in any event, because he

22   believes there is a conflict because Mr. Batista was

23   involved in some way in advising Mr. Gill, the

24   plaintiff, at different times in connection with the

25   various companies and Ms. Sandhu.

6

1          MR. FARHI:  Your Honor, I respond to that in

2     two ways:  I don't know if Mr. Ackerman's intent was

3     to, by that letter, oppose that motion in advance or

4     oppose the pro hac motion in advance.  But I

5     understand why he did it, because of the letter that I

6     filed yesterday.

7          Our position, your Honor, is that there is no

8     or was no conflict on Mr. Batista's part.  I didn't

9     have the opportunity to respond to Mr. Ackerman's

10    letter.  I can certainly in substance and in detail if

11    your Honor wishes.

12         But it's our position that we're going to

13    advance the pro hac motion and oppose any opposition

14    to it aggressively and strenuously by Mr. Ackerman.

15         THE COURT:  All right.

16         Well, as of today, then, Mr. Batista is not

17    arguing today.  I'll let you know that.  We're going

18    forward.  I won't rule on it today, so I can give you

19    an opportunity.  But I certainly, based on what was

20    said, would have some questions, and I'll let Judge

21    Bongiovanni rule on it in due course.

22         But I would have questions about a

23    representation if he was involved in different

24    negotiations at different times, or conversations that

25    involved Mr. Gill and Ms. Sandhu either jointly or

1　separately, and indeed whether it even raises issues

2　of him being a fact witness at some point, but that's

3　a different issue.

4　　　　So we'll put aside Mr. Batista.  You are

5　welcomed today.  You can listen, but not arguing.

6　　　　MR. BATISTA:  Thank you, your Honor.

7　　　　THE COURT:  Okay.  Thank you.

8　　　　MR. FARHI:  Your Honor, I may be premature in

9　asking this question and so I apologize:  Would you

10　like me to respond within some certain timeframe to

11　Mr. Ackerman?

12　　　　THE COURT:  No, because I'm expecting Mr.

13　Ackerman to file a formal opposition.  I didn't

14　consider that letter to be a formal opposition, and

15　obviously his opposition is not yet due.  It has a

16　return date at some later point.

17　　　　Wait for his opposition.  If he doesn't file

18　any, then he doesn't file any, and you'll respond as

19　you like.  But I would say he has to file a formal

20　opposition to it on the record.

21　　　　MR. FARHI:  Understood, Judge, and we'll deal

22　with it when it comes up.

23　　　　THE COURT:  Okay.

24　　　　MR. FARHI:  Thank you.

25　　　　THE COURT:  All right.  Have a seat for a

8

1  moment.

2          MR. FARHI:  I will, Judge.

3          THE COURT:  Thank you.

4          Let me start by a couple of issues that I want

5  to raise that I don't think are adequately addressed

6  in anyone's papers.

7          First of all, I want to address jurisdiction.

8  I'm not talking about the personal jurisdiction.  I'm

9  talking about subject matter jurisdiction for a

10  moment.  There are two bases for jurisdiction being

11  raised:

12          One is a diversity.  One is that there's a

13  federal RICO claim being asserted here, which would

14  give jurisdiction regardless of the diversity issues

15  because it connects by supplemental jurisdiction.

16          I'm not going to rule today with regard to

17  whether there is an adequate federal RICO claim

18  asserted.  But I will note that there is confusion in

19  the complaint, to say the least, about what RICO claim

20  is really being asserted.

21          If there is a RICO claim under subsection D,

22  it requires conspiracy.  A corporation cannot conspire

23  with its employees and officers.  That would never

24  survive.  It appears that it's being pled under a

25  different section, but it's not at all clear.  And I

9

1   raise that because if there were not a RICO claim, now

2   I have to look at it as if there is actual diversity

3   here.

4          Now, in that regard what everyone has

5   overlooked is the fact that Jus Punjabi, LLC, which is

6   the limited liability corporation, you determine

7   citizenship by looking at the individual members of

8   the LLC.

9          So I will say to you, Mr. Ackerman, if you

10  tried to claim that Mr. Gill is a member of the LLC,

11  that will destroy diversity and that is a big part of

12  the argument here.

13         I know you are taking the position there is

14  only one member.

15         MR. BATISTA:  Only one member, your Honor.

16         THE COURT:  Mr. Batista, you're not arguing.

17         MR. BATISTA:  I'm sorry.  I thought you asked

18  me.

19         THE COURT:  No.

20         MR. ACKERMAN:  I understand that's the

21  defendants' position.

22         THE COURT:  I understand.  But you understand

23  that if you want to assert for basis of this case that

24  he is a member in some fashion, you are going to

25  destroy diversity.  That's not going to stand in

1    federal court anywhere if the RICO claim, that is, of

2    course, doesn't survive and I have grave doubts about

3    your RICO claim.

4              Do you understand your problem?

5              MR. ACKERMAN:  I understand, Judge.

6              THE COURT:  Well, who are the members?  What

7    document exists to show who the members are?

8              Is there a document, Mr. Farhi?

9              MR. FARHI:  There is not, your Honor.

10             THE COURT:  Mr. Farhi, do you know the facts

11   in this case.  Are you going to be able to argue?

12             MR. FARHI:  Yes, I am, Judge.

13             THE COURT:  I know you keep looking to Mr.

14   Batista.

15             MR. FARHI:  Well, Judge, I'm looking to him

16   for some finite information.  But, yes, I'm prepared.

17             Yes, there is, your Honor.  It does not

18   indicate anywhere, nor does any document indicate

19   anywhere, that the plaintiff is a member.

20             THE COURT:  Is there a document that shows who

21   the actual members are?

22             MR. FARHI:  Yes, your Honor.

23             THE COURT:  Where is it?  It hasn't been

24   provided to me on this motion.  What I was provided

25   was some old document from 2006 that showed that there

1   were other members, but that was terminated in 2008.

2   I haven't seen any recent document that shows the

3   members of this LLC.

4           You claim there is such a document?

5           MR. FARHI:  Yes, Judge.

6           THE COURT:  Well, where is it?

7           MR. FARHI:  We don't have it.  We haven't

8   provided it.  That's true.

9           THE COURT:  Well, why not?  When obviously one

10  of the issues at stake here is who the LLC is, and

11  certainly for jurisdiction purposes it's important to

12  this Court in that regard.

13          MR. FARHI:  Let me respond by saying this,

14  Judge:  In the opposition papers filed by Mr.

15  Ackerman, there is nothing, not only nothing of

16  substance, but nothing, period, arguing that this

17  plaintiff was a member.  He says that he operated the

18  business or did business for the defendant company out

19  of his office.

20          THE COURT:  He does assert that he is a

21  member.  He tries to claim he is a member and he's

22  part of the corporations and he's part of everything.

23  He says it.  It's replete in there.  Whether it's true

24  or not is not for me to determine today.

25          All I ask you is, why was I not provided with

1  a document that shows the actual members?

2         MR. FARHI:  Your Honor, the reason was that --

3         THE COURT:  Are there other members besides

4  Ms. Sandhu?

5         MR. FARHI:  No, Judge.

6         THE COURT:  What's the date of the document?

7         MR. FARHI:  I'll ask permission.  I'm not

8  being facetious, Judge.  May I confer with Mr. Batista

9  briefly, Judge?

10        THE COURT:  Yes.

11        MR. FARHI:  Thank you.

12        (Pause.)

13        MR. FARHI:  I don't know the date, Judge.

14        THE COURT:  I will tell you, the record that I

15  have been given on this motion from both sides is

16  really inadequate.  So I have questions on

17  jurisdiction, as I said, because also until I'm

18  satisfied that the only member is Ms. Sandhu, who is a

19  New York resident and a domiciliary of India, I guess,

20  she's India and New York.  I understand that.  So she

21  would not be a New Jersey resident.

22        Until I'm satisfied that there are no other

23  members in New Jersey, it raises a question for this

24  Court, and that also goes to personal jurisdiction

25  over the LLC besides subject matter jurisdiction.  And

1    this is all intertwined with these allegations that

2    Mr. Gill has given, the plaintiff, as to being a

3    member and he does say he is a member.  There may be

4    nothing to support that from the defendants' position,

5    but that is what he says.

6            Now, let me address some of the issues of

7    personal jurisdiction here.  Let me put aside no

8    general jurisdiction over any defendant in this case.

9    General jurisdiction for an individual is defined as

10   to where that individual is resident or domiciled.

11           For Ms. Sandhu it's not New Jersey.  And for

12   the various entities, which is why I have been

13   focusing on the LLC which has to be defined by its

14   members, as to the corporations, though, it's either

15   New York or there is the Indian corporation.

16           So none of them are incorporated and have a

17   principal place of business in New Jersey.  LLC is

18   still an open question until I'm given any other

19   proof.  So there is no general jurisdiction.

20           Mr. Ackerman, I must say to you, I was purely

21   flummoxed by your suggestion in your brief in

22   opposition when you said, "Unfortunately for

23   defendants, their analysis does not pass muster as it

24   conflates personal jurisdiction and specific

25   jurisdiction."

14

1          Specific jurisdiction is personal

2   jurisdiction.  That's exactly what it is.  There's two

3   aspects:  It's either general or specific.  That's how

4   you determine if there is specific jurisdiction, there

5   is general jurisdiction.

6          MR. ACKERMAN:  I understand, your Honor.  What

7   I attempted to convey to the Court was the following:

8   That Penny Sandhu came into New Jersey for --

9          THE COURT:  For specific jurisdiction and

10  that's what it is.  I want to make clear to you what

11  we're discussing, if there's specific jurisdiction

12  over Ms. Sandhu and/or all of the other defendants.

13         By the way, I have to look at each one

14  individually.

15         MR. ACKERMAN:  I understand, Judge.

16         I believe there is specific jurisdiction over

17  all defendants because Penny Sandhu came to New Jersey

18  not only for herself individually, but also as a

19  representative of all the defendants to solicit Mr.

20  Gill's investment and his involvement with the

21  entities to perform work on their behalf.

22         It was all done in New Jersey.  If the Court

23  has determined that those meetings, all of which

24  occurred in New Jersey --

25         THE COURT:  I want to focus on Ms. Sandhu

1    first.

2            MR. ACKERMAN:  Fine.

3            THE COURT:  Okay.  I know what your

4    allegations are, which is that, one, there was the

5    meeting at the Akbar Restaurant in New Jersey where

6    one of the loans was discussed or whatever the

7    business is.

8            There was another meeting in New Jersey.  And

9    he describes a couple of the meetings where these

10   things occurred, and he sends his money from New

11   Jersey to New York to her for these various loans,

12   gives her various monies along the way.

13           Correct?

14           MR. ACKERMAN:  That is correct.  But that's

15   not the extent of it.

16           THE COURT:  Okay.  What else would you like to

17   add as to her contacts with New Jersey, her contacts?

18           MR. ACKERMAN:  She regularly contacted Mr.

19   Gill in New Jersey via telephone and other personal

20   meetings which are not identified because they

21   occurred so long ago we don't have the exact dates.

22   Those telephone calls and meetings requested that Mr.

23   Gill perform all the actions which are identified in

24   the complaint:

25           He negotiated contracts for the defendant for

16

1    cable licensing packages.  He negotiated to secure

2    employment for employees.  He purchased equipment.  He

3    attended meetings.  He negotiated settlements of

4    lawsuits.

5         All of that was done at the behest of Penny

6    Sandhu individually and as a representative of the

7    defendant entities by coming to New Jersey or by

8    calling him on the telephone engaging in numerous

9    telephone conversations and negotiations and saying,

10   Please do this for me.

11        So that was all done in New Jersey.  There is

12   no allegation by the defendant that Mr. Gill went into

13   New York to do anything.  In fact, their pleadings

14   totally ignore the fact that she came to New Jersey to

15   do everything.

16        THE COURT:  Well, that's not exactly what she

17   says.

18        But the one thing I do want to clarify is,

19   there is no doubt, I know, as well, that your client

20   went to see her often in New York.

21        The difference here is, and I want to point

22   this out to you, Mr. Farhi, your focus is off on this

23   analysis because you say there were many more times

24   she came to New York than she came to New Jersey.

25        That's not the analysis like, Are there more

17

1   contacts somewhere else?  It's whether the contacts

2   she had with New Jersey would satisfy the specific

3   jurisdiction of the court.

4        So you can't focus on, Is this a better place.

5   That's not the analysis today.  It's whether

6   jurisdiction under due process could be satisfied.

7        Now, in that regard -- I'm going to talk to

8   Mr. Farhi for a moment -- there are two kinds of

9   claims.  Put aside the RICO claims.  There are

10  contractual claims and essentially tort claims.

11       With regard to the contractual claims, your

12  allegations are that she did come at different times

13  to New Jersey -- you don't dispute that -- to meet

14  with Mr. Gill.  She does not dispute that.

15       MR. FARHI:  She said in her reply

16  certification that she came not numerous times, Judge.

17  As a matter of fact --

18       THE COURT:  It doesn't matter how many times.

19  That's not the analysis, and particularly under

20  contract claims and also New Jersey law you look at a

21  couple of things.  You look at, Where was the contract

22  actually negotiated, signed, and various things, and

23  do you reach into the jurisdiction?

24       So it's not just the quantum of contacts but

25  the substance of those contacts.  She hasn't disputed

1   that these certain meetings occurred in New Jersey

2   where she discussed the infusion of capital for her or

3   her companies.  She hasn't disputed that.  She just

4   says how many contacts there were at different places.

5           MR. FARHI:  I don't want to interrupt your

6   Honor.  I'll respond when you are done.

7           THE COURT:  I'm done with that.  Go ahead.

8   You can respond.

9           MR. FARHI:  Your Honor, what the plaintiff

10  misses in the discussion -- and I'm going to step away

11  from number, I'm going to step away from where, and

12  how many were in New York and how many were in New

13  Jersey.  I'm not going to speak to that at all.

14          What's ignored by the plaintiff is in any

15  argument that he makes is that meetings, if any,

16  whether it was one, whether it was three, whatever, he

17  doesn't really say, in New Jersey were all not

18  intended by defendants to do business in New Jersey.

19  That's not an indication that she entered into

20  business or --

21          THE COURT:  This isn't business.  One moment.

22          Now, you are confusing also some of the

23  general jurisdictions.  This whole thing of stream of

24  commerce, doing business, that's not the analysis.

25          You need to look at what specific jurisdiction

1   means today.  And in that regard we analyze separately

2   the contractual claims and any tort claims and the

3   tort claims could fall under the Calder v. Jones

4   analysis and the Carteret Bank analysis and you

5   haven't really gone through that.

6          This is not about, Was she doing business?

7   What you are looking at is, are the specific contacts

8   that she had, were they directed at the forum to the

9   extent that the claim is that she came here and met

10  with him, that they negotiated 80,000 at one point or

11  this at another point?

12         That's the forum-related activity that he is

13  now suing on as well that she owes him on.  That's the

14  forum-directed activity.  That you have not responded

15  to.  You look at this as a general matter.  It's not.

16         We look at those specific activities which he

17  is now suing on that either he claims gave him some

18  interest in these companies, forget the interest in

19  the companies, saying she says owes it to him because

20  at the very least she does agree that they were loans.

21  She doesn't dispute they were loans if that's what

22  they were as opposed to buying an interest.

23         Either way, that's what's alleged and I don't

24  see that she's disputed that those forays came here

25  and that those conversations occurred knowing he was

1   here in New Jersey and the effect on him, and

2   certainly on the tort claims, the effect on him would

3   be felt where he is.

4            MR. FARHI:  What plaintiff is alleging, Judge,

5   and Mr. Ackerman just acknowledged it in his argument,

6   is that the defendant, Ms. Sandhu, specifically, her

7   visits to New Jersey were essentially two-tiered or

8   two-part.

9            What I mean by that or what he means by that

10  is, they would meet and he would do business for the

11  company.  He just acknowledged that and he says it in

12  his papers.  Except, your Honor, when we look at his

13  papers and when we look at what the plaintiff actually

14  said in his statement, it's not what Mr. Ackerman

15  says.

16           Mr. Ackerman stood up a few minutes ago and

17  said that Mr. Gill negotiated contracts, secured

18  employment, purchased equipment, negotiated

19  settlements, did a whole bunch of things.

20           Your Honor, in paragraph 15 of the plaintiff's

21  certification or the plaintiff's statement, all he

22  says is, "After each meeting" -- and I'm citing from

23  paragraph 15, starting on page 5, your Honor, going to

24  the top of page 6 -- "After each meeting, I continued

25  my efforts on behalf of the defendant entities to

1  perform services on behalf of the defendant entities

2  as requested."

3       So the specificity and the detail that Mr.

4  Ackerman just argues isn't there in this one

5  statement.

6       THE COURT:  Well, actually, paragraph 14 talks

7  about the different things that they did. It says,

8  "... to discuss additional investments" -- she met in

9  Matawan -- my efforts to secure employees for the

10 defendant entities, negotiating with creditors,

11 negotiating with vendors to reduce fees, and promising

12 that I would become her business partner.  She

13 convinced me to loan $400,000 to purchase broadcast

14 equipment for the studios and other equipment needed

15 to broadcast, delivered to my office in Matawan, and I

16 arranged for delivery," and then goes on to say there

17 were more visits to finalize the partnership, and he

18 says that my efforts at her direction all occurred at

19 my Matawan, New Jersey office.

20      He did give more specificity in paragraph 14.

21 But bottom line is, he certainly sets forth a number

22 of efforts he undertook on her behalf based upon her

23 coming to meet with him in Matawan, and of course he

24 loans her the money and all of his actions take place

25 from New Jersey after she meets with him and when he

1   sends her the money.

2          Look, I will tell you, there is no doubt in my

3   mind under specific jurisdiction as it's been defined

4   both under the contract as well as the tort claims,

5   that there is specific jurisdiction over Ms. Sandhu.

6          My concern, though, becomes the companies,

7   because I really have nothing other than him saying,

8   Mr. Ackerman, that various things she did on behalf of

9   the companies, because it is not simply sufficient to

10  treat the company and Ms. Sandhu as one, because I

11  have no analysis on piercing the corporate veil or

12  alter ego theories to get past that.

13         That is where your problem lies.  There is

14  jurisdiction over Ms. Sandhu, specific jurisdiction.

15         MR. FARHI:  May I make one more comment?

16         THE COURT:  Yes.

17         MR. FARHI:  Your Honor, Mr. Ackerman certainly

18  is an experienced attorney.  He knows what he writes.

19  I'm just going to make this point and then sit down.

20         In looking at No. 14 -- and when I read

21  something, I read it seriously and literally, at least

22  I try to.

23         THE COURT:  By the way, when you say "he

24  wrote," I understand that attorneys write the

25  affidavits for clients.  But it is a certification on

1  behalf of Mr. Gill.  So it's what he is asserting

2  happened.

3          MR. FARHI:  I apologize, Judge.

4          What Mr. Gill says, and I'll just read the

5  first sentence, or part of it, and sit down, as I

6  said, in 14:

7          "Thereafter, Sandhu made several further

8  visits to my office in Matawan, New Jersey, to discuss

9  additional investments, the business of Jus Punjabi,

10  my efforts to secure employees..."

11          So, again, when I first read that, Judge, I

12  read it as an allegation that there was a discussion

13  about these things, not that he was doing these

14  things, that there was a discussion.

15          So, respectfully, for Mr. Ackerman to

16  conflate --

17          THE COURT:  No.  Look at No. 15.  You're

18  looking at these in isolation.

19          If you look at 15, the way it continues to

20  read is, "Sandhu made further visits to finalize the

21  partnership terms with Bikram and me.  After each

22  meeting, I continued my efforts on behalf of the

23  defendant entities to perform services on behalf of

24  the defendant entities as requested."

25          So when you read 15 it answers 14, which is,

24

1   she asked these things, and I took these efforts, and

2   he says, "my efforts, at her direction, all occurred

3   at my Matawan, New Jersey office."

4         It does then close the loop on paragraph 14.

5         MR. FARHI:  The only thing I would add,

6   Judge -- and I said I would speak before and sit down,

7   but I just want to add one thing.

8         Your Honor properly referred earlier to the

9   LLC agreement.  I would note that there is no

10  documentation whatsoever provided by Mr. Gill of these

11  extensive, and he says they're extensive, and

12  extensive serious business involvements securing --

13        THE COURT:  I don't see anything in your

14  client's affidavit that says he didn't undertake any

15  efforts.  She just says he's not a member.

16        Show me where in her affidavit she says what

17  he says in paragraph 14 and 15 is not true.

18        MR. FARHI:  Please bear with me for a minute.

19        THE COURT:  Sure.  And tell me which of the

20  declarations because she submitted two.

21        (Pause.)

22        MR. FARHI:  Judge, I'll refer, first of all --

23  and, again, I'll identify them as your Honor pointed

24  out the first and the second statements by Ms. Sandhu.

25        In the second one --

25

1          THE COURT:  The reply one.  Go ahead.

2          MR. FARHI:  The second one, in the reply

3    papers, she wrote --

4          THE COURT:  What paragraph?

5          MR. FARHI:  Paragraph 9, in the second

6    statement appended --

7          THE COURT:  I have it.  Go ahead.  What

8    paragraph?

9          MR. FARHI:  Paragraph 9.  She reiterates that

10   "Gill never received a partnership agreement, nor for

11   that matter" --

12         THE COURT:  I understand.  That's the

13   ownership interest.

14         I said, where does it say in there that she

15   disputes the various actions that he alleges in his

16   declaration that he took?

17         You said he doesn't provide documentation of

18   doing those.  I said, where does she dispute that it

19   didn't happen?

20         That's the ownership interest.  I understand

21   she disputes he's not a member or an owner of the

22   company.  I don't think her affidavit says he didn't

23   undertake actions.

24         MR. FARHI:  I'm looking at the first one,

25   Judge.

1          (Pause.)

2          THE COURT:  It says a lot of other things

3    about him and their relationship.

4          You can look, but I'll make it easy for you, I

5    don't think it's in there.  I've just reviewed them.

6    And she had the last word by submitting the reply.

7          MR. FARHI:  I don't see anything, Judge.

8          Thank you.

9          THE COURT:  I agree.

10          So bottom line is, there is specific

11   jurisdiction.  She doesn't dispute he made the loans.

12   She doesn't dispute she met with him at these

13   locations in New Jersey to talk about making the

14   loans.

15          I use the word "loans" because that's what she

16   calls them, that's the best case, that they were

17   loans, that he did that, and she didn't dispute that

18   he took various other actions on behalf of her or her

19   companies.

20          So there's no doubt.  And she came into New

21   Jersey to meet with him on those occasions.  The fact

22   that he may have come to New York and he may have come

23   to New York even more times doesn't deal with the

24   issue of whether she has forum-directed activities,

25   which she clearly did.  So there is specific

1   jurisdiction over her.

2           The bigger question, as I said -- and there

3   could be jurisdiction, therefore, also specific over

4   the LLC because she is a member.  And as long as I

5   don't know there are other members, she asked for the

6   LLC.

7           But with regard to the various corporations,

8   Mr. Ackerman, this is where you have a problem.  We

9   still continue to recognize the formalities of

10  corporations, unless you make an argument, and I know

11  you've all cited to my <u>Linus</u> case as well, you can't

12  ignore the formalities of a corporation without in

13  some way arguing the alter ego or that we can pierce,

14  which you have not done.

15          So I cannot find at the moment there is

16  specific jurisdiction over the corporations.

17          MR. ACKERMAN:  Your Honor, I don't think I

18  have to pierce.  I think she acts as the

19  representative of the corporation.

20          THE COURT:  Who were the checks made out to?

21          MR. ACKERMAN:  I don't have that.

22          THE COURT:  Well, you need to tell me that.

23  This is your day.  Were the checks made out to Ms.

24  Sandhu or were they made out to the LLC or were they

25  made out to those corporations?

28

1          I don't have a problem with the LLC.  But you
2    haven't indicated to me or separated out these various
3    other corporate entities.
4          MR. ACKERMAN:  Some of the checks, your Honor,
5    I can tell you were made directly to pay the creditors
6    of the corporations.
7          THE COURT:  Which corporations?  There is no
8    specificity you have given me as to that, who he was
9    acting --
10          MR. ACKERMAN:  I believe it was Jus
11    Broadcasting because that is the -- in fact, in his
12    certification what he annexed to it was the -- and let
13    me get mine, and I apologize.
14          (Pause.)
15          MR. ACKERMAN:  That was the LLC.
16          THE COURT:  I think they're being made out to
17    the LLC.  I could have jurisdiction, specific
18    jurisdiction, over the LLC of which she is clearly a
19    member and as a member was acting on behalf of, and
20    you've already said you think there are no other
21    members and under Mr. Gill's case he's a member, but
22    okay.
23          I don't have anything that satisfies me on
24    behalf of the corporations, whether it's the India
25    corporation or the Jus Broadcasting Corp.  Clearly, no

29

1   general jurisdiction.  They are incorporated in New

2   York.

3            And on specific, I don't have anything that

4   shows any of these actions were done in connection

5   with that company.

6            So that leaves you with a problem that you may

7   not have jurisdiction over all parties.

8            MR. ACKERMAN:  Your Honor, it appears that the

9   Court is troubled because we don't know to which

10  entities the checks were made out.

11           THE COURT:  Or what actions he took on behalf

12  of those entities as opposed to the LLC.  Frankly, it

13  seems like it's all of the LLC, and it's your

14  obligation to separate that out.

15           MR. ACKERMAN:  I understand that, Judge.

16           THE COURT:  So where we are, I'm going to

17  transfer this to the Eastern District of New York.

18  I'm not dismissing.  It's always the option of the

19  Court instead of dismissing if there is an issue of

20  jurisdiction.

21           As long as you want to pursue all these

22  various entities, if you want them in, and I can't get

23  jurisdiction over all of them -- I think it's the

24  Eastern District.  Isn't that where they're located?

25           MR. FARHI:  That's where they're located.

1          MR. ACKERMAN:  Your Honor, might I have the

2  opportunity to file further pleadings to satisfy the

3  Court that the Court has jurisdiction over the

4  corporations, and it appears that you are troubled

5  because you don't have checks made out to those --

6          THE COURT:  I don't have anything that

7  indicates you really asked, one, that I can disregard

8  the actions of the corporations, separate them out

9  from Ms. Sandhu; and, two, you have in no way, your

10  client hasn't in any way, indicated that he was acting

11  and providing assistance to these corporations that

12  there is jurisdiction over them as opposed to the LLC.

13          No, I'm not satisfied at all.  And this was

14  your opportunity and that was your obligation and I've

15  got other issues in the end too because, as I said,

16  with regard to the LLC and the position your client is

17  taking as to whether he is a member or not, but that's

18  for another day.

19          So bottom line is everybody had their

20  opportunity today.  I find all of the papers lacking

21  in some fashion as I've indicated to both sides.  But

22  it is appropriate then where I know that everyone can

23  be answerable to jurisdiction to transfer it to the

24  Eastern District of New York.

25          New Jersey and New York it wouldn't have been

31

1    inconvenient for either one of you.  This isn't a

2    forum non conveniens argument.  This is more an

3    argument of, Where can there be jurisdiction over

4    everyone?  That's where we are.

5            What did you want to say?

6            MR. FARHI:  I did not, Judge.

7            THE COURT:  It look like Mr. Batista is biting

8    at the bit to say something even though he is not

9    admitted.

10           Tell Mr. Farhi what you want to say.

11           (Pause.)

12           MR. FARHI:  He just wanted to say thank you,

13   your Honor, for your time in hearing us.

14           THE COURT:  That you could always say in my

15   courtroom, Mr. Batista.

16           I have to address one last thing, which is the

17   application for fees of Mr. Ackerman.

18           You received his affidavit and declaration

19   yesterday.  Did you want to respond to that?

20           MR. FARHI:  We would like the opportunity to,

21   Judge.  I'm not prepared to respond to it today.  We

22   would like to make a reply submission to your Honor on

23   that.

24           THE COURT:  Okay.  Give me a bird's eye view

25   of what that is going to be.  I'm not inclined to give

1  preparation time because you have to prepare whenever

2  you come.  It's more of the time he spent in traveling

3  here, spending the time here, and going back.

4       I invited the application last week when he

5  was here.  I'm not sure what you are going to say in

6  that regard.  So tell me today what you would like to

7  say about the time spent coming.  I'm not giving him

8  the time for prep.

9       MR. FARHI:  May I speak to Mr. Batista again,

10  Judge, if you don't mind.

11       THE COURT:  Sure.

12       (Pause.)

13       MR. FARHI:  Judge, I won't speak for Mr.

14  Batista.  I have a confession to make to the Court.

15  That is, I didn't review Mr. Ackerman's application.  I

16  didn't have that opportunity.

17       THE COURT:  It's two pages.

18       MR. FARHI:  I understand.  If your Honor tells

19  me, I'll respond to it right now.  But I was out of my

20  office yesterday at 11:00 a.m., and surprisingly for

21  me did not look at my email after that.  The letter to

22  the Court had been dictated by then and sent out.

23       So I can address it right now, your Honor, if

24  you would like.

25       THE COURT:  Especially, if I'm transferring

33

1   this case, I would like to be done with you.

2          MR. FARHI:  I understand.

3          THE COURT:  Do you have a copy of it?

4          MR. FARHI:  I don't.

5          THE COURT:  We'll show you a copy.

6          MR. FARHI:  If I can look at it, I'll respond

7   to it.  Thank you.

8          THE COURT:  Mr. Farhi, you would think

9   appearing in court today, you would be looking for

10  anything associated with your appearance today on this

11  case.  All ECF filings -- of course, that may have

12  been a problem with also why you didn't appear last

13  week.

14          (Pause.)

15          THE COURT:  Bottom line is, he's saying his

16  hourly rate is 450 an hour.  He's calculating the time

17  from when he left his office or home to come here

18  until he got back.  It's essentially four hours at

19  450.  I already said I'm not giving him prep time.

20  And the other issue I think was $76 in travel

21  expenses.

22          That's the application.  It's no more

23  complicated than that.

24          MR. FARHI:  Your Honor, thank you for

25  indulging me by letting me look at this.  I appreciate

34

1    it.

2            (Pause.)

3            MR. FARHI:  Your Honor, I'm referencing

4    paragraph 10 of Mr. Ackerman's certification in which

5    he cites $1,800 or 1806 for his efforts to date.

6    We'll pay the $1800.

7            THE COURT:  That's payable by, I take it, your

8    law firm is going to do that?

9            MR. FARHI:  Yes, Judge.

10           THE COURT:  Okay.  I'm only saying it because

11   obviously the failure to appear can't be attributed to

12   your client.

13           MR. FARHI:  No, I'm not taking issue with any

14   of that, Judge.

15           THE COURT:  Okay.

16           So I will enter an order simply that's going

17   to transfer this matter to the Eastern District and

18   awarding that amount of I think it's 18 --

19           MR. FARHI:  1800 something, Judge.

20           MR. ACKERMAN:  I think that, Judge, it has to

21   be recalculated because you did not give me the prep

22   time.  I'll calculate it and get it to Mr. Farhi

23   again.

24           MR. FARHI:  Okay.  It's less than 18?

25           THE COURT:  No, I think it was that because

1   you made it over $2,000 when you put your prep time

2   in.  You calculated separately the appearance time.

3   You have the affidavit right there.  Let me just find

4   it in my papers again.

5           MR. ACKERMAN:  Your Honor, I think you are

6   right.  I don't have it in front of me.

7           MR. FARHI:  Your Honor, I will accept any

8   representation from Mr. Ackerman that --

9           THE COURT:  Here it is.  It says, "450 an

10  hour.  I spent four hours and 15 minutes traveling.

11  I'm requesting $1,806.25 for my efforts on this date."

12          Then you put a mileage charge in and then you

13  also said, "I'm requesting fees."  It was over 2000

14  because that included the prep time.

15          We can quickly add up 450 times four and a

16  quarter hours.

17          MR. FARHI:  I will defer to the Court's math,

18  whatever your Honor determines that to be.

19          MR. ACKERMAN:  Your Honor, we can do this much

20  easier.

21          You said you will pay the $1800 that --

22          THE COURT:  I'll just put an amount of $1800

23  in.

24          MR. ACKERMAN:  That's fine.

25          THE COURT:  Okay.  That's fine.

36

1          MR. FARHI:  Your Honor, this is the Court's

2    copy.  I'm going to hand it back to your law clerk.

3          THE COURT:  So, I take it, this is my last

4    time seeing you because you will be off to another

5    jurisdiction now.

6          So all of you have a good day and you'll

7    happily go litigate somewhere else and maybe you

8    people will meet beforehand or otherwise and try and

9    resolve this matter.

10         MR. BATISTA:  Thank you for your time.

11         MR. ACKERMAN:  Thank you, Judge.

12         MR. FARHI:  Thank you, your Honor.

13         THE COURT:  Thank you.

14         THE DEPUTY CLERK:  All rise.

15         (Proceedings concluded.

16

17

18

19

20

21

22

23

24

25

37

**C E R T I F I C A T E**

PURSUANT TO TITLE 28, U.S.C., SECTION 753, THE

FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE

TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE

ABOVE-ENTITLED MATTER.

S/Vincent Russoniello
Vincent Russoniello, CCR
Certificate No. 675

**$**

**$1,800** [1] - 34:5
**$1,806.25** [1] - 35:11
**$1800** [3] - 34:6, 35:21, 35:22
**$2,000** [1] - 35:1
**$400,000** [1] - 21:13
**$76** [1] - 33:20

**0**

**08608** [1] - 1:11

**1**

**1** [1] - 4:5
**10** [1] - 34:4
**11:00** [1] - 32:20
**14** [7] - 21:6, 21:20, 22:20, 23:6, 23:25, 24:4, 24:17
**15** [7] - 20:20, 20:23, 23:17, 23:19, 23:25, 24:17, 35:10
**18** [2] - 34:18, 34:24
**1800** [1] - 34:19
**1806** [1] - 34:5
**19** [1] - 1:6
**19-6742** [1] - 1:2

**2**

**2000** [1] - 35:13
**2006** [1] - 10:25
**2008** [1] - 11:1
**2019** [1] - 1:6
**28** [1] - 37:9

**4**

**402** [1] - 1:11
**450** [4] - 33:16, 33:19, 35:9, 35:15

**5**

**5** [1] - 20:23

**6**

**6** [1] - 20:24
**609-588-9516** [1] - 1:25
**675** [1] - 37:16

**7**

**753** [1] - 37:9

**8**

**80,000** [1] - 19:10

**9**

**9** [2] - 25:5, 25:9

**A**

**a.m** [1] - 32:20
**able** [1] - 10:11
**ABOVE** [1] - 37:12
**ABOVE-ENTITLED** [1] - 37:12
**accept** [1] - 35:7
**accompanied** [1] - 2:14
**ACCURATE** [1] - 37:10
**ACKERMAN** [23] - 1:18, 1:18, 2:7, 9:20, 10:5, 14:6, 14:15, 15:2, 15:14, 15:18, 27:17, 27:21, 28:4, 28:10, 28:15, 29:8, 29:15, 30:1, 34:20, 35:5, 35:19, 35:24, 36:11
**Ackerman** [22] - 2:9, 2:21, 3:1, 3:4, 4:3, 5:20, 6:14, 7:11, 7:13, 9:9, 11:15, 13:20, 20:5, 20:14, 20:16, 21:4, 22:8, 22:17, 23:15, 27:8, 31:17, 35:8
**Ackerman's** [4] - 6:2, 6:9, 32:15, 34:4
**acknowledged** [2] - 20:5, 20:11
**acting** [3] - 28:9, 28:19, 30:10
**ACTION** [1] - 1:2
**actions** [8] - 15:23, 21:24, 25:15, 25:23, 26:18, 29:4, 29:11, 30:8
**actively** [1] - 4:18
**activities** [2] - 19:16, 26:24
**activity** [2] - 19:12, 19:14
**acts** [1] - 27:18
**actual** [3] - 9:2, 10:21, 12:1
**add** [4] - 15:17, 24:5, 24:7, 35:15
**additional** [2] - 21:8, 23:9
**address** [4] - 8:7, 13:6, 31:16, 32:23

**addressed** [1] - 8:5
**adequate** [1] - 8:17
**adequately** [1] - 8:5
**adjourn** [1] - 3:18
**adjournment** [2] - 3:12, 3:22
**admission** [2] - 3:8, 3:18
**admitted** [2] - 5:11, 31:9
**advance** [3] - 6:3, 6:4, 6:13
**advising** [1] - 5:23
**affidavit** [6] - 5:11, 24:14, 24:16, 25:22, 31:18, 35:3
**affidavits** [1] - 22:25
**aggressively** [1] - 6:14
**ago** [5] - 3:16, 4:10, 4:23, 15:21, 20:16
**agree** [2] - 19:20, 26:9
**agreement** [2] - 24:9, 25:10
**ahead** [3] - 18:7, 25:1, 25:7
**Akbar** [1] - 15:5
**al** [1] - 1:7
**Alan** [1] - 2:8
**ALAN** [2] - 1:18, 1:18
**allegation** [2] - 16:12, 23:12
**allegations** [3] - 13:1, 15:4, 17:12
**alleged** [1] - 19:23
**alleges** [1] - 25:15
**alleging** [1] - 20:4
**alter** [2] - 22:12, 27:13
**amount** [2] - 34:18, 35:22
**AN** [1] - 37:10
**analysis** [9] - 13:23, 16:23, 16:25, 17:5, 17:19, 18:24, 19:4, 22:11
**analyze** [1] - 19:1
**annexed** [1] - 28:12
**answer** [1] - 4:25
**answerable** [1] - 30:23
**answers** [1] - 23:25
**apologize** [5] - 2:20, 2:24, 7:9, 23:3, 28:13
**apologized** [1] - 2:21
**apology** [1] - 2:25
**appear** [3] - 4:18, 33:12, 34:11

**appearance** [3] - 4:24, 33:10, 35:2
**appearances** [1] - 2:5
**appearing** [3] - 2:22, 3:5, 33:9
**appended** [1] - 25:6
**application** [8] - 2:13, 3:5, 3:7, 5:3, 31:17, 32:4, 32:15, 33:22
**appreciate** [3] - 3:20, 5:7, 33:25
**appropriate** [2] - 5:3, 30:22
**April** [1] - 4:5
**argue** [1] - 10:11
**argues** [1] - 21:4
**arguing** [5] - 6:17, 7:5, 9:16, 11:16, 27:13
**argument** [6] - 9:12, 18:15, 20:5, 27:10, 31:2, 31:3
**arranged** [1] - 21:16
**aside** [3] - 7:4, 13:7, 17:9
**aspect** [1] - 4:6
**aspects** [1] - 14:3
**assert** [2] - 9:23, 11:20
**asserted** [3] - 8:13, 8:18, 8:20
**asserting** [1] - 23:1
**assistance** [1] - 30:11
**associated** [1] - 33:10
**attempted** [1] - 14:7
**attended** [1] - 16:3
**attention** [1] - 4:11
**attorney** [2] - 2:15, 22:18
**attorneys** [1] - 22:24
**attributed** [1] - 34:11
**awarding** [1] - 34:18
**aware** [4] - 2:16, 3:19, 4:3, 4:4

**B**

**Bank** [1] - 19:4
**based** [2] - 6:19, 21:22
**bases** [1] - 8:10
**basis** [1] - 9:23
**BATISTA** [5] - 1:21, 7:6, 9:15, 9:17, 36:10
**batista** [1] - 9:16
**Batista** [12] - 2:14, 3:8, 5:5, 5:22, 6:16, 7:4, 10:14, 12:8, 31:7, 31:15,

32:9, 32:14
**Batista's** [4] - 4:9, 4:11, 4:16, 6:8
**BE** [1] - 37:10
**bear** [1] - 24:18
**become** [1] - 21:12
**becomes** [1] - 22:6
**beforehand** [1] - 36:8
**beg** [1] - 4:12
**behalf** [16] - 1:19, 1:22, 2:8, 3:8, 14:21, 20:25, 21:1, 21:22, 22:8, 23:1, 23:22, 23:23, 26:18, 28:19, 28:24, 29:11
**behest** [1] - 16:5
**believes** [1] - 5:22
**best** [1] - 26:16
**better** [1] - 17:4
**beyond** [1] - 5:15
**big** [1] - 9:11
**bigger** [1] - 27:2
**Bikram** [1] - 23:21
**bird's** [1] - 31:24
**bit** [1] - 31:8
**biting** [1] - 31:7
**Bongiovanni** [2] - 3:13, 6:21
**bottom** [4] - 21:21, 26:10, 30:19, 33:15
**brief** [2] - 5:12, 13:21
**briefly** [1] - 12:9
**broadcast** [2] - 21:13, 21:15
**BROADCASTING** [1] - 1:6
**Broadcasting** [2] - 28:11, 28:25
**bunch** [1] - 20:19
**business** [13] - 11:18, 13:17, 15:7, 18:18, 18:20, 18:21, 18:24, 19:6, 20:10, 21:12, 23:9, 24:12
**buying** [1] - 19:22
**BY** [1] - 1:18

**C**

**cable** [1] - 16:1
**calculate** [1] - 34:22
**calculated** [1] - 35:2
**calculating** [1] - 33:16
**Calder** [1] - 19:3

**cancer** [1] - 4:10
**candid** [1] - 4:13
**candidly** [1] - 4:2
**cannot** [2] - 8:22, 27:15
**capital** [1] - 18:2
**Carteret** [1] - 19:4
**case** [8] - 9:23, 10:11, 13:8, 26:16, 27:11, 28:21, 33:1, 33:11
**causing** [1] - 2:22
**CCR** [2] - 1:24, 37:16
**certain** [2] - 7:10, 18:1
**certainly** [7] - 3:19, 6:10, 6:19, 11:11, 20:2, 21:21, 22:17
**Certificate** [1] - 37:16
**certification** [5] - 17:16, 20:21, 22:25, 28:12, 34:4
**CERTIFIED** [1] - 37:10
**charge** [1] - 35:12
**checks** [5] - 27:20, 27:23, 28:4, 29:10, 30:5
**cited** [1] - 27:11
**cites** [1] - 34:5
**citing** [1] - 20:22
**citizenship** [1] - 9:7
**CIVIL** [1] - 1:2
**claim** [11] - 8:13, 8:17, 8:19, 8:21, 9:1, 9:10, 10:1, 10:3, 11:4, 11:21, 19:9
**claims** [12] - 17:9, 17:10, 17:11, 17:20, 19:2, 19:3, 19:17, 20:2, 22:4
**clarify** [1] - 16:18
**CLARKSON** [1] - 1:11
**clear** [2] - 8:25, 14:10
**clearly** [3] - 26:25, 28:18, 28:25
**CLERK** [2] - 2:3, 36:14
**clerk** [1] - 36:2
**client** [4] - 16:19, 30:10, 30:16, 34:12
**client's** [1] - 24:14
**clients** [1] - 22:25
**close** [1] - 24:4
**coming** [3] - 16:7, 21:23, 32:7
**comment** [1] - 22:15
**commerce** [1] - 18:24
**companies** [7] - 5:25, 18:3, 19:18, 19:19, 22:6,

22:9, 26:19
**company** [5] - 11:18, 20:11, 22:10, 25:22, 29:5
**complain** [1] - 4:12
**COMPLAINT** [1] - 1:5
**complaint** [2] - 8:19, 15:24
**complicated** [1] - 33:23
**concern** [1] - 22:6
**concluded** [1] - 36:15
**confer** [1] - 12:8
**confession** [1] - 32:14
**conflate** [1] - 23:16
**conflates** [1] - 13:24
**conflict** [2] - 5:22, 6:8
**confusing** [1] - 18:22
**confusion** [1] - 8:18
**connection** [4] - 3:5, 5:5, 5:24, 29:4
**connects** [1] - 8:15
**consider** [1] - 7:14
**conspiracy** [1] - 8:22
**conspire** [1] - 8:22
**contacted** [1] - 15:18
**contacts** [8] - 15:17, 17:1, 17:24, 17:25, 18:4, 19:7
**continue** [1] - 27:9
**continued** [2] - 20:24, 23:22
**continues** [1] - 23:19
**contract** [3] - 17:20, 17:21, 22:4
**contracts** [2] - 15:25, 20:17
**contractual** [3] - 17:10, 17:11, 19:2
**convenience** [1] - 2:24
**conveniens** [1] - 31:2
**conversations** [3] - 6:24, 16:9, 19:25
**convey** [1] - 14:7
**convinced** [1] - 21:13
**copy** [3] - 33:3, 33:5, 36:2
**CORP** [1] - 1:6
**Corp** [1] - 28:25
**corporate** [2] - 22:11, 28:3
**corporation** [6] - 8:22, 9:6, 13:15, 27:12, 27:19, 28:25

**corporations** [12] - 11:22, 13:14, 27:7, 27:10, 27:16, 27:25, 28:6, 28:7, 28:24, 30:4, 30:8, 30:11
**correct** [2] - 15:13, 15:14
**couple** [4] - 4:22, 8:4, 15:9, 17:21
**course** [5] - 3:11, 6:21, 10:2, 21:23, 33:11
**court** [4] - 2:1, 10:1, 17:3, 33:9
**COURT** [79] - 1:1, 1:25, 2:4, 3:3, 3:10, 3:16, 3:24, 4:15, 4:21, 5:2, 5:16, 5:18, 6:15, 7:7, 7:12, 7:23, 7:25, 8:3, 9:16, 9:19, 9:22, 10:6, 10:10, 10:13, 10:20, 10:23, 11:6, 11:9, 11:20, 12:3, 12:6, 12:10, 12:14, 14:9, 14:25, 15:3, 15:16, 16:16, 17:18, 18:7, 18:21, 21:6, 22:16, 22:23, 23:17, 24:13, 24:19, 25:1, 25:4, 25:7, 25:12, 26:2, 26:9, 27:20, 27:22, 28:7, 28:16, 29:11, 29:16, 30:6, 31:7, 31:14, 31:24, 32:11, 32:17, 32:25, 33:3, 33:5, 33:8, 33:15, 34:7, 34:10, 34:15, 34:25, 35:9, 35:22, 35:25, 36:3, 36:13
**Court** [14] - 2:20, 2:22, 2:25, 4:2, 11:12, 12:24, 14:7, 14:22, 29:9, 29:19, 30:3, 32:14, 32:22
**Court's** [3] - 4:13, 35:17, 36:1
**COURTHOUSE** [1] - 1:11
**courtroom** [1] - 31:15
**creditors** [2] - 21:10, 28:5

**D**

**date** [5] - 7:16, 12:6, 12:13, 34:5, 35:11
**dates** [1] - 15:21
**deal** [3] - 3:6, 7:21, 26:23
**declaration** [3] - 5:4, 25:16, 31:18

**declarations** [1] - 24:20
**defendant** [11] - 11:18, 13:8, 15:25, 16:7, 16:12, 20:6, 20:25, 21:1, 21:10, 23:23, 23:24
**defendants** [7] - 2:12, 2:15, 13:23, 14:12, 14:17, 14:19, 18:18
**Defendants** [2] - 1:7, 1:22
**defendants'** [2] - 9:21, 13:4
**defer** [1] - 35:17
**defined** [3] - 13:9, 13:13, 22:3
**delivered** [1] - 21:15
**delivery** [1] - 21:16
**DEPUTY** [2] - 2:3, 36:14
**describes** [1] - 15:9
**destroy** [2] - 9:11, 9:25
**detail** [2] - 6:10, 21:3
**determine** [3] - 9:6, 11:24, 14:4
**determined** [1] - 14:23
**determines** [1] - 35:18
**diagnosed** [1] - 4:10
**dictated** [1] - 32:22
**difference** [1] - 16:21
**different** [8] - 5:24, 6:23, 6:24, 7:3, 8:25, 17:12, 18:4, 21:7
**directed** [4] - 4:11, 19:8, 19:14, 26:24
**direction** [2] - 21:18, 24:2
**directly** [1] - 28:5
**disciplinary** [1] - 5:12
**discuss** [2] - 21:8, 23:8
**discussed** [2] - 15:6, 18:2
**discussing** [1] - 14:11
**discussion** [3] - 18:10, 23:12, 23:14
**DISMISS** [1] - 1:5
**dismissing** [2] - 29:18, 29:19
**dispute** [7] - 17:13, 17:14, 19:21, 25:18, 26:11, 26:12, 26:17
**disputed** [3] - 17:25, 18:3, 19:24
**disputes** [2] - 25:15, 25:21

**disregard** [1] - 30:7
**DISTRICT** [2] - 1:1, 1:1
**District** [4] - 29:17, 29:24, 30:24, 34:17
**diversity** [5] - 8:12, 8:14, 9:2, 9:11, 9:25
**document** [9] - 10:7, 10:8, 10:18, 10:20, 10:25, 11:2, 11:4, 12:1, 12:6
**documentation** [2] - 24:10, 25:17
**domiciled** [1] - 13:10
**domiciliary** [1] - 12:19
**done** [10] - 5:6, 5:9, 14:22, 16:5, 16:11, 18:6, 18:7, 27:14, 29:4, 33:1
**doubt** [3] - 16:19, 22:2, 26:20
**doubts** [1] - 10:2
**down** [3] - 22:19, 23:5, 24:6
**due** [3] - 6:21, 7:15, 17:6

**E**

**EARLE** [1] - 1:20
**Earle** [1] - 2:12
**easier** [1] - 35:20
**EAST** [1] - 1:11
**Eastern** [4] - 29:17, 29:24, 30:24, 34:17
**easy** [1] - 26:4
**ECF** [1] - 33:11
**effect** [2] - 20:1, 20:2
**efforts** [11] - 20:25, 21:9, 21:18, 21:22, 23:10, 23:22, 24:1, 24:2, 24:15, 34:5, 35:11
**ego** [2] - 22:12, 27:13
**either** [6] - 6:25, 13:14, 14:3, 19:17, 19:23, 31:1
**ELLIS** [1] - 1:20
**Ellis** [1] - 2:12
**email** [1] - 32:21
**employees** [3] - 8:23, 16:2, 21:9
**employees..** [1] - 23:10
**employment** [2] - 16:2, 20:18
**end** [1] - 30:15
**engaged** [1] - 4:19
**engaging** [1] - 16:8

**enter** [1] - 34:16
**entered** [1] - 18:19
**entities** [12] - 13:12, 14:21, 16:7, 20:25, 21:1, 21:10, 23:23, 23:24, 28:3, 29:10, 29:12, 29:22
**ENTITLED** [1] - 37:12
**entry** [1] - 4:24
**equipment** [4] - 16:2, 20:18, 21:14
**error** [2] - 2:21
**especially** [1] - 32:25
**ESQUIRE** [3] - 1:18, 1:20, 1:21
**essentially** [4] - 2:15, 17:10, 20:7, 33:18
**et** [1] - 1:6
**event** [1] - 5:21
**exact** [1] - 15:21
**exactly** [2] - 14:2, 16:16
**except** [1] - 20:12
**exists** [1] - 10:7
**expecting** [1] - 7:12
**expenses** [1] - 33:21
**experienced** [1] - 22:18
**explain** [1] - 5:8
**extensive** [3] - 24:11, 24:12
**extent** [3] - 4:3, 15:15, 19:9
**eye** [1] - 31:24

**F**

**facetious** [1] - 12:8
**fact** [7] - 7:2, 9:5, 16:13, 16:14, 17:17, 26:21, 28:11
**facts** [1] - 10:10
**failure** [1] - 34:11
**fall** [1] - 19:3
**FARHI** [64] - 1:20, 1:20, 2:10, 2:11, 3:9, 3:15, 3:23, 3:25, 4:20, 5:1, 5:14, 5:17, 6:1, 7:8, 7:21, 7:24, 8:2, 10:9, 10:12, 10:15, 10:22, 11:5, 11:7, 11:13, 12:2, 12:5, 12:7, 12:11, 12:13, 17:15, 18:5, 18:9, 20:4, 22:15, 22:17, 23:3, 24:5, 24:18, 24:22, 25:2, 25:5, 25:9, 25:24, 26:7, 29:25,

31:6, 31:12, 31:20, 32:9, 32:13, 32:18, 33:2, 33:4, 33:6, 33:24, 34:3, 34:9, 34:13, 34:19, 34:24, 35:7, 35:17, 36:1, 36:12
**Farhi** [10] - 2:11, 2:12, 3:7, 10:8, 10:10, 16:22, 17:8, 31:10, 33:8, 34:22
**fashion** [2] - 9:24, 30:21
**federal** [3] - 8:13, 8:17, 10:1
**fees** [4] - 3:5, 21:11, 31:17, 35:13
**feet** [1] - 4:6
**felt** [1] - 20:3
**few** [3] - 3:16, 4:10, 20:16
**file** [5] - 7:13, 7:17, 7:18, 7:19, 30:2
**filed** [10] - 3:4, 3:7, 4:22, 4:23, 4:25, 5:9, 5:20, 6:6, 11:14
**filing** [2] - 3:11, 3:21
**filings** [1] - 33:11
**finalize** [2] - 21:17, 23:20
**fine** [3] - 15:2, 35:24, 35:25
**finite** [1] - 10:16
**firm** [1] - 34:8
**first** [9] - 2:19, 4:24, 8:7, 15:1, 23:5, 23:11, 24:22, 24:24, 25:24
**FISHER** [1] - 1:11
**flummoxed** [1] - 13:21
**FLW** [1] - 1:2
**focus** [3] - 14:25, 16:22, 17:4
**focusing** [1] - 13:13
**FOLLOWING** [1] - 37:10
**following** [1] - 14:7
**FOR** [1] - 1:1
**forays** [1] - 19:24
**forget** [1] - 19:18
**formal** [3] - 7:13, 7:14, 7:19
**formalities** [2] - 27:9, 27:12
**forth** [1] - 21:21
**forum** [5] - 19:8, 19:12, 19:14, 26:24, 31:2
**forum-directed** [2] - 19:14, 26:24
**forum-related** [1] - 19:12

forward [1] - 6:18
four [3] - 33:18, 35:10, 35:15
frankly [1] - 29:12
FREDA [1] - 1:14
front [1] - 35:6

**G**

general [8] - 13:8, 13:9, 13:19, 14:3, 14:5, 18:23, 19:15, 29:1
Gill [14] - 2:8, 5:23, 6:25, 9:10, 13:2, 15:19, 15:23, 16:12, 17:14, 20:17, 23:1, 23:4, 24:10, 25:10
GILL [1] - 1:4
Gill's [2] - 14:20, 28:21
given [4] - 12:15, 13:2, 13:18, 28:8
grave [1] - 10:2
guess [1] - 12:19

**H**

hac [6] - 2:16, 3:8, 3:17, 5:3, 6:4, 6:13
hand [1] - 36:2
happily [1] - 36:7
health [2] - 4:16, 5:7
hearing [2] - 3:12, 31:13
herself [1] - 14:18
home [1] - 33:17
Honor [42] - 2:7, 2:10, 2:16, 3:9, 3:23, 4:1, 5:14, 6:1, 6:7, 6:11, 7:6, 7:8, 9:15, 10:9, 10:17, 10:22, 12:2, 14:6, 18:6, 18:9, 20:12, 20:20, 20:23, 22:17, 24:8, 24:23, 27:17, 28:4, 29:8, 30:1, 31:13, 31:22, 32:18, 32:23, 33:24, 34:3, 35:5, 35:7, 35:18, 35:19, 36:1, 36:12
HONORABLE [1] - 1:14
hour [2] - 33:16, 35:10
hourly [1] - 33:16
hours [3] - 33:18, 35:10, 35:16

**I**

identified [3] - 2:19, 15:20, 15:23

identify [1] - 24:23
ignore [2] - 16:14, 27:12
ignored [1] - 18:14
impair [1] - 4:7
impairing [1] - 4:8
important [1] - 11:11
IN [1] - 37:11
inadequate [1] - 12:16
inclined [1] - 31:25
included [1] - 35:14
inconvenient [1] - 31:1
incorporated [2] - 13:16, 29:1
indeed [1] - 7:1
India [3] - 12:19, 12:20, 28:24
Indian [1] - 13:15
indicate [2] - 10:18
indicated [3] - 28:2, 30:10, 30:21
indicates [1] - 30:7
indication [1] - 18:19
individual [3] - 9:7, 13:9, 13:10
individually [3] - 14:14, 14:18, 16:6
indulging [1] - 33:25
information [2] - 4:14, 10:16
infusion [1] - 18:2
inquiry [1] - 4:13
instead [1] - 29:19
intended [1] - 18:18
intent [1] - 6:2
interest [5] - 19:18, 19:22, 25:13, 25:20
interim [1] - 3:17
interrupt [1] - 18:5
intertwined [1] - 13:1
investment [1] - 14:20
investments [2] - 21:8, 23:9
invited [1] - 32:4
involved [3] - 5:23, 6:23, 6:25
involvement [2] - 3:20, 14:20
involvements [1] - 24:12
IS [1] - 37:10
isolation [1] - 23:18
issue [7] - 4:21, 5:19, 7:3, 26:24, 29:19, 33:20, 34:13

issues [8] - 4:16, 5:7, 7:1, 8:4, 8:14, 11:10, 13:6, 30:15

**J**

JERSEY [1] - 1:1
Jersey [33] - 12:21, 12:23, 13:11, 13:17, 14:8, 14:17, 14:22, 14:24, 15:5, 15:8, 15:11, 15:17, 15:19, 16:7, 16:11, 16:14, 16:24, 17:2, 17:13, 17:20, 18:1, 18:13, 18:17, 18:18, 20:1, 20:7, 21:19, 21:25, 23:8, 24:3, 26:13, 26:21, 30:25
jointly [1] - 6:25
Jones [1] - 19:3
Judge [35] - 3:13, 3:15, 4:5, 4:20, 5:1, 6:20, 7:21, 8:2, 10:5, 10:12, 10:15, 11:5, 11:14, 12:5, 12:8, 12:9, 12:13, 14:15, 17:16, 20:4, 23:3, 23:11, 24:6, 24:22, 25:25, 26:7, 29:15, 31:6, 31:21, 32:10, 34:9, 34:14, 34:19, 34:20, 36:11
judge [1] - 32:13
JULY [1] - 1:6
jurisdiction [46] - 8:7, 8:8, 8:9, 8:10, 8:14, 8:15, 11:11, 12:17, 12:24, 12:25, 13:7, 13:8, 13:9, 13:19, 13:24, 13:25, 14:1, 14:2, 14:4, 14:5, 14:9, 14:11, 14:16, 17:3, 17:6, 17:23, 18:25, 22:3, 22:5, 22:14, 26:11, 27:1, 27:3, 27:16, 28:17, 28:18, 29:1, 29:7, 29:20, 29:23, 30:3, 30:12, 30:23, 31:3, 36:5
jurisdictions [1] - 18:23
Jus [4] - 9:5, 23:9, 28:10, 28:25
JUS [1] - 1:6

**K**

Kashmir [1] - 2:8
KASHMIR [1] - 1:4

Kates [1] - 2:11
KATES [1] - 1:20
keep [1] - 10:13
kinds [1] - 17:8
knowing [1] - 19:25
knows [1] - 22:18

**L**

lacking [1] - 30:20
last [8] - 2:22, 3:5, 4:17, 26:6, 31:16, 32:4, 33:12, 36:3
late [2] - 3:10, 3:21
LAW [1] - 1:18
law [3] - 17:20, 34:8, 36:2
lawsuits [1] - 16:4
least [3] - 8:19, 19:20, 22:21
leaves [1] - 29:6
left [1] - 33:17
less [1] - 34:24
letter [6] - 5:20, 6:3, 6:5, 6:10, 7:14, 32:21
letting [1] - 33:25
liability [1] - 9:6
licensing [1] - 16:1
lies [1] - 22:13
limited [1] - 9:6
line [4] - 21:21, 26:10, 30:19, 33:15
Linus [1] - 27:11
listen [1] - 7:5
literally [1] - 22:21
litigate [1] - 36:7
LLC [20] - 9:5, 9:8, 9:10, 11:3, 11:10, 12:25, 13:13, 13:17, 24:9, 27:4, 27:6, 27:24, 28:1, 28:15, 28:17, 28:18, 29:12, 29:13, 30:12, 30:16
LLP [1] - 1:20
loan [1] - 21:13
loans [9] - 15:6, 15:11, 19:20, 19:21, 21:24, 26:11, 26:14, 26:15, 26:17
located [2] - 29:24, 29:25
locations [1] - 26:13
look [17] - 9:2, 14:13, 17:20, 17:21, 18:25, 19:15, 19:16, 20:12,

20:13, 22:2, 23:17, 23:19, 26:4, 31:7, 32:21, 33:6, 33:25
**looking** [8] - 9:7, 10:13, 10:15, 19:7, 22:20, 23:18, 25:24, 33:9
**loop** [1] - 24:4

**M**

**Matawan** [6] - 21:9, 21:15, 21:19, 21:23, 23:8, 24:3
**math** [1] - 35:17
**matter** [8] - 8:9, 12:25, 17:17, 17:18, 19:15, 25:11, 34:17, 36:9
**MATTER** [1] - 37:12
**matters** [1] - 5:12
**mean** [1] - 20:9
**means** [2] - 19:1, 20:9
**meet** [5] - 17:13, 20:10, 21:23, 26:21, 36:8
**meeting** [5] - 15:5, 15:8, 20:22, 20:24, 23:22
**meetings** [7] - 14:23, 15:9, 15:20, 15:22, 16:3, 18:1, 18:15
**meets** [1] - 21:25
**member** [18] - 9:10, 9:14, 9:15, 9:24, 10:19, 11:17, 11:21, 12:18, 13:3, 24:15, 25:21, 27:4, 28:19, 28:21, 30:17
**members** [12] - 9:7, 10:6, 10:7, 10:21, 11:1, 11:3, 12:1, 12:3, 12:23, 13:14, 27:5, 28:21
**met** [3] - 19:9, 21:8, 26:12
**Michael** [1] - 2:11
**MICHAEL** [1] - 1:20
**might** [1] - 30:1
**mileage** [1] - 35:12
**mind** [2] - 22:3, 32:10
**mine** [1] - 28:13
**minute** [1] - 24:18
**minutes** [2] - 20:16, 35:10
**misses** [1] - 18:10
**moment** [6] - 3:3, 8:1, 8:10, 17:8, 18:21, 27:15
**money** [3] - 15:10, 21:24, 22:1

**monies** [1] - 15:12
**months** [2] - 3:16, 4:23
**morning** [4] - 2:7, 2:10, 2:14, 3:2
**MOTION** [1] - 1:5
**motion** [11] - 2:17, 3:14, 4:22, 4:23, 5:5, 5:9, 6:3, 6:4, 6:13, 10:24, 12:15
**moved** [1] - 3:17
**moving** [1] - 2:13
**MR** [86] - 2:7, 2:10, 3:9, 3:15, 3:23, 3:25, 4:20, 5:1, 5:14, 5:17, 6:1, 7:6, 7:8, 7:21, 7:24, 8:2, 9:15, 9:17, 9:20, 10:5, 10:9, 10:12, 10:15, 10:22, 11:5, 11:7, 11:13, 12:2, 12:5, 12:7, 12:11, 12:13, 14:6, 14:15, 15:2, 15:14, 15:18, 17:15, 18:5, 18:9, 20:4, 22:15, 22:17, 23:3, 24:5, 24:18, 24:22, 25:2, 25:5, 25:9, 25:24, 26:7, 27:17, 27:21, 28:4, 28:10, 28:15, 29:8, 29:15, 29:25, 30:1, 31:6, 31:12, 31:20, 32:9, 32:13, 32:18, 33:2, 33:4, 33:6, 33:24, 34:3, 34:9, 34:13, 34:19, 34:20, 34:24, 35:5, 35:7, 35:17, 35:19, 35:24, 36:1, 36:10, 36:11, 36:12
**must** [1] - 13:20
**muster** [1] - 13:23
**MY** [1] - 37:11

**N**

**need** [2] - 18:25, 27:22
**needed** [1] - 21:14
**negotiated** [7] - 15:25, 16:1, 16:3, 17:22, 19:10, 20:17, 20:18
**negotiating** [2] - 21:10, 21:11
**negotiations** [2] - 6:24, 16:9
**never** [3] - 3:17, 8:23, 25:10
**NEW** [2] - 1:1, 1:21
**New** [47] - 12:19, 12:20, 12:21, 12:23, 13:11,

13:15, 13:17, 14:8, 14:17, 14:22, 14:24, 15:5, 15:8, 15:10, 15:11, 15:17, 15:19, 16:7, 16:11, 16:13, 16:14, 16:20, 16:24, 17:2, 17:13, 17:20, 18:1, 18:12, 18:17, 18:18, 20:1, 20:7, 21:19, 21:25, 23:8, 24:3, 26:13, 26:20, 26:22, 26:23, 29:1, 29:17, 30:24, 30:25
**NJ** [1] - 1:11
**NO** [1] - 1:2
**non** [1] - 31:2
**none** [1] - 13:16
**normal** [1] - 5:10
**note** [2] - 8:18, 24:9
**NOTES** [1] - 37:11
**nothing** [6] - 5:14, 11:15, 11:16, 13:4, 22:7
**number** [2] - 18:11, 21:21
**numerous** [2] - 16:8, 17:16
**Nussman** [1] - 2:12
**NUSSMAN** [1] - 1:20

**O**

**obligation** [2] - 29:14, 30:14
**obviously** [3] - 7:15, 11:9, 34:11
**occasions** [1] - 26:21
**occurred** [7] - 14:24, 15:10, 15:21, 18:1, 19:25, 21:18, 24:2
**OF** [4] - 1:1, 1:4, 1:18, 37:11
**office** [7] - 11:19, 21:15, 21:19, 23:8, 24:3, 32:20, 33:17
**officers** [1] - 8:23
**OFFICES** [1] - 1:18
**OFFICIAL** [1] - 1:25
**often** [1] - 16:20
**old** [1] - 10:25
**one** [24] - 3:10, 8:12, 9:14, 9:15, 11:9, 14:13, 15:4, 15:6, 16:18, 18:16, 18:21, 19:10, 21:4, 22:10, 22:15, 24:7, 24:25, 25:1, 25:2, 25:24,

30:7, 31:1, 31:16
**open** [2] - 2:1, 13:18
**operated** [1] - 11:17
**opportunity** [7] - 6:9, 6:19, 30:2, 30:14, 30:20, 31:20, 32:16
**oppose** [3] - 6:3, 6:4, 6:13
**opposed** [3] - 19:22, 29:12, 30:12
**opposing** [1] - 5:21
**opposition** [8] - 6:13, 7:13, 7:14, 7:15, 7:17, 7:20, 11:14, 13:22
**option** [1] - 29:18
**order** [1] - 34:16
**otherwise** [1] - 36:8
**overlooked** [1] - 9:5
**owes** [2] - 19:13, 19:19
**own** [1] - 4:17
**owner** [1] - 25:21
**ownership** [2] - 25:13, 25:20

**P**

**packages** [1] - 16:1
**page** [2] - 20:23, 20:24
**pages** [1] - 32:17
**papers** [7] - 8:6, 11:14, 20:12, 20:13, 25:3, 30:20, 35:4
**paragraph** [10] - 20:20, 20:23, 21:6, 21:20, 24:4, 24:17, 25:4, 25:5, 25:8, 34:4
**Paragraph** [1] - 25:9
**part** [6] - 6:8, 9:11, 11:22, 20:8, 23:5
**particularly** [2] - 5:9, 17:19
**parties** [1] - 29:7
**partner** [1] - 21:12
**partnership** [3] - 21:17, 23:21, 25:10
**party** [1] - 2:13
**pass** [1] - 13:23
**past** [1] - 22:12
**Paul** [1] - 2:14
**PAUL** [1] - 1:21
**Pause** [2] - 26:1, 33:14
**pause** [6] - 12:12, 24:21, 28:14, 31:11, 32:12,

34:2
**pay** [3] - 28:5, 34:6, 35:21
**payable** [1] - 34:7
**pending** [2] - 2:16, 5:11
**Penny** [3] - 14:8, 14:17, 16:5
**people** [1] - 36:8
**perform** [4] - 14:21, 15:23, 21:1, 23:23
**period** [2] - 4:7, 11:16
**permission** [1] - 12:7
**permit** [1] - 3:12
**personal** [7] - 4:16, 8:8, 12:24, 13:7, 13:24, 14:1, 15:19
**pierce** [2] - 27:13, 27:18
**piercing** [1] - 22:11
**place** [3] - 13:17, 17:4, 21:24
**places** [1] - 18:4
**plaintiff** [9] - 2:8, 5:24, 10:19, 11:17, 13:2, 18:9, 18:14, 20:4, 20:13
**Plaintiff** [2] - 1:5, 1:19
**plaintiff's** [2] - 20:20, 20:21
**pleadings** [2] - 16:13, 30:2
**pled** [1] - 8:24
**point** [8] - 3:6, 5:6, 7:2, 7:16, 16:21, 19:10, 19:11, 22:19
**pointed** [1] - 24:23
**position** [6] - 6:7, 6:12, 9:13, 9:21, 13:4, 30:16
**practice** [1] - 4:7
**premature** [1] - 7:8
**prep** [5] - 32:8, 33:19, 34:21, 35:1, 35:14
**preparation** [1] - 32:1
**prepare** [1] - 32:1
**prepared** [2] - 10:16, 31:21
**present** [1] - 4:2
**principal** [1] - 13:17
**pro** [6] - 2:16, 3:8, 3:17, 5:3, 6:4, 6:13
**problem** [6] - 10:4, 22:13, 27:8, 28:1, 29:6, 33:12
**proceed** [1] - 3:1
**Proceedings** [1] - 36:15

**process** [1] - 17:6
**promising** [1] - 21:11
**proof** [1] - 13:19
**properly** [1] - 24:8
**provide** [1] - 25:17
**provided** [5] - 10:24, 11:8, 11:25, 24:10
**providing** [1] - 30:11
**Punjabi** [2] - 9:5, 23:9
**purchase** [1] - 21:13
**purchased** [2] - 16:2, 20:18
**purely** [1] - 13:20
**purposes** [1] - 11:11
**PURSUANT** [1] - 37:9
**pursue** [1] - 29:21
**put** [6] - 7:4, 13:7, 17:9, 35:1, 35:12, 35:22

---

**Q**

**quantum** [1] - 17:24
**quarter** [1] - 35:16
**questions** [3] - 6:20, 6:22, 12:16
**quickly** [2] - 2:19, 35:15

---

**R**

**raise** [2] - 8:5, 9:1
**raised** [3] - 5:8, 5:19, 8:11
**raises** [2] - 7:1, 12:23
**rate** [1] - 33:16
**reach** [1] - 17:23
**read** [7] - 22:20, 22:21, 23:4, 23:11, 23:12, 23:20, 23:25
**ready** [1] - 3:1
**real** [1] - 4:24
**really** [8] - 5:8, 5:10, 8:20, 12:16, 18:17, 19:5, 22:7, 30:7
**reason** [2] - 3:21, 12:2
**reasons** [1] - 4:1
**recalculated** [1] - 34:21
**received** [2] - 25:10, 31:18
**recent** [1] - 11:2
**recognize** [1] - 27:9
**record** [2] - 7:20, 12:14
**reduce** [1] - 21:11
**refer** [1] - 24:22
**referencing** [1] - 34:3

**referred** [1] - 24:8
**regard** [9] - 8:16, 9:4, 11:12, 17:7, 17:11, 19:1, 27:7, 30:16, 32:6
**regardless** [1] - 8:14
**regularly** [1] - 15:18
**reiterates** [1] - 25:9
**related** [1] - 19:12
**relationship** [1] - 26:3
**replete** [1] - 11:23
**reply** [5] - 17:15, 25:1, 25:2, 26:6, 31:22
**REPORTER** [1] - 1:25
**representation** [2] - 6:23, 35:8
**representative** [3] - 14:19, 16:6, 27:19
**request** [2] - 3:11, 3:22
**requested** [3] - 15:22, 21:2, 23:24
**requesting** [2] - 35:11, 35:13
**required** [1] - 5:12
**requires** [1] - 8:22
**reschedule** [1] - 2:23
**resident** [3] - 12:19, 12:21, 13:10
**resolve** [1] - 36:9
**respectfully** [1] - 23:15
**respond** [12] - 3:23, 6:1, 6:9, 7:10, 7:18, 11:13, 18:6, 18:8, 31:19, 31:21, 32:19, 33:6
**responded** [1] - 19:14
**responding** [1] - 4:13
**Restaurant** [1] - 15:5
**return** [1] - 7:16
**review** [1] - 32:15
**reviewed** [1] - 26:5
**RICO** [8] - 8:13, 8:17, 8:19, 8:21, 9:1, 10:1, 10:3, 17:9
**rise** [2] - 2:3, 36:14
**rule** [5] - 3:12, 3:13, 6:18, 6:21, 8:16
**Russoniello** [2] - 37:15, 37:16
**RUSSONIELLO** [1] - 1:24

---

**S**

**S/Vincent** [1] - 37:15

**Sandhu** [19] - 5:25, 6:25, 12:4, 12:18, 13:11, 14:8, 14:12, 14:17, 14:25, 16:6, 20:6, 22:5, 22:10, 22:14, 23:7, 23:20, 24:24, 27:24, 30:9
**satisfied** [4] - 12:18, 12:22, 17:6, 30:13
**satisfies** [1] - 28:23
**satisfy** [2] - 17:2, 30:2
**scant** [1] - 5:10
**seat** [2] - 3:3, 7:25
**seated** [1] - 2:6
**second** [5] - 2:18, 24:24, 24:25, 25:2, 25:5
**section** [1] - 8:25
**SECTION** [1] - 37:9
**secure** [3] - 16:1, 21:9, 23:10
**secured** [1] - 20:17
**securing** [1] - 24:12
**see** [4] - 16:20, 19:24, 24:13, 26:7
**seeing** [1] - 36:4
**sends** [2] - 15:10, 22:1
**sent** [1] - 32:22
**sentence** [1] - 23:5
**separate** [2] - 29:14, 30:8
**separated** [1] - 28:2
**separately** [3] - 7:1, 19:1, 35:2
**serious** [1] - 24:12
**seriously** [1] - 22:21
**services** [2] - 21:1, 23:23
**sets** [1] - 21:21
**settlements** [2] - 16:3, 20:19
**several** [1] - 23:7
**show** [3] - 10:7, 24:16, 33:5
**showed** [1] - 10:25
**shows** [4] - 10:20, 11:2, 12:1, 29:4
**sides** [2] - 12:15, 30:21
**signed** [1] - 17:22
**significantly** [1] - 4:9
**simply** [3] - 5:10, 22:9, 34:16
**sit** [3] - 22:19, 23:5, 24:6
**solicit** [1] - 14:19
**somewhat** [1] - 4:8
**somewhere** [2] - 17:1, 36:7

**sorry** [2] - 4:15, 9:17
**specific** [20] - 13:24, 14:1, 14:3, 14:4, 14:9, 14:11, 14:16, 17:2, 18:25, 19:7, 19:16, 22:3, 22:5, 22:14, 26:10, 26:25, 27:3, 27:16, 28:17, 29:3
**specifically** [1] - 20:6
**specificity** [3] - 21:3, 21:20, 28:8
**spending** [1] - 32:3
**spent** [3] - 32:2, 32:7, 35:10
**stake** [1] - 11:10
**stand** [1] - 9:25
**start** [1] - 8:4
**starting** [1] - 20:23
**STATE** [1] - 1:11
**statement** [4] - 20:14, 20:21, 21:5, 25:6
**statements** [1] - 24:24
**STATES** [2] - 1:1, 1:11
**STENOGRAPHIC** [1] - 37:11
**step** [2] - 18:10, 18:11
**still** [2] - 13:18, 27:9
**stood** [1] - 20:16
**stream** [1] - 18:23
**STREET** [1] - 1:11
**strenuously** [1] - 6:14
**stroke** [1] - 4:5
**studios** [1] - 21:14
**subject** [2] - 8:9, 12:25
**submission** [1] - 31:22
**submit** [1] - 5:15
**submitted** [2] - 5:4, 24:20
**submitting** [1] - 26:6
**subsection** [1] - 8:21
**substance** [3] - 6:10, 11:16, 17:25
**suffered** [1] - 4:5
**sufficient** [1] - 22:9
**suggestion** [1] - 13:21
**suing** [2] - 19:13, 19:17
**supplemental** [1] - 8:15
**support** [1] - 13:4
**surprisingly** [1] - 32:20
**survive** [2] - 8:24, 10:2

**T**

**talks** [1] - 21:6
**telephone** [4] - 15:19, 15:22, 16:8, 16:9
**terminated** [1] - 11:1
**terms** [1] - 23:21
**THE** [84] - 1:1, 1:5, 1:14, 2:3, 2:4, 3:3, 3:10, 3:16, 3:24, 4:15, 4:21, 5:2, 5:16, 5:18, 6:15, 7:7, 7:12, 7:23, 7:25, 8:3, 9:16, 9:19, 9:22, 10:6, 10:10, 10:13, 10:20, 10:23, 11:6, 11:9, 11:20, 12:3, 12:6, 12:10, 12:14, 14:9, 14:25, 15:3, 15:16, 16:16, 17:18, 18:7, 18:21, 21:6, 22:16, 22:23, 23:17, 24:13, 24:19, 25:1, 25:4, 25:7, 25:12, 26:2, 26:9, 27:20, 27:22, 28:7, 28:16, 29:11, 29:16, 30:6, 31:7, 31:14, 31:24, 32:11, 32:17, 32:25, 33:3, 33:5, 33:8, 33:15, 34:7, 34:10, 34:15, 34:25, 35:9, 35:22, 35:25, 36:3, 36:13, 36:14, 37:9, 37:11
**theories** [1] - 22:12
**thereafter** [1] - 23:7
**therefore** [1] - 27:3
**three** [1] - 18:16
**tiered** [1] - 20:7
**timeframe** [1] - 7:10
**TITLE** [1] - 37:9
**TO** [3] - 1:5, 37:9, 37:10
**today** [15] - 2:23, 3:12, 6:16, 6:17, 6:18, 7:5, 8:16, 11:24, 17:5, 19:1, 30:20, 31:21, 32:6, 33:9, 33:10
**took** [4] - 24:1, 25:16, 26:18, 29:11
**top** [1] - 20:24
**tort** [5] - 17:10, 19:2, 19:3, 20:2, 22:4
**totally** [1] - 16:14
**TRANSCRIPT** [2] - 1:4, 37:10
**TRANSCRIPTION** [1] -

37:11
**transfer** [3] - 29:17, 30:23, 34:17
**transferring** [1] - 32:25
**travel** [1] - 33:20
**traveling** [2] - 32:2, 35:10
**treat** [1] - 22:10
**TRENTON** [1] - 1:11
**trial** [1] - 4:17
**tried** [1] - 9:10
**tries** [1] - 11:21
**troubled** [2] - 29:9, 30:4
**true** [3] - 11:8, 11:23, 24:17
**try** [2] - 22:22, 36:8
**two** [10] - 4:1, 6:2, 8:10, 14:2, 17:8, 20:7, 20:8, 24:20, 30:9, 32:17
**two-part** [1] - 20:8
**two-tiered** [1] - 20:7

**U**

**U.S** [1] - 1:25
**U.S.C** [1] - 37:9
**under** [8] - 8:21, 8:24, 17:6, 17:19, 19:3, 22:3, 22:4, 28:21
**understood** [1] - 7:21
**undertake** [2] - 24:14, 25:23
**undertook** [1] - 21:22
**Unfortunately** [1] - 13:22
**UNITED** [2] - 1:1, 1:11
**unless** [1] - 27:10
**up** [4] - 5:17, 7:22, 20:16, 35:15
**USDJ** [1] - 1:14

**V**

**various** [11] - 5:25, 13:12, 15:11, 15:12, 17:22, 22:8, 25:15, 26:18, 27:7, 28:2, 29:22
**veil** [1] - 22:11
**vendors** [1] - 21:11
**via** [1] - 15:19
**view** [1] - 31:24
**Vincent** [1] - 37:16
**VINCENT** [1] - 1:24
**visits** [4] - 20:7, 21:17, 23:8, 23:20

**W**

**wait** [1] - 7:17
**ways** [1] - 6:2
**week** [4] - 3:6, 4:18, 32:4, 33:13
**weeks** [1] - 4:10
**welcomed** [1] - 7:5
**whatsoever** [1] - 24:10
**whine** [1] - 4:12
**whole** [2] - 18:23, 20:19
**wife** [2] - 4:9, 4:17
**wishes** [1] - 6:11
**witness** [1] - 7:2
**WOLFSON** [1] - 1:14
**word** [2] - 26:6, 26:15
**write** [1] - 22:24
**writes** [1] - 22:18
**wrote** [2] - 22:24, 25:3

**Y**

**yesterday** [6] - 3:7, 5:10, 5:20, 6:6, 31:19, 32:20
**YORK** [1] - 1:21
**York** [14] - 12:19, 12:20, 13:15, 15:11, 16:13, 16:20, 16:24, 18:12, 26:22, 26:23, 29:2, 29:17, 30:24, 30:25