**Alan R. Ackerman, Esq. (AA9730)**
**Law Offices of Alan R Ackerman**
**1719 Route 10 East, Suite 106**
**Parsippany, NJ 07054**
**(973) 898-1177**
**araesq@alanackermanlaw.com**
**Attorney for Plaintiff**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW YORK

_____

| | |
|---|---|
| KASHMIR GILL, Individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   Case No. 1:19-cv-04216-ILG-PK |
| | : |
| JUS BROADCASTING CORP; JUS PUNJABI, LLC; | : |
| JUS ONE, CORP.; JUS BROADCASTING CORP | : |
| PVT LTD; and PENNY SANDHU | : |
| | : |
| Defendants. | : |

_____

## <u>AMENDED COMPLAINT</u>

Plaintiff, Kashmir Gill, individually ("Plaintiff" or "Gill"), hereby sues the Defendants, Jus Broadcasting Corp, Jus Punjabi, LLC, Jus One Corp and Jus Broadcasting Corp Pvt Ltd (sometimes collectively referred to as " Jus Punjabi" or "Defendant Corporations") and Penny Sandhu ("Sandhu") for damages, attorney's fees, litigation expenses and costs occasioned by Defendants' Fraud In The Inducement, Breach Of Fiduciary Duty, Fraud, And Accounting Of All Monies Received From Plaintiff, Breach Of Contract, Promissory Estoppel, Conversion, Deceit, Dissolution Of Defendant Entities, Statutory Dissolution Of Defendant Entities Pursuant To N.Y. BUS. CORP. LAW § 1104-A, Unjust Enrichment and Piercing the Corporate Veil.

## JURISDICTION

1.     This court has original jurisdiction pursuant to 28 U.S.C. §1332 as a result of the complete diversity of the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

2.     Plaintiff resides at 51 Station Road, Morganville, New Jersey 07751.

3.     Defendants have their principal address at 36-01 36th Ave, Long Island City, NY 11106.

4.     Therefore, there is complete diversity among the parties pursuant to 28 U.S.C. § 1332(a) (1). Venue is properly located in the District of New York.

## FACTS COMMON TO ALL COUNTS

5.     At all times hereinafter mentioned Sandhu is the principal member/shareholder of Defendant Corporations, and acts as its chief operating officer.

6.     Plaintiff is an individual having prior experience with Punjabi Media in both India and the United States.

7.     Sandhu and the Defendant Corporations at various times, have unlawfully schemed to harm Plaintiff by gaining his confidence in the obtaining monies which Defendants called at various times an investment into each Defendant Corporations, and that other times called loans.

8.     To carry out its unlawful scheme, Sandhu has knowingly and intentionally submitted false and materially misleading declarations, promises, writings to Plaintiff and governmental authorities to maintain and pursue a fraudulent scheme to deprive Plaintiff of his monies. Sandhu borrowed monies with false pretenses of an interest in the Defendant Corporations and thereby duping Plaintiff of his hard-earned monies.

9.     Sandhu's activities were calculated to harm and fraudulently mislead Plaintiff, thereby depriving him of his money. Sandhu knew that if she had asked monies from Plaintiff as a lender, he would have asked for a note and security or would not have advanced the funds. Sandhu knew that by misrepresenting and concealing her designs and motives, she could fleece the Plaintiff.  As a result of engaging in  this unlawful scheme, Sandhu has profited by receiving sums of money over a period of time exceeding $2 million that she would not have otherwise received from Plaintiff, had she disclosed that she desired unsecured loans. By further inducing Plaintiff to continue to extend more monies, falsely claiming that the advanced funds were investments into the Defendant Corporations, and that he was a partner in her various entities, she further committed a serious fraud on the Plaintiff.

Sandhu and the Defendant Entities requested that Plaintiff execute a writing to the Internal Revenue Service stating that the advanced funds were investments in the Defendant Entities. The actions by Sandhu and the Defendant Corporations have violated the following statutes:

- Mail fraud in violation of 18 U.S.C. § 1341;

- Wire fraud in violation of 18 U.S.C. § 1343;

- Financial institution fraud in violation of 18 U.S.C. § 1344

- Unlawful monetary transactions in violation of 18 U.S.C. §§ 1956 and 1957(a);

- Inducement to interstate or foreign travel in violation of 18 U.S.C. § 2314; and

- Tax fraud, 26 USC 7201

10.     The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, of the mails, emails, phone calls, wire transfers of monies in connection with the transactions, acts, practices and courses of business alleged herein.

A substantial part of the events occurred in New York, New Jersey, London, and Chandigarh, India.

11.     Plaintiff was introduced to Sandhu in 2010 when a promoter of Gurdas Maan, a very popular Indian folk singer, requested Plaintiff to take Gurdas Mann to the Jus Studio for an interview. Shortly thereafter, another Indian politician, Sikhander Singh Maluka was taken to the Jus Studio for a live show. During Plaintiff's second visit, Sandhu invited him to her office in the Studio to talk.

12.     Within one month, Sandhu enticed Plaintiff to loan her $25,000.00 for 180 days, claiming she was afraid she would not be able to live up to her contractual obligation with a Sikh religious church, to broadcast their religious ceremonies. The Defendant Corporations required new equipment which would be installed at the Church. Plaintiff consented to the short loan. Sandhu met Plaintiff at an Indian restaurant called "Akbar" in Edison, New Jersey to pick up the check.

13.     On October 18, 2011, Sandhu texted Plaintiff that she needed to borrow $31,000.00 on an emergency basis as SES, a Satellite company, threatened to terminate the Jus Punjabi signal, which would result in a blackout of the program.  She assured him that the money would be paid back within a months' time. Gill wired the money to her business account (TD Bank) in New York from his account in New Jersey. Despite demand these funds have never been repaid.

14.     In November 2011, Sandhu came to meet with Gill and his business partner, Bikram Gill. Sandhu asked them to invest $ 1.5 million for 15 % stake in her business, when asked about the dividends or profits from business, Sandhu advised that, they would not get more than a 5% return on their investment, but in the long-term company would greatly increase in value. Gill advised Sandhu that they were not impressed with the return on investment suggested, as they get

a much better return in their fuel business.  Bikram Gill asked Sandhu to send him all the financial documents for his review.

15.     On November 30, 2011, Sandhu emailed the Asset statement, Business Plan, Loan Statement, and P & L statement to Bikram Gill. After going through all the documents, the Plaintiff and Bikram Gill decided not to invest in to Sandhu's company.

16.     Thereafter, Sandhu's requested Plaintiff to become involved in her business as a business advisor and lender. Trusting her offer and accepting it, Plaintiff proposed a business plan and his financing of the same:

i.      Upgrade the studio with new equipment (Gill promised to loan her the money for that).

ii.     Bring all the good anchors and staff members back to improve programming.

iii.    Get all the employees to sign a job and sales contract. (Gill promised to get those contract's done by a lawyer).

iv.     Work with the creditors to get rid of the loans.

v.      Negotiate with vendors to lower the fees.

vi.     Get rid of all the working/ silent business partners and investors.

Sandhu agreed with Gill's business plan and requested Gill to take lead in executing the plan. Gill accepted and advised Sandhu that it would take at least a year to year and a half to execute the plan.

17.     Plaintiff advanced funds as a series of loans from December 12, 2011 until February 28, 2013.

18.     In December 2011, Gill met with Harvinder Riar, a former anchor at Sandhu's channel (Jus Punjabi), who had started working for another Punjabi channel called "PTC Punjabi" after he was fired by Sandhu. Plaintiff convinced both Riar and Sandhu to settle their differences

and return to Jus Punjabi to advance channel ratings. Riar agreed. Plaintiff then worked with Riar to bring back Deepak Dhiman (Cameraman) and Parwinder Virdee (Cameraman/ Editor) to Jus Punjabi. Both agreed, and the channel ratings soared.

19.     Gill also travelled to Baltimore, MD with Sandhu to meet Donna Thomas, an attorney who prepared the employee contracts in January of 2012.

20.     Around this time, Gill met Umesh & Sooraj Advani from Sona Realty (Sona), a creditor, to attend to the repayment of their loan with interest. Sona had loaned $580,000.00 to Sandhu on October 27, 2008 for one year with an interest rate of 18%. Sandhu requested Karl Khandalawala, a business partner, to obtain the money to pay the Singh's as part of their settlement. Khandalawala arranged the loan from his family members. The Singhs were paid, and they assigned their 38% membership interest in Jus Punjabi, LLC to Khandalawala.

21.     In 2010, Khandalawala became ill and was not able to perform his duties as a partner. Sandhu tried to persuade him to sell his membership back to Sandhu for $660,000.00. Khandalawala resisted, but under constant pressure from Sandhu, he agreed to sell his membership back to Sandhu. His only condition was that Sandhu need to pay back Advani and Khandalawala at the same time.

22.     Plaintiff met with Karl Khandalawala to negotiate a global settlement with Sandhu. Gill negotiated for eight months of his personal time, but was unable to convince Advani to settle. Finally, Plaintiff convinced Khandalawala to settle with Sandhu by transferring his membership to Sandhu. Finally, on August 6th, 2012 Karl signed the agreement to sell his membership back to Sandhu for $660,000.00. On 08/27/2012, Plaintiff paid Sandhu $30,000 to pay Khandalawala as down payment for his settlement. After settling with Khandalawala, Plaintiff negotiated with Advani for almost six months, settling the Advani claim of $1,200,000 for one-time payment of

$450,000.00. Plaintiff told Sandhu to arrange the money to pay Advani, which was due on 03/15/2013.

23.     While Gill was working with the creditors and ex-partners to settle with Sandhu, he worked with the different vendors of Jus Broadcasting to lower their fees. Gill asked Sandhu about all the big expense items in her company. Sandhu told Gill that her biggest expense after the payroll was the satellite fees. Gill asked Sandhu's permission to negotiate with the satellite company, but Sandhu told him that these companies do not negotiate, as her attempts were unsuccessful. She instructed Plaintiff to negotiate with them. The company was charging Sandhu $17,500.00 per month. Plaintiff negotiated with a satellite company that carried the broadcast signal from the studio to different platforms for over two months and successfully negotiated a reduced fee of $9,300.00 per month. The total savings of that effort was $8,200.00 per month.

24.     When Plaintiff asked Sandhu to arrange the money to pay Advani, Sandhu expressed her inability to arrange the monies. She asked Plaintiff if he could arrange the money to pay Advani. Plaintiff told her that he has already loaned her lot of money and he won't be able to extend any more money to her business or on her behalf to the creditors of the business. To raise that money, Plaintiff, Bikram Gill and Sandhu started exploring the possibility of Plaintiff becoming a partner in Sandhu's business. Plaintiff made it very clear to Sandhu that he would entertain the partnership only if he gets 50% partnership interest in all her entities. They met few times and negotiated the terms of the partnership. Finally, on 03/04/2013, Gill & Sandhu met at "The Park Place diner' in Aberdeen, New Jersey and reached an agreement to become equal partners in the following entities:

1.     Jus Punjabi, LLC
2.     Jus One, Corp
3.     Jus Broadcasting, Corp
4.     Jus Broadcasting Pvt Ltd

25.     Sandhu asked Gill for a dollar bill. Gill gave her a dollar and she memorialized the partnership agreement on the bill "Partnership for life. 03/04/2013". *This is a traditional way in India to make a "business agreement" legal.* After the breakfast meeting resulting in a partnership agreement (Partnership Agreement), Sandhu & Plaintiff went to his office to tell Bikram Gill about the negotiated agreement. Three of them decided that, Sandhu would continue to operate the company as a CEO/ President and Gill brothers will stay behind the scene and support the channel financially and logistically. Sandhu requested "Gill brothers" to appoint one person out of them, who Sandhu should be dealing with on day to day basis. Bikram Gill proposed Plaintiff's name to work closely with Sandhu to move the company forward. Sandhu advised Gills to not to disclose the partnership in the market for the following reasons:

i.      Dish Network representatives are not comfortable with ownership changes;

ii.     Advertisers might try to approach her through Gill's connections to reduce their payments;

iii.    She did not want this to be a public knowledge, fearing people might think that she has lost the control of her company.

However, the same was not advice, rather it was a ploy to induce Plaintiff to continue to funnel money into the Defendant entities. Sandhu wanted to continue to tap the promise of the "partnership" personally and continue the scam. Plaintiff trusted her integrity and believed her promises of partnership. He naively thought that the three conditions were necessary for the Jus business.

26.     As a condition for the promised Sandhu & Gill Partnership Agreement, Gill arranged a certified check in the amount of $450,000.00 to pay Advani. Both Sandhu & Gill went

to Advani and paid them. To celebrate, Sandhu, Gill, Dahiya and two of Dahiya's other friends went for a dinner at "Chotte Nawab" Indian restaurant.

27. Sandhu promptly created a new email id (kashmirgill@jusbroadcasting.com) for Gill in the company. Sandhu constantly asked Plaintiff, for the business title that he would prefer on his business card. However, Gill respectfully told Sandhu that he did not need a title to be a partner as long as she treated him with respect and was honest with her business life. Both Sandhu and Gill started attending meetings with their business acquaintances in the media business, company officials from different carriers, Dish conventions etc. Gill travelled to Toronto, Vancouver and India to find new opportunities for the Defendant's companies. Sandhu told Plaintiff that if they could increase the number of channels, then she can get Dish network to create a special Punjabi pack called "Jus Pack" and Dish Network will sell that pack separately to their customers. This would increase the revenue stream. Gill promised her that he will work very hard to get channels from India and for "Jus Pack" and Gill started negotiating with the following channels in India to bring them into Jus Pack:

1. Day and Night- News channel
2. 9X Tashan- Music channel

Gill and Sandhu wanted to create the "Jus pack" with the following channels:

1. Jus Punjabi- General Entertainment
2. Jus One- Spiritual channel
3. Jus 24*7- News channel with Day & Night programming
4. 9X Tashan- Musical Channel
5. Jus Now- 24 hours movie channel

28. In the spring of 2013, Sandhu stated that her astrologer just cautioned against entering into the Unit Sale Agreement for a period of 5 years. Plaintiff, who was aware that Sandhu was a devotee of astrology, agreed not to pressure her for the formal agreement. Sandhu

9.

repeatedly stated to Plaintiff that they were equal "partners" and the dollar bill which had been signed was more important than any agreement prepared by lawyers. However, this again was a ploy and a part of the continuing scheme to defraud.

29.     In June 2013, Sandhu introduced Gill to her accountant, Niranjan Bapat. Sandhu advised Bapat about the partnership agreement and how Gill would restructure the company. Gill told Bapat that he would like to merge all the companies (Jus Punjabi, LLC, Jus One, Corp) into one company "Jus Broadcasting Corp". Plaintiff also told Bapat that he would like to convert Jus Broadcasting Corp into an S Corporation. This change would allow the subscription money that was coming from Dish Network and other platforms and the advertisement revenues to be channeled into one entity that would increase the gross sales and consequently the valuation of the company. Both Bapat and Sandhu agreed with Gill's idea of reorganization. However, Bapat told Gill that he could not convert a C- Corp to an S- Corp as it will not work for Sandhu because of her immigration status. Gill told Bapat to do whatever makes more sense for Sandhu.

30.     Meanwhile Sandhu was scheduled to undergo a surgery in the beginning of July 2013. After the surgery she became infected and was readmitted to the hospital for two weeks. She requested Plaintiff talk to all the employees as they were getting anxious about Sandhu's long absence from the studio. Gill spoke to the employees and calmed them down, which was proper for him to do as a partner. Gill exercised his partnership responsibility.

31.     During Sandhu's hospitalization, she told Gill that one of her minor partners in Jus Punjabi, LLC, Dr. Rajwant Singh, wanted to sell his 1% membership back to the company. Plaintiff told Sandhu to not to worry, and he visited Dr. Rajwant Singh on July 23, 2013 and paid him $50,000.00 to purchase his stock certificate interest. Gill returned to the hospital and delivered the stock certificate to Sandhu.

32.     After Sandhu was released from the hospital, she requested that Gill allow Sandhu's daughter to retain a small stockholder interest. Since Plaintiff and Sandhu were equal partners and if she had to give part of her shares to her daughter, then Sandhu will become a minor partner. Gill assured Sandhu that whenever her daughter wants to join the business, he would match exact number of shares as Sandhu's share to give to her daughter free of charge, even though Gill has paid a significant amount for these shares. Sandhu expressed appreciation for Gill's gesture.

33.     Working together as a team, Gill and Sandhu launched another channel Jus 24*7 on Dish network. They also started a Radio network called Jus Radio. Gill contacted few companies in India through his personal connections to bring their channels to USA under Jus brand.

34.     Gill negotiated a contract with an Indian based channel called "Day & Night". Day & Night was a premium news channel and was owned by a close friend of Gill. Gill negotiated a Memorandum of Understanding for $5,000.00. Unfortunately, the contract demands prohibited a final agreement.

35.     In end of 2013, another Punjabi channel "Get Punjabi" started on Dish satellite. Get Punjabi ownership consisted of some local people from NY and India. Sandhu's former accountant gave all the information about Sandhu's business to "Get Punjabi" management. The company's only agenda was to destroy the business of Jus Punjabi at any cost. They started going after Jus' customers and offered free advertisement and defamed Jus Punjabi. On the advice of Sandhu's counsel and friend Karamvir Dahiya, Sandhu and Gill retained Paul Batista, Esq. to file a complaint against "Get Punjabi" and its ownership. Gill paid a $20,000.00 retainer to Batista. Once the complaint was filed "Get Punjabi" turned their signals off and they were off the air permanently. This gave Jus broadcasting an open field and competitive edge.

36.     Gill worked very hard for a year to negotiate and secure an agreement with 9X Media from India to get the rights of their premium Punjabi music channel called "9X Tashan" for North American market. Finally, an agreement was signed in May of 2014. Plaintiff successfully negotiated an agreement for a monthly fee of only $2,000.00 for a seven-year term. The channel was launched in the month of August 2014. When Gill started with Sandhu, she had only two TV channels:

|     |              |                                  |
| --- | ------------ | -------------------------------- |
| 1.  | Jus Punjabi  | (General Entertainment Channel)  |
| 2.  | Jus One      | (Spiritual Channel)              |

With the help of Gill's financial investment and industry connections/ expertise, two additional TV channels and a Radio station were launched in USA:

|     |              |                      |
| --- | ------------ | -------------------- |
| 3.  | Jus 24*7     | (Comedy Channel)     |
| 4.  | 9X Tashan    | (Music Channel)      |
| 5.  | Jus Radio    | (Radio Station)      |

37.     Sandhu & Gill's dream of creating a "Jus Pack" was realized. Jus Pack was launched by Dish network sometime in end of 2014. According to Sandhu's P&L statement that she sent Gill in 2011, she had no advertisement revenues between 2008 and the - beginning of 2011. After the Sandhu- Gill team was executed their business plan of December 2011, the advertisement revenue started rising. In late August or September of 2014, Sandhu told Gill that the advertisement revenues for the previous month were close to $100,000.00. This was result of Gill's efforts.

38.     Sandhu refused to share any financial information with Gill, even though he was an equal partner. After the creation of Jus Pack, Gill started seeing a change in Sandhu's behavior. Gill asked her about this change, and she told Gill to not to worry about anything, as Gill was a trusted partner and soon the Partnership Agreements would be completed and given to Gill.

39. On September 3, 2014, Sandhu called Gill and told him that it was time for the company to move into the Canadian market. It is very hard to find the bandwidth on cable platforms in Canada, as the CRTC (Canadian Radio- Television and Telecommunications Commissions), has very stringent rules for foreign television and broadcasting companies. CRTC rules do not allow foreign companies to own 100% shares of a Canadian company. Gill called his friend Surjit Gill who owns a TV channel called "Channel Punjabi Television." His channel is available on all the cable and satellite platforms throughout Canada. Surjit Gill travelled to NY on September 9, 2014. Gill negotiated an agreement to buy "Channel Punjabi Television'' for $1,000,000.00 with only $100,000.00 as a down payment. The balance of the money was to be paid over ten years without any interest. On September 11th, 2014, a memorandum of agreement was signed by Sandhu and Surjit Gill.

40. Sandhu rejected the agreement claiming she could launch channels in Canada for free, and did not need to pay to buy the channel. Gill was not very happy with the decision, but he followed Sandhu's lead, as he could not impose his will on her as she was an equal partner.

41. In November 13th, 2014, Sandhu visited Gill in his office and told him that it "seems like this partnership may not work", as both Gill & Sandhu are strong minded, and she had very bad experience with her previous partners. Sandhu told Gill that that she valued Gill's friendship more than a partner. She also informed Gill that she has already started working with an investors group, which would take our company to Wall Street. Sandhu informed Gill that she would return Gill's money by January of 2015. After the meeting, Sandhu told Plaintiff that he needed to wire $81,139.00 to pay for the equipment that was bought by Jus Broadcasting, Corp. Gill went to Wells Fargo along with Sandhu and wired the money to the vendor. They had lunch together and after the lunch Sandhu told Gill that *"don't worry as nothing has changed, and you are still a*

*strong partner of the channel"*. Gill did not like that and became very confused with this new situation.

42. Plaintiff felt that that all these talks with her, signing off on the dollar bill, introducing him as a partner, email creation was a systematic setup to exploit him and obtain monies under the false pretense.

43. On December 3rd, 2014, Sandhu hosted a business celebration promoting the 2nd launch of the Defendant Corporations in Astoria, NY. Plaintiff did not want to go, but was told by Sandhu that she had a surprise for him. Gill and Bikram Gill and their wives attended the function at her request. Gill and Bikram Gill were under the impression that Sandhu will introduce them to the community as her new partners, but once again Gill was introduced *"as a strong supporter of the channel"*. Both Gill and Bikram Gill were shocked and embarrassed by Sandhu's actions. For the first time Gill realized that Sandhu may have betrayed him, but she insisted that, they are partners in the business.

44. After the launch parties were over, Gill started promoting a dance competition called "Jus Bhangra". Plaintiff provided additional funds for this competition. After the competition finished, Sandhu stopped sharing any business information with Gill. Gill pleaded with her to sign a shareholder agreement, but she continued to delay.

45. Plaintiff felt betrayed and stopped going to the studio. He realized that he had been used and Sandhu never had any intention of signing the partnership agreement. She used Gill to fulfill her dream of creating a "Jus Pack". She kept on using Gill's money, political connections, and media connections and once her mission was accomplished, she started planning to get rid of Gill.

46.     On February 2, 2015, Sandhu's former partner Khandalawala filed a suit against Sandhu who defaulted on the terms of the settlement agreement of August 12, 2012. Sandhu asked Gill to obtain representation to defend the suit. Plaintiff retained Paul Batista. Batista requested that Gill call Khandalawala and settle the claim. Batista felt that Sandhu was not being truthful with him and told Gill that he would not represent Sandhu again.

47.     Plaintiff negotiated these claims and settled with Khandawala in order to help Sandhu. Khandawala advised Gill to stay away from Sandhu who had a reputation in the market of exploiting and cheating her partners. Gill delivered the signed agreement to Sandhu and asked again for the partnership agreement. Sandhu gave Gill a blank yellow paper from her note pad. Sandhu signed the bottom of the paper and told Gill to write the contract on the paper. Sandhu told Gill that she is too busy, but would soon go to the attorney and get the paper work done.

48.     On February 17th, 2015 New Skies Satellite B.V filed a suit against Sandhu and Jus Punjabi for the breach of a contract. They demanded and eventually obtained a judgement against Sandhu in the amount of $160,000.00. Gill negotiated with Plaintiff's counsel and obtained a settlement for $40,000.00. Plaintiff funded the settlement on August 28, 2015.

49.     In November of 2015, Sandhu requested Gill to help Sandhu to set up a studio in Chandigarh (India). Gill refused to invest any more money into Jus Broadcasting, and demanded a shareholder agreement and access to the books and records of the company. Sandhu again gave an impression to Gill of Gill being a strong partner. Sandhu convinced Gill that it was very important to have a studio in India and that the books and records issues could be dealt soon thereafter.  Later Gill provided the funds and all the logistical support to Sandhu and the studio was set up by January of 2016, Sandhu started producing some of the programming for the channels in that studio as production is much cheaper in India.

50.     On August 25, 2016, Gill received an email from Sandhu with the following:

From: **Penny K Sandhu - JUS TV** <penny@jusbroadcasting.com>

Date: Thu, Aug 25, 2016 at 3:03 PM

Subject: Need this urgently - Please print it on simple paper and sign it, kindly send me email. Need it for acts purpose IRS

To: Kashmir Gill - JUS TV <kashmirgill@jusbroadcasting.com>

Dated July 22, 2016

To Whom It May Concern

This is to state that the long-term debt $....carried on the books of JUS Punjabi LLC accounts is converted to capital stock and accordingly stock certificate is issued.

Penny K Sandhu                                    Kashmir Gill

President                                               Stockholder

PS: was waiting for your call yesterday. didint hear back from you.

**Penny K Sandhu**

*President & CEO*

Tel: +1-718-752-9290 X 102

## JUS Broadcasting Corp.

**HOME OF 4 TV CHANNELS and ONE RADIO**

**Tel:  718 752-9290** / 718-PUNJABI

**Fax: 718-752-9212**

P.O.Box 3196, L.I.C. NY 11103

www.jusbroadcasting.com



*The contents of this e-mail message and any attachments are confidential and are intended solely for addressee. The information may also be legally privileged. This transmission is sent in*

*trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited.*

*If you are not the intended recipient, please immediately notify the sender by reply e-mail or phone and delete this message and its attachments, if any.*

51.     Trusting his partnership agreement was finally being formalized, Plaintiff signed that letter and sent a copy of the same to Sandhu on September 2, 2016 with the following response:

On Fri, Sep 2, 2016 at 3:03 PM, Kashmir Gill - JUS TV <kashmirgill@jusbroadcasting.com> wrote:

Dear Penny,

Attached is the letter that you requested. As you know I had invested all this money over last six years in to your companies, on the basis of our mutual agreement of us becoming equal partners in your business enterprise. I never received any documentation to that effect. I trusted you then and will continue to do so in the future. I have tons of respect and admiration for you.

regards,

52.     Gill wrote a follow up email to Sandhu:

On Fri, Sep 2, 2016 at 3:12 PM, Kashmir Gill - JUS TV <kashmirgill@jusbroadcasting.com> wrote:

Kindly send me a signed copy back.

53.     Following is Sandhu's response to Gill's previous mail:

On Fri, Sep 2, 2016 at 3:59 PM, Penny K Sandhu - JUS TV <penny@jusbroadcasting.com> wrote:

Thank you, Kashmir, you are the best. Will talk later this evening

**Penny K Sandhu**

*President & CEO*

Tel: +1-718-752-9290 X 102

Sandhu signed the letter and emailed a signed copy back to Gill.

54.     In the end of November 2016, Sandhu called Plaintiff advising that her former partner, Parveen Singh and Lakhvinder Singh filed a suit against Sandhu. Gill advised Sandhu to go to Paul Batista, but she refused. Sandhu wanted to use a law firm from Long Island. Gill arranged a meeting with the law firm and Sandhu and her daughter. After coming out of the

meeting, Gill once again suggested to Sandhu to go to Batista. Sandhu requested Gill to talk to Batista. Gill called Batista to represent Sandhu, but Batista refused to do it initially. He made it very clear that he did not want to represent her. Gill requested Batista to take the case as a favor to Gill. Batista told Gill that he cannot say "No' to Gill as Gill is a close friend. Once Batista started litigating the case for Sandhu, Sandhu once again started ignoring Gill from the business.

55.    In January of 2017 Sandhu told Plaintiff that she was bidding for satellite platform in UK called "Sky". Gill advised Sandhu to not to do it, as there are no subscription or advertisement revenues in UK and others have been unsuccessful. Sandhu told Plaintiff that it was important to have a presence in the United Kingdom to move the company to next level. She also told Gill that she will need some financial assistance.

56.    Sandhu and her daughter bid and were awarded the platform at a very high price. Sandhu called Gill requesting that he come to studio to celebrate the win. Gill told Sandhu that he didn't have any more money and he won't be able to give her any money, but Sandhu kept on insisting and finally, Gill wired $100,000.00 on February 21st, 2017.

57.    Gill requested a meeting with Sandhu and her accountant Bapat during February 2017. All three of them met in the studio and Gill asked them about the letter that Sandhu had sent to IRS back in 2016. Bapat explained Gill that he has been working with IRS auditors on an "offer & compromise" for Sandhu's outstanding taxes and during that conversations the IRS auditors asked him about outstanding loan on Jus books. The IRS position was that since Jus books document a large amount of unpaid loans, the loans will make it harder for them to accept any "offer & compromise" proposal. Bapat related the same message to Sandhu.

58.    Fearing that IRS may not accept her "Offer & Compromise" proposal, Sandhu asked Gill for that letter from Gill to show IRS that the loan has been converted into capital stock.

Sandhu told Gill that it was just a formality for IRS. Gill advised Sandhu and Bapat that this is illegal, and Sandhu should have told him about this. He also advised them that this may be considered as a "mail & wire fraud" and now they need to make it right. Gill offered few options, but Sandhu rejected all of them.

59.    On March 30, 2017 Gill sent the following email to Sandhu with a copy to Jus broadcasting's accountant (Niranjan Bapat), Gill's accountant (Vishaw Sondhi) requesting the tax returns of the company:

From: **Kashmir Gill - JUS TV** <kashmirgill@jusbroadcasting.com>

Date: Thu, Mar 30, 2017 at 11:37 AM

Subject: Re: Need this urgently - Please print it on simple paper and sign it, kindly send me email. Need it for acts purpose IRS

To: Penny K Sandhu - JUS TV <penny@jusbroadcasting.com>

Cc: ranjanbapat@yahoo.com, Vishaw Sondhi <vishaw@vsondhicpa.com>

Dear Penny,

In order to complete my Tax Returns for 2016, kindly furnish the tax returns of all the affiliates, for 2016, pursuant to our understanding and representation made to IRS.

Sandhu totally ignored Gill's mail and never responded. Gill's accountant Vishaw Sondhi sent an email to Sandhu requesting the same documents:

On Apr 14, 2017, at 9:54 AM, Vishaw Sondhi <vishaw@vsondhicpa.com> wrote:

To All of You

Hi I am in process of filling extension for  Kashmir Gill I will really appreciate if you can forward me KI for him as soon as possible or some kind of estimate of Income or Loss for the year 2016. If you have any question please call me on my cell 732-995-3885.

Thanks

After fourteen days, Sandhu, responded to Gill's March, 30th email with the following email:

On Fri, Apr 14, 2017 at 11:30 AM, Penny K Sandhu - JUS TV <penny@jusbroadcasting.com> wrote:

Dear Kashmir, I don't understand what are you asking. As far your money money owed to company it was a debt in our last year tax return and same is showed this year as well.

Penny K Sandhu
JUS Broadcasting Corp.
Tel: 718-752-9290
Fax: 718-752-9212
www.JusBroadcasting.com
-Sent from my iPhone-

Sandhi also responded to Sondhi's April 14th email with the following email:

From: **Penny K Sandhu - JUS TV** <penny@jusbroadcasting.com>
Date: Fri, Apr 14, 2017 at 11:35 AM
Subject: Re: Need this urgently - Please print it on simple paper and sign it, kindly send me email. Need it for acts purpose IRS
To: Vishaw Sondhi <vishaw@vsondhicpa.com>
Cc: Kashmir Gill - JUS TV <kashmirgill@jusbroadcasting.com>, ranjanbapat@yahoo.com

Mr. Sondhi, Kashmir's money was a loan not a partnership. So question of K1 doesn't arise. You can call me at 917-653-6900 for any other question you may have

Penny K Sandhu
JUS Broadcasting Corp.
Tel: 718-752-9290
Fax: 718-752-9212
www.JusBroadcasting.com
-Sent from my iPhone-

After reading Sandhu's email, Sondhi sent the following email to Gill:

On Fri, Apr 14, 2017 at 11:36 AM, Vishaw Sondhi <vishaw@vsondhicpa.com> wrote:

Hi Kashmir
As per our last conversation you mentioned there was a letter issued to IRS for the owner ship. Please call me when you can.
Thanks

Gill responded to Sondhi with the following mail:

On Fri, Apr 14, 2017 at 11:55 AM, Kashmir Gill - JUS TV <kashmirgill@jusbroadcasting.com> wrote:

Here's the signed copy.
On Fri, Apr 14, 2017 at 11:52 AM, Kashmir Gill - JUS TV <kashmirgill@jusbroadcasting.com> wrote:

Dear Sondhi & Penny,
Kindly see attached.

60.     Sondhi went on vacation.  After he came back, he sent the following email to Gill:

From: **Vishaw Sondhi** <vishaw@vsondhicpa.com>

Date: Mon, May 8, 2017 at 5:43 PM

Subject: Re: Need this urgently - Please print it on simple paper and sign it, kindly send me email. Need it for acts

purpose IRS

To: Kashmir Gill - JUS TV <kashmirgill@jusbroadcasting.com>, Vishaw Sondhi <vishaw@vsondhicpa.com>

Cc: Penny K Sandhu - JUS TV <penny@jusbroadcasting.com>, Niranjan Bapat <ranjanbapat@yahoo.com>

Hi Kashmir

I am sorry for the delay I was out of office after the tax time. I will like to get a better and clear understanding of

your investment in JUS TV and others companies if any. As per your letter to IRS and previous emails in this chain of

emails it is clear your loan was converted to equity and stock certificate was issued ( please see the July 22 2016 email

from Penny).

I will like to review the returns if possible so I can be sure that annual letter which I have to give to your banks

regarding your equity share in all the companies is correct. Please get back to me as soon as possible if you will like to

arrange a meeting among all the parties I am open just suggest couple of days and timings.

Thanks in advance .

Gill responded to Sondhi's email with the following email:

From: **Kashmir Gill - JUS TV** <kashmirgill@jusbroadcasting.com>
Date: Fri, May 12, 2017 at 3:30 PM
Subject: Re: Need this urgently - Please print it on simple paper and sign it, kindly send me email. Need
it for acts purpose IRS
To: Vishaw Sondhi <vishaw@vsondhicpa.com>
Cc: Penny K Sandhu - JUS TV <penny@jusbroadcasting.com>, Niranjan Bapat
<ranjanbapat@yahoo.com>

Dear Sondhi,
In 2013 March, Penny and I along with (Bikram Bhaji) decided to become equal partners (50%) in Pennies
following companies:

- Jus Punjabi, LLC
- Jus One Corp
- Jus Broadcasting Corp

A substantial amount of money was invested in all these companies since then. We trusted Penny with her
commitment and never forced her to sign any documents to that affect. From our side this was never a loan as claimed by
Penny, We never asked for any bank statements, financial transaction or Tax returns to verify the status of our money. Its

been five days, since you requested the returns for 2016 but have not received anything back. Please don't request it anymore. I guess I have to find an alternate solution.

61.     On June 5th Plaintiff tried unsuccessfully to log into his Jus Broadcasting email because Sandhu changed the password. Sandhu texted Gill to meet her.

62.     Sandhu's acts of fraudulent activity were committed for the purpose of (1) concealing real facts or misleading Plaintiff into parting with his monies, through emails, phone calls and texting—having Plaintiff write checks or wire monies to creditors of the Defendants; (2) setting up a façade of a partnership to continue to mislead Plaintiff, thereby depriving Gill time value of his money; and, (3) after the scheme was discovered, forestalling litigation by Gill by means of Sandhu's duplicitous interactions and fraudulent projections, emailing, texting falsities assuring him deceitfully that he is a partner. These acts, and others to be identified after further investigation and discovery herein, shared a common or related purpose, goal, result, participants, victim, and method of commission.

63.     Through her ongoing actions, Sandhu acquired cash proceeds from Gill. She used and invested that cash, which she acquired from Gill to establish new business which operated, engaged in, and affected interstate commerce. Sandhu engineered and participated as a principal in this complained of fraudulent activity.  Thus Sandhu schemed and acquired monies from Gill, received income from an intentional pattern of fraudulent activity, mail and wire fraud which resulted in injury to the Plaintiff's business or property owing to Defendant's use or investment of the income in the enterprise.

## FIRST CAUSE OF ACTION
## (FRAUD IN THE INDUCEMENT)

64.     Gill repeats and re-alleges paragraphs 1 through 63 as if fully set forth herein.

65.     The predicate acts of fraudulent activity were designed for the purpose of (1) concealing real facts or misleading Plaintiff into parting with his monies, through emails, phone

calls and texting, (2) setting up a façade of a partnership to continue to mislead Plaintiff, thereby depriving Plaintiff time value of his money, and (3) after the scheme was discovered, forestalling litigation by Plaintiff by means of Sandhu's duplicitous interactions and fraudulent projections, emailing, texting falsities. These acts, and others to be identified after further investigation and discovery herein, shared a common or related purpose and goal. Through these fraudulent acts Plaintiff advanced funds on the express promise that these funds would be treated as an investment for the purchase of 50% of Sandhu's 100% stockholder interest in the Defendant Entities.

66.    Sandhu individually and on behalf of the Defendant Corporations uttered said statements and authored relevant written communication for the express purpose that the Plaintiff rely on them to induce the further infusion of monies to Sandhu and the Defendant Entities. Plaintiff relied on the statements and writing as the sole inducement to advance the funds.

67.    Sandhu's promises were fraudulent in that the transfer of 50% (FIFTY percent) of Sandhu's ownership interest in the Defendant Corporations did not occur.

**WHEREFORE**, Plaintiff seeks an award of damages compelling Defendant to transfer 50% of her ownership interest in the Defendant Corporations to Plaintiff, in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff. Plaintiff further seeks an award of three times the damages sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

**SECOND CAUSE OF ACTION**
**(BREACH OF FIDUCIARY DUTY)**

68.    Plaintiff repeats and re-alleges paragraphs 1 through 67 as if fully set forth herein.

69.    Sandhu owed fiduciary duties to Plaintiff including a duty of loyalty.

70.    Sandhu has a fiduciary relationship to the shareholder Gill. The relationship is bound by conscientious fairness, morality and honesty in purpose, which the law imposes as the

guides for those who are under the fiduciary obligations as responsibilities. They are held, in official action, to the extreme measure of candor, unselfishness and good faith. Sandhu breached these principles with impunity. These principles are rigid, essential and salutary. Sandhu instead of granting accounting, transparency attempted to relegate Plaintiff as a lender and she has damaged Plaintiff by her misconduct. Plaintiff has been harmed as a direct result of Sandhu's disloyal conduct in an amount to be determined at trial, but in no event less than $10 million.

71.     In addition, because Sandhu was a fiduciary who breached the duty of loyalty, plaintiff is entitled to full disgorgement of all profits that Sandhu earned through her disloyal conduct to the extent that they do not duplicate Plaintiff's other damages.

**WHEREFORE**, Plaintiff seeks an award of compensatory and punitive damages in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

### THIRD CAUSE OF ACTION
### (FRAUD)

72.     Plaintiff repeats and re-alleges paragraphs 1 through 71 as if fully set forth herein.

73.     As a shareholder, Sandhu owed fiduciary duties to Plaintiff, including a duty of loyalty. This fiduciary duty required Sandhu to disclose to her business partner facts that were material to their shared business. Yet, Sandhu failed to disclose the revenues that she has collected over a period of time, claiming that the Defendants have never been profitable. Defendants failed to disclose these facts deliberately, with the intent of preventing Plaintiff from discovering Sandhu's improper transfer to herself of contractual rights that the two of them owned jointly to share the profits.

**WHEREFORE**, Plaintiff seeks an award of compensatory and punitive damages in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## FOURTH CAUSE OF ACTION
## (ACCOUNTING)

74.     Plaintiff repeats and re-alleges paragraphs 1 through 73 as if fully set forth herein.

75.     Business Corporation Law Section 720 authorizes a director or officer to bring an action to compel another director or officer to account for his "official conduct" in cases of, among other things, loss or waste of corporate assets or to set aside an unlawful conveyance of corporate assets.

76.      Sandhu has not maintained the corporate structure of the entities, rather she has and continues to use corporate monies for her luxury travels and extravagant expenses instead of paying her and the Defendants' creditors.

77.      Sandhu's conduct in denying Plaintiff his rights as a partner, freezing him out of the management and affairs of the Defendant companies and denying him at least a proportionate share of the corporation's profits all served to defeat legitimate expectations of the Plaintiff that were objectively reasonable and central to his long-standing participation in the venture commencing with the initial investment of funds in and to the Defendants.

78.     Defendant corporations and Sandhu have refused to allow Plaintiff to review their books and records to determine the application of the funds advanced by Plaintiff and other funds generated from its normal business operation to determine whether or not the funds have been misappropriated.

**WHEREFORE**, Plaintiff seeks an Order of this Court compelling Defendant Corporations and Sandhu to allow Plaintiff and his authorized agents to inspect the books and records of Defendant corporations, and to compel an accounting of the books and records of all Defendants entities, and award of damages in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## FIFTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

79. Plaintiff repeats and realleges paragraphs 1 through 78 as if fully set forth herein.

80. Sandhu and Plaintiff entered into a binding, valid, and enforceable contract pursuant to which Plaintiff has more than performed and complied with his obligations under the contract by contributing substantial capital, time, effort and using his skill as a negotiator to arrange contracts and to resolve disputes on behalf of the Defendant companies. M

81. There exist no unsatisfied conditions precedent to the Defendants' performance of their obligations under the contract.

82. The Defendants materially breached the contract by failing to provide a shareholder agreement and necessary partnership papers.

**WHEREFORE**, Plaintiff seeks an award of compensatory and punitive damages in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff. Plaintiff further seeks an award of punitive damages they sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## SIXTH CAUSE OF ACTION
## (PROMISSORY ESTOPPEL)

83. The Plaintiff, repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

84. In reliance on the Defendants' promise that Plaintiff was a partner, he refrained from commencing litigation against Sandhu and the other Defendants herein seeking repayment of the loan.

85. Plaintiff's reliance on the Defendants' promise was reasonable and foreseeable, when Sandhu signed the dollar bill, when Sandhu created an email address, when Sandhu sent an email to him to sign the letter converting the loan to a stockholder interest in Defendant's entities.

86. The Defendants have breached their promise by failing prepare and execute any shareholder agreement and failing to provide access to the books and records of the Defendant entities or providing the requested accounting.

87. Plaintiff is entitled to equitable relief requiring the Defendants to honor their promise of an equal interest in the Defendant entities.

88. Plaintiff has suffered damages as a direct and proximate result of the Defendants' breach of their promise in an amount to be determined at trial.

**WHEREFORE**, Plaintiff seeks an award of compensatory and punitive damages in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## SEVENTH CAUSE OF ACTION
### (CONVERSION)

89.     The Plaintiff, repeats and realleges paragraphs 1 through 88 as if fully set forth herein.

90.     Sandhu used false pretenses to obtain funds from Plaintiff promising him an equal ownership interest in the Defendant entities.

91.     Plaintiff parted with funds exceeding $2 million. The partnership offer by Sandhu was a ploy to extract funds and use them for her own needs and depriving Plaintiff of his hard money and opportunities.

92.     Sandhu converted funds to her use, though Plaintiff was a partner in the Defendant companies and had a superior right of possession.

93.     Sandhu exercised unlawful and unauthorized dominion over the monies extended by Plaintiff, thereby depriving Plaintiff access or use of his funds.

94.     Plaintiff having realized that the partnership projection was a façade to systematically and fraudulent scheme to part with his monies, he asked for return of his monies for several years. However, Sandhu has refused to return the same.

95.     Plaintiff has suffered damages as a direct and proximate result of the conversion of his funds in an amount to be determined at trial.

**WHEREFORE**, Plaintiff seeks an award of compensatory and punitive damages in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## EIGHTH CAUSE OF ACTION
### (DECEIT)

96.     Plaintiff repeats and realleges paragraphs 1 through 95 as if fully set forth herein.

97.      Sandhu promised, assured and projected Plaintiff was partner in the Defendant entities with intent to induce Plaintiff's reliance upon it.

98.     As a partner, Sandhu prevailed upon Plaintiff to invest more than 2 million dollars over a period of time for his partnership interest.

99.      Sandhu made the partnership offer with the scienter and intent to defraud Plaintiff.

100.    Plaintiff suffered a loss of more than $2 million.

101.     Sandhu and all the Defendants are liable for the harm caused to Plaintiff, an amount to be determined in the trial.

   **WHEREFORE**, Plaintiff seeks an award of punitive damages and compensatory damages for among other things, the millions of dollars that Defendants defrauded from Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## NINTH CAUSE OF ACTION
### (DISSOLUTION OF DEFENDANT ENTITIES)

102.    Plaintiff repeats and re-alleges paragraphs 1 through 101 as if fully set forth herein.

103.    Defendants are New York Corporations or foreign Corporations with offices at 36-01 36th Ave, Long Island City, NY 11106.

104.    The Defendant Corporations should be dissolved, or the Defendants, majority shareholders, and/or those in control of the Defendant Corporations should be ordered to take proceedings to dissolve the Defendant Corporations, on the grounds that the Defendants, directors, majority shareholders, and those in control of the Defendant Corporations have been

guilty of illegal, fraudulent and oppressive conduct towards the Plaintiff, a minority shareholder. The Plaintiff continued to operate the Defendant Corporations for the sole benefit of the individual Defendants, unjustly enriching themselves and Sandhu at the expense of the Plaintiff minority shareholder; have deprived the minority shareholder of any opportunity to realize a profit or income from his ownership of the Defendant Corporations, either to force, coerce or deceive Plaintiff into selling his share in the Defendant Corporations to Defendants at prices below their actual value and/or to prevent Plaintiff permanently from receiving any return on his investments and any return of his original capital investment; have looted, wasted, diverted and/or mismanaged assets of the Defendant Corporations to enrich themselves unjustly at the expense of the Plaintiff minority shareholder; Sandhu has committed breach of trust and/or breach of fiduciary duty, thereby disqualifying her from exercising the authority of director and majority shareholder; she has and will in the future perpetuate the existence of the Corporations to continue the wrongs complained of above, and to serve no true corporate purpose but rather to continue to enrich herself unjustly at the expense of the Plaintiff minority shareholder; all pursuant to a scheme and conspiracy as set forth below.

105.  At all times material hereto, the ownership of stock in the Defendant Corporations was and is as follows:

106.  Plaintiff is the sole minority shareholder of each of the Defendant Corporations.

107.  Plaintiff received the shareholdings listed above for value, including cash, in excess of two million two hundred thousand ($2,200,000) dollars.

108.  At the time Plaintiff acquired his interest in the Corporations, he had a reasonable expectation of continued participation with the management of the Defendant Corporations.

109.  Plaintiff's investment was given to provide necessary and needed funds to pay creditors of the Defendant Corporations which insured the continued viability of these entities.

110. At all times material hereto, there was and is no market for the shares of the said Corporations.

111. At all times material hereto, Defendant Sandhu is and was the President, chief executive officer and majority shareholder of, and has acted as the dominant shareholder and dominant director of and has been in control of the Defendant Corporations and owes and owed the Plaintiff the duties of a fiduciary with respect to the operations of the Defendant Corporations.

112. Defendant Sandhu conspired to commit fraud, breach of trust and breach of fiduciary duty, mismanagement, looting, waste, spoliation and misuse of corporate assets, and operating the Defendant Corporations unlawfully to serve no true purpose of the Corporations, but rather to enrich herself unjustly, at the Plaintiff minority shareholder's expense and to provide benefits solely to herself, willfully, wantonly and maliciously to damage and defraud Plaintiff and to force, coerce or deceive Plaintiff into selling his shares in the Defendant Corporations to Defendant Sandhu at prices vastly below their actual value and/or to prevent Plaintiff permanently from receiving any return on his investment or any return of his original capital investment.

113. Pursuant to said course of action, Defendant Sandhu has acted fraudulently, wrongfully, illegally and oppressively to freeze Plaintiff out of the Defendant Corporations by making it impossible for him to participate as an officer or director, and by denying him any form of return on his investments therein, including failure to pay interest on Plaintiff's investment, which are due to Plaintiff from Defendant Corporations.

114. Defendant Sandhu has now transferred to herself, and failed to pay dividends from any of the Defendant Corporations to date, despite the availability of funds for proper payment of dividends, and by illegally accumulating excessive earnings in said Defendant Corporations above and beyond sums needed for foreseeable projects.

115.     Defendant Corporations are assessed vastly below their actual value or to prevent Plaintiff permanently from receiving any return on his investments or any return of his original capital investment.

116.     As a result of Defendant Sandhu's acts, Plaintiff has and will continue to be denied any form of return on his investments in the Defendant Corporations and any return of his original capital investment.

117.     Defendant Sandhu has caused the Defendant Corporations to fail to provide Plaintiff with financial statements upon lawful demand, have failed to give Plaintiff legally required notice of shareholders' meetings and have caused Plaintiff to be given misleading, incomplete and erroneous financial statements, all as part of a continuing scheme to conceal fraud and conspiracy to commit various wrongful and illegal acts of waste, mismanagement, breach of fiduciary duties, looting, and oppressive conduct, and to force, coerce or deceive Plaintiff into selling his shares in the Defendant Corporations to Defendants at prices vastly below their value.

118.     Pursuant to said conspiracy, Defendant Sandhu has wasted, looted and depleted the retained earnings of Plaintiff in each of Defendant Corporations.

119.     Pursuant to said conspiracy, Defendant Sandhu has caused the Defendant Corporations to incur excessive general and administrative expenses all in an effort to deprive Plaintiff from receiving a return on his investment or receiving retained earnings.

120.     Pursuant to said plan of action, since Plaintiff invested monies into Defendant Corporations and continuing, Defendant Sandhu has caused the Defendant Corporations to pay Defendant Sandhu excessive salary, wages, loans, and bonuses wrongfully, in bad faith, fraudulently, illegally, and in an effort to loot, divert, waste, and mismanage corporate assets, oppressively to the rights of the Defendant Corporations and the Plaintiff.

121.     Pursuant to said course of action, the Defendant Sandhu has wasted and mismanaged corporate assets by, among other things, by failing to pursue legitimate broadcasting outlets, failing to create broadcasts that appeal to the Indian community and otherwise failing to properly promote the Defendant Corporations.

122.     Pursuant to said course of action, Defendant Sandhu has neglected failed and refused to allow Plaintiff to examine the books and records of Defendant Corporations to determine the extent of the defalcation committed by Defendant Sandhu.

123.     Pursuant to said course of action, Defendant Sandhu has committed and will continue to commit other acts of fraud, mismanagement, waste, looting, breach of trust and breach of fiduciary duty and oppressive conduct.

124.     Plaintiff has no adequate remedy at law for the wrongs and injuries complained of herein.

125.     Any demand on the boards of directors of the Defendant Corporations to take actions or proceedings to correct and prevent the wrongs and injuries complained of herein would be futile in that the Defendants dominate and control the Defendant Corporations, as alleged.

126.     No previous application for the relief requested herein has been made, except that a special proceeding for dissolution of the Defendant Corporations was dismissed, with prejudice with respect to statutory dissolution, and without prejudice and with leave to plead again with respect to the non-statutory cause of action.

**WHEREFORE**, Plaintiff demands that the Defendant Corporations be dissolved and that the Defendants be ordered to take all necessary and proper steps and proceedings to dissolve the Defendant Corporations, attorney's fees and costs of suit and such other relief as to the Court seems just.

## TENTH COUNT
## DISOLUTION OF DEFENDANT ENTITIES PURSUANT TO
## N.Y. BUS. CORP. LAW § 1104-A

127.     Plaintiff repeats and re-alleges paragraphs 1 through 126 as if fully set forth herein.

128.     Plaintiff is the holder of fifty (50) percent of the Common shares /Common units in each of Defendant Corporations. Plaintiff are each entitled to vote for the election of directors. No other class of shareholders are entitled to vote on any corporate matters.

129.     To the best of Plaintiff's knowledge, Defendant Sandhu is the owner of the balance of the fifty (50) percent of the Common shares/Common units of each of the Defendant Corporations.

130.     None of the shares of Defendant Corporations is listed on a national securities exchange, or is regularly quoted in an over-the-counter market by a member of a national or affiliated securities association.

131.     Said Defendant Corporations are in the business of broadcasting cable television programs which are focused upon the Indian Community.

132.     Plaintiff requests that Defendant Corporations be dissolved pursuant to N.Y. Bus. Corp. Law § 1104-a because the Director, Defendant Sandhu is the person in control of the Defendant Corporations and is guilty of gross continuing oppressive action towards the Plaintiff.

133.     Plaintiff has been denied any role as a director of Defendant Corporations in which Plaintiff have a substantial financial interest.

134.     In addition to the aforementioned denial to serve on the board of directors and as an officer of that corporation, Plaintiff has been forbidden the right of entry to the corporate property in Long Island City, New York, which action constitutes the most flagrant, oppressive freeze-out of a minority shareholder of a corporation.

135.     Plaintiff has been emasculated to the point that he is neither consulted with nor informed about the operation of the Defendant Corporations. As a shareholder/unit holder of Defendant Corporations, Plaintiff has been given no real authority or role in the operation of the company. He was not consulted about any Board of Directors meetings nor has he been privy to any discussion about the management of the Defendant Corporations by Defendant Sandhu. The above-mentioned actions constitute a freeze-out.

136.     Defendant Corporations are at present entirely solvent and wholly able to pay all of its obligations in due course.

137.     The oppressive actions of the Defendant Corporations, through its officers and directors as set forth herein have severely damaged Plaintiff's reasonable expectations of a management role and financial security and constitute a freeze-out of Plaintiff' interest.

138.     The Defendant Corporations, through Defendant Sandhu, constituting a majority of the Board, has engaged in oppressive action to defeat the reasonable expectation of Plaintiff that they are entitled to a share of corporate earnings, a place in corporate management and other financial security attendant to the ownership of the aforementioned minority shares in the corporation.

139.     The Defendant Corporations, through its employees including, but not limited to Defendant Sandhu, knew or in the exercise of reasonable judgment should have known of the expectations of Plaintiff herein referred to.

140.     No remedy exists, short of dissolution of the corporation, to properly protect the rights and interests of Plaintiff.

141.     Plaintiff has no adequate means of recovering his investment or equity, short of dissolution pursuant to N.Y. Bus. Corp. Law § 1104-a.

142. The Defendant Corporations have over the past few years pursued a course of conduct which has consistently stripped Plaintiff of his right and ability to properly manage those portions of the company for which he has responsibility and to properly protect his investment as a minority shareholder.

**WHEREFORE**, Plaintiff prays for an order of this Court dissolving Defendant Corporations, attorney's fees and costs of investigation and suit, and for such other and further relief as may be appropriate.

### ELEVENTH COUNT
### (UNJUST ENRICHMENT)

143. Plaintiff repeats and re-alleges paragraphs 1 through 142 as if fully set forth herein as if the same were set forth herein at length.

144. Commencing in 2011, Defendant Sandhu, individually and in behalf of Defendant Corporations requested that Plaintiff invest monies in Defendant Corporations which funds were to be used to pay third-party creditors.

145. Defendant Sandhu expressly represented to Plaintiff that the investment would entitle him to an ownership interest in Defendant Corporations in addition to said sums being treated as loans on the ledgers of Defendant Corporations.

146. All sums aforementioned represented borrowed funds by Plaintiff who has paid interest on these monies, and is entitled to repayment of same.

147. In 2013, Plaintiff and all Defendants executed a document stating that these sums were consideration for a fifty (50%) percent interest in the Defendant Corporations in addition to the obligation of all Defendants to repay same.

148. Defendants have been unjustly enriched by failing to return sad funds with interest.

149.     Despite ongoing demand, the Defendant Corporations and Defendant Sandhu have neglected, failed and refused to repay the debt aforementioned along with reasonable interest.

**WHEREFORE**, Plaintiff seeks an award of compensatory and punitive damages in compensation for among other things, the millions of dollars that Defendants defrauded from Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## TWELFTH COUNT
## (PIERCING THE CORPORATE VEIL)

150.     Plaintiff repeats and re-alleges paragraphs 1 through 152 as if fully set forth herein as if the same were set forth herein at length.

151.     The Defendant Corporations are in adequately funded.

152.     Sandhu has become so improperly entwined in the business and financial affairs of the Defendant Corporations that her actions have confused and intermingled the activity with substantial disregard of the separate nature of each Defendant Entity.

153.     Sandhu has become the alter ego of each entity by ignoring the fiduciary duty owed to each entity commingling funds, operating each Defendant entity in the name of another Defendant entity and by making impermissible personal payments and/or asset transfers, with the intent to perpetrate a fraud or defeat the claims of third parties in such a manner as to evade the law.

154.     The actions aforementioned by Sandhu have effectively blurred and eliminated any corporate immunity to which she might be otherwise entitled and is personally responsible for all debts and obligations as aforementioned.

**WHEREFORE**, Plaintiff seeks an award of compensatory and punitive damages in compensation for among other things, the millions of dollars that Defendants defrauded from

Plaintiff and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

Dated:  1/6/2020

ALAN R. ACKERMAN, ESQ.
LAW OFFICES OF ALAN R. ACKERMAN
1719 Route 10 East, Suite 106
Parsippany, NJ 07054
(973) 898-1177
(973) 898-1230 – Facsimile
araesq@alanackermanlaw.com
Attorney for Plaintiff