UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

KASHMIR GILL,

        Plaintiff,

– against –

JUS BROADCASTING CORP.;
JUS PUNJABI, LLC; JUS ONE CORP;
JUS BROADCASTING CORP. PVT LTD;
and PENNY SANDHU,

        Defendants.

---------------------------------------------------------------x

Case No. 1:19-cv-04216 (ILG) (PK)

## DEFENDANTS' MEMORANUM IN OPPOSITION TO "PLAINTIFFS' [sic] NOTICE OF MOTION FOR MORE SPECIFIC ANSWERS TO INTERROGATORIES AND RESPONSES TO DOCUMENT DEMAND"

Defendants JUS Broadcasting Corp., JUS Punjabi, LLC, JUS One Corp., JUS Broadcasting Corp PVT Ltd (collectively, the "JUS Entities") and Penny Sandhu respectfully submit this memorandum in opposition to the motion entitled "Plaintiffs' [sic] Notice of Motion for More Specific Answers to Interrogatories and Responses to Document Demands" (the "Motion"). Also accompanying this legal memorandum is the brief opposing declaration of defendants' attorney, Paul Batista (the "Batista Decl.").

### Preliminary Statement

As this memorandum will describe, the defendants' existing interrogatory responses (*see* Exhibit 1 to the Batista Decl.) are adequate, informative and sufficient. In an effort, however, to address concerns that plaintiff Kashmir Gill ("Gill") and his lawyer, the New Jersey attorney

Alan R. Ackerman, admitted *pro hac* vice, have expressed, the accompanying declaration includes as Exhibit 2 a supplemental response (the "Supplement") as permitted by Fed. R. Civ. P. 26.[1]

At the outset, it is important to emphasize that, as a whole, Gill's interrogatories, while they misleadingly are numbered 1 through 24, in fact contain multiple subparts which, in their totality, aggregate 38 separate questions. In effect, then, Gill posed 62 interrogatory questions.

This overreach by Gill and his counsel[2] obviously implicates the explicit provisions of Fed. R. Civ. P. 26. In relevant part, that rule, entitled "Discovery Scope and Limits," provides:

> [D]iscovery [must be] proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit . . . [*See* Fed. R. Civ. P. 26(b)(1).]

Likewise, and consistent with Fed. R. Civ. P. 26(b)(1), a related provision of the rules states that the Court on its "own must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ." *See* Fed. R. Civ. P. 26(c).

---

[1] At the outset, in order to place discovery in this litigation in context, Gill has *never* provided a single document in response to defendants' document demand served in early June 2020 and he has not committed to appear for deposition duly scheduled for August 20, 2020. Further underscoring the blatant disparity in discovery cooperation, the JUS Entities long ago produced as many as one thousand pages of documents in response to Gill's document demand. Thus, with respect to that branch of Gill's Motion that conclusorily and abstractly complains about an allegedly deficient production of documents, defendants' position is simple, straightforward and requires no elaboration. They have produced approximately 1,000 pages of responsive documents that are in their possession, custody and control. In addition, of course, this Court has ordered defendants' accountant – who is also Gill's accountant – to produce in response to a non-party subpoena and subject to a confidentiality order *all* of defendants' financial documents, including tax returns.

[2] It is not clear why it is only Ackerman, whose status is on a *pro hac vice* basis only, has elected to conduct every aspect of this litigation on his own to the exclusion of Steven A. Jayson, a New York lawyer admitted to practice in this Court whose only role has been to sponsor Ackerman's *pro hac vice* application. Jayson, whose direct participation in this case is essential to ensure the propriety of Ackerman's conduct, has literally signed no pleadings and no discovery demands and participated in no aspect of this case.

2

Each of these factors weighs in favor of denial of the Motion. *First*, Gill's essential claim in his prolix, almost two hundred paragraph First Amended Complaint (the "Complaint") is that from in or about 2010 through 2017 he transferred in excess of $2 million defendants.[3] In the terms of Fed. R. Civ. P. 26(b)(1), Gill, who is a successful owner and executive in the oil industry, is in a position to allege how much in funds he contends he transferred to defendants, when he did so, and the alleged purposes of any transfers. As Fed. R. Civ. P. 26(b) expresses, Gill has full "access to relevant information" although there is no basis to conclude at this stage of the action that "information" Gill claims to have is accurate or admissible.

*Second*, in terms of the same rule, Gill's "resources" are immensely more significant than defendants' resources.

## Specific Issues Regarding the Responses to Interrogatories

*(i) Interrogatory No. 1*

Interrogatory No. 1 is as follows:

> Identify all persons who have, claim to have, or believe may have knowledge, documents, or information relating to any fact alleged in the pleadings (as defined in Federal Rule Civil Procedure 7(a)) filed in this action, or any fact underlying the subject matter of this action.

In responding to Interrogatory No. 1, defendants interposed an entirely appropriate Objection, which stated as follows: "Defendants object to this Interrogatory on the grounds that, as framed, (1) it is overly broad, (2) it is unduly burdensome, (3) it is ambiguous, and (4) it is impossible to answer as framed since, *inter alia*, it is inconceivable that defendants could ever

---

[3] It is important to emphasize that Gill extrapolates from these alleged transfers the self-contradictory notions that the transfers of funds were "loans" to defendants or "investments" in the JUS Entities that somehow entitled him to an equity ownership interest in fifty percent or more of the JUS Entities. It is a fact, however, that, among other things, Gill has not identified or produced a single document that is a promissory note, a loan agreement, a share certificate, a membership certificate in any limited liability company, a UCC-financing statement, a partnership agreement, an operating agreement or any other document that would qualify as evidence of a "loan," an "investment" or any type of equity or lender position.

3

have information as to anyone who 'claims' to have 'knowledge, documents or information' of events. Defendants stress that the purpose of 'Interrogatories' is to elicit *facts*, not guesses, suppositions or speculation." *See* Exhibit 1 to Batista Decl.

While defendants adhere to that Objection to Interrogatory No. 1, the Supplement (*see* Batista Decl., Exhibit 2) adds the name of Ms. Sandhu's daughter, Aashmeeta Yogiraj, defendants' Director of Marketing and Network Distribution.

*(ii) Interrogatory No. 2*

Interrogatory No. 2 is as follows:

> Describe in detail the nature and substance of the knowledge, documents, or information that you believe the person(s) identified in response to Interrogatory No. 1 may have.

Defendants appropriately objected to Interrogatory No. 2 in its entirety, asserting: "Defendants object to Interrogatory No. 2 on the grounds that, as framed, (1) it is overly broad, (2) it is burdensome, (3) it is ambiguous, (4) it is impossible to answer as framed, and (5) it purports to require defendants to engage in guesswork and speculation. *See* also the Objection to Interrogatory No. 1, *supra*."

Although defendants adhere to this Objection to Interrogatory No. 2 in full, their Supplement (*see* Batista Decl., Exhibit 2) does advance as extensive a response as possible notwithstanding the inherently speculative nature of the interrogatory. In substance, the response appearing in the Supplement will be as follows:

1. Plaintiff Gill met repeatedly ████████████ with her from in or about 2010 through in or about 2018, when she learned for the first time that he had made a repeated practice of surreptitiously and without her permission recording their conversations. They had hundreds of discussions, none of which

4

Ms. Sandhu recorded. They exchanged emails and electronic messages, all of which defendants have produced to the extent they are in defendants' custody, possession and control, while Gill has produced no documents at all. ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

2. As to Ron Bapat ("Bapat"), he has served as the accountant to defendants *and* to Gill and entities Gill controls. Bapat, who either has produced or is in the process of producing defendants' confidential financial information pursuant to a non-party subpoena and Confidentiality Order, knows precisely what information defendants have provided to him.

3. Ms. Sandhu, to the best of her present recollection, had so many conversations and communications for a period of approximately eight years with Gill, ████████████████████████████ that her only clear recollection is that she always rejected Gill's requests and suggestions that he be given an equity or partnership or any other type of proprietary interest in any of the JUS Entities.

4. Bikram Gill is, upon information and belief, Gill's brother and business partner. Defendants have no reliable "knowledge" or "information" of what, if anything, Bikram Gill may know ████████████████████████████

5. Bindu Gill is, upon information and belief, Gill's wife. Defendants have no basis for speculating as to what Bindu Gill may know ~~[redacted]~~

6. Karam Dahiya ("Dahiya") is a New York lawyer who had frequent contact with Ms. Sandhu and Gill. Defendants have no reliable current information as to what knowledge or information Dahiya may possess, except that he has over the last several years from time to time exerted pressure on defendants to "settle" with Gill by capitulating to Gill's demands.

7. Aashmeeta Yogiraj, who is Ms. Sandhu's daughter and an employee of the JUS Entities, has information that Ms. Sandhu never intended or proposed to give Gill any ownership, equity, or partnership interest in any of the JUS Entities.

*(iii) Interrogatory No. 3*

Interrogatory No. 3 states as follows:

> Identify all persons with whom you have had any communication about the Plaintiff's allegations that he is or is not a partner or loaned or advanced monies to you on behalf of the Defendant Entities.

Defendants adhere to their Objection to Interrogatory No. 3, yet they are supplementing their response (*see* Batista Decl., Exhibit 2) essentially as follows:

> Plaintiff Kashmir Gill has had communications with Ms. Sandhu regarding Gill's desire to become a "partner" of Ms. Sandhu. She has repeatedly made it clear that she would never consent to Gill's partnership demands.

> In addition, Gill and Ms. Sandhu from in or about 2010 to in or about 2018 communicated about Gill's transfers of funds and Ms. Sandhu's return of some of those funds and her wish to return additional funds, which Gill refused to accept.

6

Moreover, Ms. Sandhu has had confidential attorney-client communications with defendants' counsel regarding the subject to which Interrogatory No. 3 refers.

*(iv) Interrogatory No. 4*

Interrogatory No. 4 states as follows:

Set forth all facts which support your contention in the 2nd Affirmative Defense that Plaintiff's claims are barred by the Statute of Limitations.

Defendants adhere to their Objection to Interrogatory No. 4. That Objection states: "Defendants object to Interrogatory No. 4 on the grounds that, as framed, it calls for legal conclusions, not facts."

However, defendants are supplementing their response to Interrogatory No. 4 substantially as follows:

Subject to the foregoing Objection, plaintiff Gill voluntarily elected over a period of many years beginning in or about 2010 to extend non-refundable gifts and contributions of cash and funds to defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ None of those gifts and contributions was evidenced by any purchase-and-sale agreement, any security interest, or any loan document, stock certificate, written contract or membership agreement, or any legally cognizable basis conferring on plaintiff (i) any right to insist on return of the gifts and contributions or (ii) to advance any of his ▓▓▓▓▓▓ claims to any ownership, equity or other interest in the JUS Punjabi Entities or their assets. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Moreover, defendants note that Gill's ambiguous complaint does not make precisely clear what causes of action he is advancing. Giving Gill's complaint the benefit of the doubt, his claims would appear to be controlled by the limitations period of six years for which CPLR §213 provides with respect to actions for which limitations periods are "not otherwise provided for, on contract, or based on fraud." Since Gill's action was not commenced until January 2019 in the District of New Jersey, the application of the CPLR precludes

7

claims (to the extent Gill has any cognizable claims) that pre-date 6 years before January 2019.

*(v) Interrogatory No. 5*

The Objection and Response to Interrogatory No. 5 are and remain appropriate. Interrogatory No. 5 states as follows:

> Describe in detail all facts supporting your contention that Plaintiff is not and has never been a partner and did not advance or loan any money to you, as set forth in the Amended Complaint.

Defendants adhere to the legitimacy and propriety of their original responses to Interrogatory No. 5, which are as follows:

> **OBJECTION TO INTERROGATORY NO. 5:** Defendants object to Interrogatory No. 5 on the grounds that, as framed, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, and (4) it is impossible to answer as framed.
>
> **RESPONSE TO INTERROGATORY NO. 5:** Subject to the foregoing Objection, plaintiff (i) never obtained any cognizable ownership interest in any one of the JUS Punjabi Entities, (ii) never was given a legally cognizable document embodying or evidencing any ownership interest in any one or all of the JUS Punjabi Entities, and (iii) never received a promise, suggestion or legally cognizable proposal that he was ever a partner or would become a partner, limited partner or owner of any one or all of the JUS Punjabi Entities or their assets.
>
> Moreover, plaintiff never loaned or advanced funds to purchase or acquire or otherwise obtain any legally enforceable interest in the JUS Punjabi Entities or any property interest, tangible or intangible, in the JUS Punjabi Entities or their tangible or intangible possessions, including, without limitation, their intellectual property. [redacted]

*(vi) Interrogatory No. 6*

Interrogatory No. 6, which in addition to its text contains six subparts, states as follows:

> **INTERROGATORY NO. 6:** Identify all chat rooms, blogs, online forums, or social media or networking websites, applications, services, software, or platforms (including but not limited to those involving video sharing, photograph sharing, blogging, messaging, or ephemeral messaging) on which you have posted, sent, or received content (including

8

but not limited to photographs, videos, messages, comments, or "likes") relating to Kashmir Gill or any activity undertaken by him on behalf of the defendant entities as set forth in the Amended Complaint. For each item you identify, list:

    a. The name of the website, application, service, software, or platform.

    b. If applicable, the website address.

    c. The name(s) of the account holder(s).

    d. The user name(s) or handle(s) for the account.

    e. The mail address(es) associated with the account, if any.

Defendants fully and adequately stated Objections to Interrogatory No. 6 and in addition answered the interrogatory. Their response was and remains (*see* Batista Decl., Exhibit 2):

**OBJECTION TO INTERROGATORY NO. 6:** Defendants object to Interrogatory No. 5 on the grounds that, as framed, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, (4) it is incomprehensible, and (5) it is impossible to answer as framed.

**RESPONSE TO INTERROGATORY NO. 6:** Subject to the foregoing Objection, defendants never made use of any medium mentioning or depicting Gill as having any role, function or any activity relating to, or for the benefit of, or on behalf of, the JUS Punjabi Entities or Ms. Sandu.

*(vii) Interrogatory No. 7*

Interrogatory No. 7 states:

Set forth any and all changes in format, composition or text to the Jus broadcasting [*sic*] website which, in any way, relates to the inclusion or deletion of references to Plaintiff, his work or efforts on behalf of the Defendant Entities, describe [*sic*] in detail:

    a. Any changes you have made to the account or profile information in the last five years, including but not limited to any change in any News & Press or Events on the Jus Broadcasting website.

    b. All content that may have contained or generated data or information about Kashmir Gill, including but not limited to messages, photographs, videos, posts, comments, or "likes," that has [*sic*] been deleted or otherwise removed, whether manually or automatically, five years.

    c. The automatic retention and/or automatic deletion settings in place on the account for content or data from 2010 through the present date.

    d. Any circumstances in which content or data was manually deleted from the Jus Broadcasting Website from 2014 through the present date, including when and why the content or data was deleted.

Defendants interposed an Objection and Response to Interrogatory No. 7 which were wholly sufficient; they are as follows:

**OBJECTION TO INTERROGATORY NO. 7:** Defendants object to Interrogatory No. 7 on the grounds that, as framed, it (1) is overly broad, (2) it is unduly burdensome, (3) it is ambiguous, (4) it is impossible to answer as framed, (5) it is incomprehensible, and (6) it is not reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE TO INTERROGATORY NO. 7:** Subject to the foregoing Objections, defendants had no use for, and no reason to make use of, and did not make use of, data or information about Gill.

*(viii) Interrogatory No. 8*

Interrogatory No. 8 is as follows:

**INTERROGATORY NO. 8** Identify all workplace collaboration severs [*sic*] and/or cloud based storage or tools or ephemeral messaging applications, and all associated data and metadata that you use that contain, may have contained, or may generate data or information about Plaintiff. For each tool you identify, list:

a. The name(s) of the account holder(s) for any account that contains, may have contained, or may generate data or information about Plaintiff, the monies which he transferred to the Defendant Entities or Sandhu, or any references to Plaintiff as an employee, advisor, officer or director of the Defendant Entities.

b. The user name(s) or handle(s) for any account associated with the tool that contains, may have contained, or may generate data or information about the Plaintiff.

c. The email address(es) used in connection with any account associated with the tool that contains, may have contained, or may generate data or information about Plaintiff.

d. The date on which you began using the tool that contains, may have contained, or may generate data or information about the Plaintiff.

e. A description of the automatic retention and/or automatic deletion settings in place for the tool from 2015 through the present date.

f. Any circumstances in which content or data was manually deleted from the tool from 2015 through the present date, including when and why the content or data was deleted.

Defendants objected to Interrogatory No. 8 on the grounds that "(1) it is overly broad, (2) it is unduly burdensome, (3) it is ambiguous, (4) it is impossible to answer as framed,

10

(5) it is incomprehensible, and (6) it is not reasonably calculated to lead to the discovery of admissible evidence."

While defendants adhere to the propriety of that Objection to Interrogatory No. 8, defendants' Supplement (*see* Batista Decl., Exhibit 2) will provide substantially as follows:

1. Gill was never, contrary to the statement in Interrogatory No. 8, "an employee, advisor, or officer of Defendant Entities . . ."

2. Defendants are unaware of, and have no information regarding, "workplace collaboration severs [*sic*] and/or cloud based storage or tools or ephemeral messaging applications and metadata that you use that contain, may have contained or may generate data or information about [Gill]."

3. Nor do defendants have any information regarding any of the items to which subparts (a) through (f) of Interrogatory No. 8 refer.

(ix) *Interrogatory No. 9*

Interrogatory No. 9 states:

Attached to these interrogatories as Exhibit A is a schedule of all monies paid by Kashmir Gill to Penny Sandhu, individually or in behalf of any of the Defendant Entities.

a.  Do you acknowledg[ing] receiving any or all sums of money set forth on the attached schedule? If so, into which account was each of the transfers deposited? If not, identify each amount which Defendants claim was not received from Plaintiff.

b.  Was each transfer of funds listed in any of the financial ledgers or records [*sic*] the Defendant Entities or Sandhu individually? If so, identify how each transfer was categorized.

Without characterizing funds transferred by Gill as anything other than non-refundable gifts or contributions, defendants' Supplement will deny the accuracy of Gill's Exhibit A and identify the following information regarding the history, to the extent information is currently available to defendants, regarding funds transfers among Gill, the JUS Entities and Ms. Sandhu.

| Date | Transfer |
|---|---|
| 9/15/10 | $25,000 from or on behalf of Gill to defendants |
| 3/25/11 | $25,000 returned to Gill by defendants |
| 10/18/11 | $31,000 from Gill to defendants |
| 12/12/11 | $400,000 from Gill to defendants |
| 6/21/12 | $19,000 from Gill to defendants |
| 6/23/12 | $9,500 from Gill to defendants |
| 7/13/12 | $15,000 from Gill to defendants |
| 7/18/12 | $15,000 from Gill to defendants |
| 8/5/12 | $32,798 from Gill to defendants[4] |
| 8/10/12 | $15,000 from Gill to defendants |
| 8/14/12 | $25,000 from Gill to defendants |
| 8/27/12 | $30,000 from Gill to defendants |
| 9/4/12 | $10,000 from Gill to defendants |
| 9/24/12 | $20,000 from Gill to defendants |
| 11/5/12 | $10,000 from Gill to defendants |
| 12/28/12 | $10,000 from Gill to defendants |
| 1/10/13 | $56,000 from Gill to defendants |
| 3/28/13 | $100,000 from Gill to defendants |
| 5/8/13 | $30,000 from Gill to defendants |
| 10/14/13 | $100,000 from Gill to defendants |
| 1/6/14 | $60,000 from Gill to defendants |
| 3/26/14 | $30,000 from Gill to defendants |

---

[4] This entire amount was promptly refunded by defendants to Gill.

| | |
|---|---|
| 2/21/17 | $100,000 from Gill to defendants |
| 5/13/17 | $40,000 from Gill to defendants |
| 9/26/17 | $42,000 from Gill to defendants[5] |
| 12/1/17 | $20,000 from Gill to defendants[6] |



*(x) Interrogatory No. 10*

Interrogatory No. 10 states:

> Did defendants execute any promissory notes evidencing any monies due and owner [sic] to Plaintiff? If so, set forth the repayment terms of each promissory note and the interest rate.

Defendants objected to Interrogatory No. 10 but responded to it. In their Supplement (*see* Batista Decl., Exhibit 2), defendants will state substantially as follows:

> Defendants never executed any promissory notes to Gill, who never suggested such notes because he knew that any funds at issue were not loans or financing but that they were non-refundable gifts and contributions Gill voluntarily made ▬▬▬▬▬▬▬▬▬▬▬▬
>
> Moreover, there were occasions when Ms. Sandhu volunteered to return the gifts. Gill consistently refused Ms. Sandhu's offers to voluntary return of the gifts.

*(xi) Interrogatory No. 11*

Interrogatory No. 11 states:

---

[5] Defendants returned this amount to Gill in full in October 2017.

[6] This amount was returned by defendants to Gill on or about December 27, 2017.

> Did any defendant repay any transfers of money or loans from Plaintiff? If so, set forth the date and amount of each payment and identify the loan for which the pay was tendered.

In their Supplement, defendants, without waiving their position that funds transferred by Gill were non-refundable gifts or contributions, will state substantially as follows:

> Without waiving their position that funds transferred by Gill were non-refundable gifts or contributions, defendants returned $25,000 to Gill on or about March 25, 2011; $32,798.00 to Gill on or about August 10, 2017; $32,000 to Gill on or about September 21, 2017; $10,000 to Gill on or about September 26, 2017; $20,000 to Gill on or about December 1, 2017; $206,000 to Gill on or about April 10, 2014; $100,000 to Gill on or about April 10, 2014; and $44,000 to Gill on or about May 29, 2014.

(xii) *Interrogatory No. 12*

Interrogatory No. 12 states:

> For each payment tendered in the preceding interrogatory, date [sic] any defendant entity deduct the interest portion of the payments on its books and records. If so, attach a copy of any form 1099 issues to Plaintiff documenting the portion of the payment representing interest on the loan.

In their Supplement, defendants have clarified their Objection and Response to Interrogatory No. 12. *First*, the Objection will make clear that funds transferred by Gill were not loans and were in fact gifts or charitable contributions.

*Second*, the Supplement responds to Interrogatory No. 12 by making it clear that funds returned to Gill by defendants as indicated in the Response to Interrogatory 11 were for principal amounts only and did not include interest since there were no loans and no interest-bearing requirements. Furthermore, defendants did not issue Forms 1099 to Gill.

14

*(xiii) Interrogatory No. 13*

Interrogatory No. 13 states:

Did any of the Defendant Entities or Sandhu have the financial ability to pay any of the loans from Plaintiff? If so, set forth, with accompanying financial records, of the Defendant Entities financial ability to repay the loans.

Defendants' Supplement to Interrogatory No. 13 will state in substance that defendants had the ability to return to Gill non-refundable gifts and contributions that are identified in the Supplement responses to Interrogatories No. 9 and 11.

*(xiv) Interrogatory No. 14*

Interrogatory No. 14 states:

Did Plaintiff request repayment of its [*sic*] loans? If so, set forth all dates when Plaintiff requested repayment of the loan and Defendants' response. If in writing, attach a copy of those answers.

Defendants' Supplement states, in substance, that Gill never requested repayment of the so-called "loans" until this action was filed in 2019. Moreover, there had been, prior to the filing of this action, a confidential settlement discussion among counsel, Gill and Ms. Sandhu. Among other things, Ms. Sandhu, 

*(xv) Interrogatory No. 15*

Interrogatory No. 15 reads as follows and defendants' Objections and Response to the interrogatory are as follows:

**INTERROGATORY NO. 15:** Did any of the Defendant entities or Sandhu, or their authorized agents, servants or employees represent to Plaintiff that any or all transfers of money would be treated as an investment in any or all of the Defendant entities? If so, when did Defendants or their

15

authorized agents servants or employees express this statement to Plaintiff? If in writing, attach a copy to your answers to interrogatories. If oral, set forth the date of the statement, who was present and what was said by each person present.

**OBJECTION TO INTERROGATORY NO. 15:** Defendants object to Interrogatory No. 15 on the grounds that, as frames, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, and (4) it is impossible to answer as framed.

**RESPONSE TO INTERROGATORY NO. 15:** Subject to the foregoing Objection, never, since defendants always made it clear to Gill that none of the non-refundable gifts and contributions he made would ever be treated as an "investment" and were not "an investment" (*see* Interrogatory No. 15) in the JUS Punjabi Entities.

Defendants adhere to the adequacy and propriety of the stated Objection to Interrogatory No. 15 and the Response.

(xvi) *Interrogatory No. 16*

Interrogatory No. 16 states:

Did any of the Defendant Entities or Sandhu, or their authorized agents, servants or employees represent to Plaintiff that their attorneys were in the process of preparing legal documents setting forth that Plaintiff was a stockholder/member of any or all of the Defendant Entities? If so, when did Defendants or their authorized agents, servants or employees express this statement to Plaintiff? If in writing, attach a copy to your answers to interrogatories. If oral, set forth the date of the statement, who was present and what was said by each person present.

Defendants' Supplement will clarify the existing response by stating, in effect:

Defendants never advised Gill that defendants' attorneys or representatives were in the process of preparing or preparing legal documents setting forth that Gill was a stockholder or member of any of the JUS Punjabi Entities. Nor did defendants direct anyone to prepare partnership or any other documents relating to any partnership or other equity or management interest.

(vii) *Interrogatory No. 17*

16

Interrogatory No. 17 states:

> **INTERROGATORY NO. 17.** If the answer to the preceding interrogatory is in the negative, did any of the defendant entities or Sandhu, or their authorized agents, servants or employees, represented [*sic*] to Plaintiff that any or all of the transfers of monies would be treated as loans and repaid in a timely fashion? If so, when did Defendants or their authorized agents, servants or employees express this statement to Plaintiff? If in writing, attach a copy to your answers to interrogatories. If oral, set forth the date of the statement, who was present and what was said by each person present.

In their Supplement, defendants will preserve the existing Objection but will clarify the Response to reiterate that funds advanced by Gill were not loans, were not evidenced by documents, and imposed no re-payment obligations on defendants.

*(xviii) Interrogatory No. 18*

Interrogatory No. 18 states, as do the Objection and Response to Interrogatory No. 18, as follows:

> **INTERROGATORY NO. 18.** Where [*sic*] any of the Defendant entities in a week [*sic*] fiscal financial condition as a result of which any or all of the Defendant Entities or Sandhu was unable to repay the loans from Plaintiff?? If not, why did any of the Defendant Entities or Sandhu fail to repay the loans?
>
> **OBJECTION TO INTERROGATORY NO. 18:** Defendants object to Interrogatory No. 18 on the grounds that, as framed, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, (4) it is impossible to answer as framed, (5) it is not reasonably calculated to lead to the discovery of admissible evidence, and (6) it purports to require disclosure of highly confidential commercial information.
>
> **RESPONSE TO INTERROGATORY NO. 18:** Subject to the foregoing Objection, Gill never made any "loans" (*see* Interrogatory No. 18) to defendants. *See also* the Responses to Interrogatories Nos. 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, *supra*.

Defendants adhere to the adequacy and propriety of this response. In addition, the Supplement will assert that defendants do not comprehend the meaning of the term "weak" and in any event defendants voluntarily returned significant sums to Gill, as evidenced by the Responses to Interrogatories 9 and 11, *supra*.

17

*(xvix) Interrogatory No. 19*

Interrogatory No. 19, the Objection to it, and the Response to it are as follows:

**INTERROGATORY NO. 19.** At paragraph 26 of the Amended Complaint, Plaintiff alleges that Defendant Sandhu wrote **"Partnership for life, 03/03/2013"** on a dollar bill and handed it to Plaintiff. Do you admit writing this phrase and handing it to Plaintiff? If so, what did you mean by the phrase and what was its significance?

**OBJECTION TO INTERROGATORY NO. 19:** Defendants object to Interrogatory No. 19 on the grounds that, as framed, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, (4) it is impossible to answer as framed, and (5) it is not reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE TO INTERROGATORY NO. 19:** Subject to the foregoing Objection, the handwriting had no meaning and no significance; [redacted]

Defendants adhere to the sufficiency of the Objection and Response.

*(xx) Interrogatory No. 20*

Interrogatory No. 20, the Objection to it, and the Response to it are as follows:

**INTERROGATORY NO. 20:** At paragraph 50 of the Amended Complaint, plaintiff alleges that defendant Sandhu requested that Kashmir Gill write a short statement stating that his long-term debt on the books of Jus Punjabi LLC was converted to capital stock evidenced by a stock certificate. Does defendant Sandhu acknowledge authoring that email and sending it to plaintiff? What was the significance of this request and to which entity did Defendant Sandhu direct that the statement be sent and for what purpose?

**OBJECTION TO INTERROGATORY NO. 20:** Defendants object to Interrogatory No. 20 on the grounds that, as framed, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, and (4) it is impossible to answer as framed.

**RESPONSE TO INTERROGATORY NO. 20:** Subject to the foregoing Objection, it was Gill, not Ms. Sandhu, who made the request for the "statement" identified in Interrogatory No. 20 because Gill claimed he needed the statement to evade Gill's own tax obligations. [redacted] In any event, no stock conversion ever took place, no stock certificates were ever issued to Gill, and his demand for the

18

"statement" was part of his own fraudulent scheme to evade his own tax obligations.

Defendants adhere to the Objection and the accuracy and sufficiency of the Response.

*(xxi) Interrogatory No. 21*

Interrogatory No. 21 and the Objection and Response to it are as follows:

**INTERROGATORY NO. 21:** Set forth all damages sustained by any or all of the Defendant Entities and Sandhu arising from the filing of the within action by Plaintiff. Please itemize each element of said damages, how the amount was calculated.

**OBJECTION TO INTERROGATORY NO. 21:** Defendants object to Interrogatory No. 21 on the grounds that, as framed, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, and (4) it is impossible to answer as framed.

**RESPONSE TO INTERROGATORY NO. 21:** Subject to the foregoing Objection, defendants have incurred many thousands of dollars, as yet undetermined, to contest Gill's and his counsel's frivolous, dilatory and baseless litigation. Severe damage has been inflicted on defendants in general by Gill, particularly his initial public assertion, which was totally frivolous, that Ms. Sandhu was guilty of violations of [RICO].

Defendants adhere to the sufficiency of the Objection and Response to Interrogatory No. 21.

*(xxii) Interrogatory No. 22*

Interrogatory No. 22 and the Objection to it are as follows:

**INTERROGATORY NO. 22.** Did any of the Defendant Entities apply for a secured or unsecured loan to any bank, private lender or financial institution? If so, was the loan approved? If not, why not? Identified and attach all financial records submitted it to said bank, private lender or financial institution.

**OBJECTION TO INTERROGATORY NO. 22:** Defendants object to Interrogatory No. 22 on the grounds that, as framed, it (1) is overly broad, (2) it is burdensome, (3) it is ambiguous, (4) it is impossible to answer as framed, (5) it is not reasonably calculated to lead to the discovery of admissible evidence, and (6) it purports to call for production of confidential commercial information.

Defendants adhere to this Objection to Interrogatory No. 22.

Dated: New York, New York
July 31, 2020

                        PAUL BATISTA, P.C.

                        By: _____
                              Paul Batista
                        Attorney for Defendants
                        JUS Broadcasting Corp.,
                        JUS Punjabi LLC, JUS One
                        Corp., JUS Broadcasting Corp.
                        PVT Ltd, and Penny Sandhu
                        26 Broadway, Suite 1900
                        New York, New York 10004
                        (631) 377-0111
                        Batista007@aol.com