UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
KASHMIR GILL,                                        :
                                                     :
                              Plaintiff,             :
                                                     :        MEMORANDUM AND ORDER
            -against-                                :
                                                     :
JUS BROADCASTING CORP., JUS PUNJABI,                 :        19-CV-4216 (DLI)(PK)
LLC, JUS ONE, CORP., JUS                             :
BROADCASTING CORP. PVT LTD., and                     :
PENNY SANDHU,                                        :
                                                     :
                              Defendants.   x
-------------------------------------------------------------

**Peggy Kuo, United States Magistrate Judge:**

Before me is a motion filed by Kashmir Gill ("Gill" or "Plaintiff") against JUS Broadcasting

Corp., JUS Punjabi LLC, JUS One, Corp., JUS Broadcasting Corp. PVT Ltd. (collectively, "Corporate

Defendants") and Penny Sandhu ("Sandhu") (together with Corporate Defendants, "Defendants"),

seeking sanctions for spoliation of electronically stored information ("ESI"). (*See* Plaintiff's Motion

for Adverse Inference Attributable to Defendants' Failure to Preserve Responsive Documents

Electronically Stored Information and Its Computer (the "Motion"), Dkt. 153.) For the reasons stated

herein, the Motion is denied.

## BACKGROUND

Between 2010 and 2013 Plaintiff made multiple payments to Defendants totaling

$2,027,161.06. (Declaration of Kashmir Gill ("Gill Decl.") ¶ 2, Dkt. 158; *see* Am. Compl. ¶¶ 11-35,

Dkt. 56.) Plaintiff alleges that these payments were consideration in exchange for a 50% partnership

or stockholder interest in the Corporate Defendants, which Defendants never provided. (Am. Compl.

¶¶ 24, 64-67; Gill Decl. ¶ 2.) Defendants claim that no such agreement existed, and that Plaintiff

"gratuitously" gave Defendants that money. (Transcript of Deposition of Penny K. Sandhu on Sept.

27, 2022, Ex. 1 to Declaration of Paul A. Batista ("Sandhu Dep. I Tr.") 78:25-79:5, Dkt. 156-1; *see*

Defendants' Memorandum in Opposition at 4, Dkt. 157.)  Sandhu is the founder, President, Chief Executive Officer and owner of the Corporate Defendants.  (Declaration of Penny K. Sandhu ("Sandhu Decl.") ¶ 1, Dkt. 125.)

The Complaint was filed on February 25, 2019.  (*See* Complaint, Dkt. 1.)  In a letter to Defendants' counsel dated August 30, 2019, Plaintiff's counsel Alan R. Ackerman requested that Defendants "preserve any . . . electronically stored information that may contain evidence important to the above legal matter."  (Ex. A to Declaration of Alan R. Ackerman ("Preservation Letter") at 1, Dkt. 153-3.)

### I.      The Kashmirgill@jusbroadcasting.com Emails

In   2013,   Sandhu   provided   Plaintiff   with   the   email   address "kashmirgill@jusbroadcasting.com," which he used to communicate with, among others, Sandhu at her email address "penny@jusbroadcasting.com."  (Am. Compl. ¶ 27; Transcript of Deposition of Penny K. Sandhu on Nov. 21, 2022, Ex. B to Gill Decl. ("Sandhu Dep. II Tr.") 156:20-157:5, Dkt. 158-1; *see, e.g.*, Ex. C to Gill Decl., Dkt. 158-1.)

Plaintiff requested that Defendants produce all emails in the kashmirgill@jusbroadcasting.com account.  (Transcript of Conference on October 15, 2020 ("Conf. Tr.") 7:2-10, Dkt. 101.)  However, according to Sandhu, that account was deleted at some point after 2018.  (*See* Conf. Tr. 62:1-3, 65:5-6.)  Therefore, she searched for emails to or from kashmirgill@jusbroadcasting.com that still existed in the penny@jusbroadcasting.com account and produced those.  (*See id.* 56:5-59:11.)  In discussing whether Defendants could retrieve the deleted emails from the email service provider for the @jusbroadcasting.com domain, Sandhu stated, "You can go talk to Google. You will never get it because it's been deleted very long time ago."  (*Id.* 62: 20 – 21.)

On October 22, 2020, Plaintiff served a subpoena on Google, LLC ("Google") for all emails in the accounts kashmirgill@jusbroadcasting.com and penny@jusbroadcasting.com from 2011 through October 22, 2020.  (Ex. 1 to Nov. 16, 2020 Joint Letter, Dkt. 103-1.)

Google produced all available emails from the penny@jusbroadcasting.com account to Defendants.  (*See* Sandhu Decl. ¶ 4.)  Defendants then ran keyword searches of those emails using search terms agreed upon by Plaintiff and produced the non-privileged search results.  (*Id.* ¶¶ 5-9; *see* Declaration of Alan R. Ackerman ("Ackerman Decl.") ¶ 9, Dkt. 153-2.)

With regard to the kashmirgill@jusbroadcasting.com account, Google stated in a declaration dated May 11, 2021 that "the account existed in Google's systems at least as of November 10, 2020," but that "the kashmirgill@jusbroadcasting.com account and the contents of emails stored in that account no longer exist in Google's systems." (Decl. of Molly O'Neil ("O'Neil Decl.") ¶¶ 1, 2, Dkt. 118.)  Although Google did not know when or under what circumstances the account was deleted, it noted that "a Workspace account can only be deleted by an administrator for the applicable domain, which in this case is @jusbroadcasting.com."  (*Id.* ¶ 2.)  Sandhu was the administrator for the @jusbroadcasting domain.  (Sandhu Dep. I Tr. 85:14-19.)

## II.     The Accountant Computer

Beginning in 2013, Defendants hired accountant Niranjan Bapat ("Bapat") to perform general accounting services, including overseeing general ledgers, coordinating payroll services, and filing all necessary tax returns.  (Declaration of Niranjan Bapat ("Bapat Decl.") ¶ 2, Dkt. 158-2.)

According to Bapat, Sandhu maintained Defendants' financial records, such as "bank statements, vendor invoices, [and] other regularly maintained business documents" in a filing cabinet in her office.  (Bapat Decl. ¶ 5.)  Using a computer in her office (the "Sandhu Computer"), Sandhu inputted financial information into the program QuickBooks on a regular basis.  (*Id.* ¶¶ 4, 6, 12.)  There was no remote access to Defendants' QuickBooks program, so Bapat visited Defendants' offices twice

a month to coordinate with payroll and review daily financial transactions.  (*Id.* ¶¶ 2, 3.)  Bapat used one of Defendants' computers located in a separate office (the "Accountant Computer").  (*Id.* ¶ 4.) The Accountant Computer could only access QuickBooks to review and download information.  (*Id.*) At the end of each year, Bapat downloaded the raw data from QuickBooks, any ledgers maintained by Sandhu, and Defendants' bank statements onto a thumb drive in order to prepare Defendants' tax returns.  (*Id.* ¶¶ 7, 12.)  Bapat filed all of Defendants' tax returns from 2011 to 2019.  (*Id.* ¶ 3.)

Sandhu testified that she did not maintain any banking or financial records because she was "never required" to.  (Sandhu Dep. I Tr. 71:20-72:23.)  She did not use QuickBooks and her computer did not contain that program.  (*See id.* 66:3-67:4.)  Rather, Bapat managed Defendants' QuickBooks through the Accountant Computer and inputted daily receipts and expenditures into the program.  (*Id.* 66:8-16, 67:19-25; *see id.* 66:3-67:4.)  The Accountant Computer crashed "[s]ome time in 2022 or 2020" and the data was lost.  (Sandhu Dep. I Tr. 68:7-17.)  There was no backup of the QuickBooks program, and the hard drive was not saved.  (*Id.* 68:1-17, 20-21, 69:6-11.)  The Sandhu Computer also crashed. (*Id.* 76:2-5.)

Sandhu testified that when Bapat stopped working for Defendants, he took Defendants' financial data "without [her] permission."  (Sandhu Dep. I Tr. 70:19-25.)  When she was shown copies of the Corporate Defendants' bank statements, marked with handwritten notes stating "loan," "KGill" or "KG" next to various monetary figures, Sandhu acknowledged that these notations were on the documents but stated that she did not write them.  (*Id.* 102:1-109:1.)

## DISCUSSION

Plaintiff requests sanctions for spoliation of ESI under Federal Rule of Civil Procedure 37(e)(2).  (Mot. at 3.)  Plaintiff asks that this Court

> impose an adverse interest for purposes of the upcoming trial that the Defendants may not object to the authenticity or accuracy of the financial documents produced by the Defendants' former accountant Niranjan B. Bapat as a result of the Defendants' failure to produce any financial documents during discovery, objecting to any evidence

4

> concerning Plaintiff's claims of a Partnership interest in the Defendant entities and the destruction of financial documents formerly in its possession; further to preclude Defendants from producing any evidence contesting any calculation of sums given to any of the Defendants or others on its behalf by Plaintiff, Kashmir Gill, and disputing Plaintiff's claims of a Partnership interest in the Defendant entities.

(Mot. at 1.)  Plaintiff also describes the requested relief as asking the Court to

> impose an adverse inference designation for purposes [of] prohibiting Defendants from disputing the financial evidence and claims of partnership by Plaintiff or entering a default against Defendants, and allowing the Plaintiff to present proof of his losses and present evidence of proof of Partnership in the Defendant entities.  In addition (or in the alternative), Plaintiff requests that the Court preclude Defendants from asserting that the lack of documents on any issue is a basis for concluding that it is not liable to Plaintiff for the damages sustained.

(Plaintiff's Memorandum of Law ("Pl. Mem.") at 4, Dkt. 153-1.)

Plaintiff further states that he is "requesting that the Court grant an adverse interest against any claim by Defendants that the funds advanced by [Plaintiff] to [Defendants] were not converted into an equity interest."  (Gill Decl. ¶ 24.)

## I.     Legal Standard

Rule 37(e) permits the Court to impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e).  The "threshold requirements" of Rule 37(e) are thus that the party in possession of the ESI (1) had a duty to preserve the ESI, (2) failed to take reasonable steps to preserve the ESI, and (3) the ESI cannot be restored or replaced.  *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016).

Rule 37(e) incorporates the "longstanding common law duty" to preserve evidence "when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."  *Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2019 WL 1434051, at *7 (E.D.N.Y. Mar. 30, 2019) (quoting *Rabenstein v. Sealift, Inc.*, 18 F. Supp. 3d 343, 360

(E.D.N.Y. 2014)) (alteration in original); *see also* Fed. R. Civ. Pro 37(e) advisory committee's note to 2015 amendment ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve").

"The 'reasonable step' prong is 'equate[d] to roughly a negligence standard.'" *Hughes v. City of N.Y.*, No. 18-CV-9380 (MKV), 2021 WL 4295209, at *11 (S.D.N.Y. Sept. 21, 2021) (quoting *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017)) (alterations in original).  "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Stanbro v. Westchester Cty. Health Care Corp.*, Nos. 19-CV-10857 (KMK) (JCM), 20-CV-1591 (KMK) (JCM), 2021 WL 3863396, at *13 (S.D.N.Y. Aug. 27, 2021) (cleaned up); *see also Castro v. Smith*, No. 16-CV-8147, 2023 WL 5371311, at *10 (S.D.N.Y. Aug. 22, 2023) ("As DOC failed to suspend their routine document destruction policy, DOC failed to take reasonable steps to preserve relevant ESI").

The movant has the burden to establish that ESI cannot be restored or replaced. *See, e.g., Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2021 WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021).  "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. Rule 37(e) advisory committee's note to 2015 amendment.  "If the lost ESI can be replaced, there is no harm and no sanction may be imposed." *Prelvukaj v. Naselli*, No. 19-CV-5939 (RPK) (PK), 2023 WL 3570659, at *8 (E.D.N.Y. May 18, 2023).

Once these threshold requirements are met, sanctions may be imposed pursuant to two subsections of Rule 37(e).

Under Rule 37(e)(1), if a court finds that the moving party would be prejudiced from the loss of the information, a court may impose sanctions "no greater than necessary to cure the prejudice."

*Mule v. 3-D Building and Construction Mgmt. Corp.*, No. 18-CV-1997 (JS) (AKT), 2021 WL 2788432, at *6 (E.D.N.Y. July 2, 2021) (citations omitted).  This includes imposing sanctions such as "monetary sanctions, forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument."  (*Id.*)

Under Rule 37(e)(2), a court may "(A) presume that the lost information was unfavorable to the [spoliating] party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment," only if the court first finds "that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

## II.   Analysis

### A.   The *Kashmirgill@jusbroadcasting.com* Emails

Plaintiff seeks sanctions based on the deletion of the kashmirgill@jusbroadcasting.com account, resulting in the loss of "emails that prove the partnership discussion."  (Pl. Mem. at 3.)

There is no dispute that Defendants had a duty to preserve relevant evidence, including emails in their possession, custody, or control, at least as of August 30, 2019, when the Preservation Letter was served.  *See, e.g.*, *Bouchard v. United States Tennis Ass'n, Inc.*, No. 15-CV-5920 (AMD) (LB), 2017 WL 10180425, at *4 (E.D.N.Y. Aug. 10, 2017), *report and recommendation adopted*, 2017 WL 3868801 (E.D.N.Y. Sept. 5, 2017) (finding that under amended Rule 37(e), a preservation letter placed defendants on notice of their obligation to preserve relevant evidence).

The record makes clear that the kashmirgill@jusbroadcasting.com account was deleted sometime after November 10, 2020, and that Sandhu, as the administrator for the @jusbroadcasting.com domain, was the person who deleted it.  (O'Neil Decl. ¶ 2; Sandhu Dep. I Tr. 85: 14 – 19.)  Thus, Defendants failed to take reasonable steps to preserve the emails in that account.

*See, e.g.*, *Resnik*, 2019 WL 2256762, at *11 (finding that defendant failed to take reasonable steps to preserve ESI where "the evidence is overwhelming that defendant deliberately destroyed the evidence just as it was about to be discovered").

Despite the deletion of the kashmirgill@jusbroadcasting.com account, some of the lost emails were capable of being restored or replaced. "Ordinarily, if emails were sent to or from other parties, those emails are not permanently lost or unrecoverable because they can be replaced in discovery by obtaining them from those other parties." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2021 WL 4190628 at *11 (S.D.N.Y. Aug. 18, 2021) (citations and internal quotation marks omitted). Google produced the emails in the penny@jusbroadcasting.com account, which included emails to and from kashmirgill@jusbroadcasting.com. Thus, this subset of emails from the deleted account has been replaced through the service provider. *See Greer v. Mehiel*, No. 15-CV-6119 (AJN), 2018 WL 1626345, at *8 (S.D.N.Y. Mar. 29, 2018) (where emails were deleted but produced, finding that those emails could be restored or replaced); *see also Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 (AT) (BCM), 2020 WL 5836438, at *19 (S.D.N.Y. Sept. 30, 2020) (finding that emails "were not permanently lost" where they "were already produced").

As for emails in the kashmirgill@jusbroadcasting.com account that were <u>not</u> sent to or from the penny@jusbroadcasting.com account, Plaintiff fails—despite being the user of the kashmirgill@jusbroadcasting.com account—to identify what relevant emails existed and were lost when his account was deleted. He has also not described what effort he made to replace those lost emails or how he is prejudiced by their loss.

Plaintiff states that he and Sandhu had a meeting at a diner on March 4, 2013, when they discussed Plaintiff becoming "an equal member" of the Defendant entities and Sandhu signed a dollar bill with the words, "Partnership for life 3/4/2013." (Gill Decl. ¶ 8, Ex. A. to Gill Decl. at 2 (ECF pagination), Dkt. 158-1.) They also "prepared pages of notes formalizing [Plaintiff's] equal equity

interest in the Defendant entities." (Gill Decl. ¶ 8.) Thereafter, Plaintiff "continued to request that [Sandhu] forward[] to [him] the partnership agreement which she repeatedly stated was being prepared by her attorneys. [Plaintiff] never received any agreements for [his] review. Ms. Sandhu never produced any emails referencing the partnership notes which [they] prepared at the 2013 meeting, any emails concerning [Plaintiff's] equal equity interest in the Defendant entities, any emails to her attorneys discussing the preparation of the partnership agreement or a denial that [he] did not have a partnership interest in the Defendant entities." (Gill Decl. ¶ 13.)

Because Plaintiff "never received" any partnership agreements for review, there is no reason to believe that such documents ever existed in the kashmirgill@jusbroadcasting.com account; therefore, they could not have been lost when the account was deleted. *See Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, No. 13-CV-5584 (RRM), 2016 WL 11796950, at *4 (E.D.N.Y. Feb. 2, 2016), *report and recommendation adopted* 2016 WL 11796983 (E.D.N.Y. Sept. 28, 2016) ("The Court cannot even conclude, as a threshold matter, that the Foreign Defendants destroyed or failed to preserve these materials at all – simply put, there is a strong likelihood that the materials never existed"). The other documents that Plaintiff states were "never produced" to him consist of various emails that would have been sent by Sandhu and—if they existed—would have been part of the production from the penny@jusbroadcasting.com account.[1]

Even if relevant emails existed in the kashmirgill@jusbroadcasting.com account which were not to or from penny@jusbroadcasting.com, Plaintiff does not describe any efforts to replace those emails, such as by subpoenaing the third parties who sent or received the correspondence. *See Karsch*

---

[1] To the extent that Plaintiff now challenges the completeness of Defendants' production of these emails—claiming that because the emails were "vetted" by Defendants before their production to Plaintiff, he has "no way of knowing if [Defendants] did not produce emails discussing [his] request for an equity interest in the Defendant entities and the necessary partnership agreements" (Gill Decl. ¶ 3)— Plaintiff has not moved to change the agreed-upon terms of the production of emails in the penny@jusbroadcasting.com account. Any such request should have been brought as a motion to compel pursuant to Rule 37(a)(2)(B), not as a motion for sanctions under Rule 37(e).

*v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *17 n.21 (S.D.N.Y. June 20, 2019) ("emails sent to or from any of the non-destroyed, non-corrupted accounts maintained by [plaintiff] and his affiliates are, at least in theory, recoverable from those accounts"). A party need not "pursue every possible avenue for replacing or restoring the ESI, but it must show that it made some good-faith attempt to explore its alternatives before pursuing spoliation sanctions." *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 109 (E.D. Va. 2018).

Accordingly, Plaintiff's request for spoliation sanctions due to Defendants' deletion of the kashmirgill@jusbroadcasting.com account is denied.

### B. The Accountant Computer

Plaintiff seeks sanctions for the loss of electronically stored information on the Accountant Computer. After that computer crashed, Sandhu admits that the data was lost, there was no backup, and the hard drive was not saved. (Sandhu Dep. I Tr. 68:7-69:11.)

Defendants had an obligation to preserve the data on the Accountant Computer, and by not saving the hard drive after the computer crashed, Defendants failed to take reasonable steps to preserve electronically stored information from the Accountant Computer. *See Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 429 (W.D.N.Y. 2017) ("defendants acted unreasonably in destroying or recycling [the] crashed laptop" of an employee of one of the defendants).

Nevertheless, Plaintiff again fails to establish that the requested spoliation sanctions should be imposed.

Plaintiff received Defendants' financial records through Bapat, who obtained them from the Accountant Computer. Plaintiff does not contend that these records are inaccurate. Plaintiff asserts, instead, that Defendants will argue that the records produced by Bapat have been altered. According to Plaintiff, Sandhu claimed during her deposition that Bapat "altered the financial records of the Defendants' QuickBooks files and bank statements." (Ackerman Decl. ¶ 13.) Plaintiff also contends

that Sandhu "disputed the accountant's notes described the monies given to Defendants by [Plaintiff] as 'loans,'" "denied that the monies given by [Plaintiff] and marked as 'loans' by Mr. Bapat were accurate," and "claimed that the tax returns which [Sandhu] signed and which set forth loans from [Plaintiff] were also inaccurate…." (Ackerman Decl. ¶ 13.) Plaintiff contends that "all electronically stored business records were lost when the computer crashed" and argues that without access to "the underlying data from the Defendants' spoliated records," *i.e.*, the Accountant Computer, "Defendant can continue to attack the accuracy of [Plaintiff's accounting expert's] report and the reliability of the evidence upon which Plaintiff now must rely," which is limited to the financial records provided by Bapat. (Pl. Mem. at 2, 4.)

Plaintiff does not point to any specific portion of Sandhu's deposition transcript where she claims that Bapat altered Defendants' QuickBooks files and bank statements. She testified that financial information could be inputted into QuickBooks from the Accountant Computer (Sandhu Dep. I Tr. 66:8-16, 67:19-25), thus contradicting Bapat's contention that the Accountant Computer could access QuickBooks only to review and download information. (Bapat Decl. ¶ 4.) However, Sandhu did not claim that the information on the Accountant Computer was different from the financial information Bapat provided to Plaintiff. To the contrary, Sandhu complained that Bapat took Defendants' financial data without her permission, further supporting that the financial information which Bapat produced to Plaintiff is the same as the information on the Accountant Computer. Moreover, even though Sandhu testified that notations on Defendants' bank statements identifying certain payments as a "loan" or using Plaintiff's name or initials were not written in her handwriting (Sandhu Dep. I Tr. 102:1-109:1), this is not inconsistent with Plaintiff's own descriptions of these writings as "accountant's notes" and being "marked as 'loans' by Mr. Bapat…." (Ackerman Decl. ¶ 13.)

11

Because there is no contention that the Accountant Computer contains information that is different from what Bapat has provided to Plaintiff, the Court finds that the electronically stored information that was lost when the hard drive was discarded has been adequately replaced by the information which Bapat downloaded in the course of performing his duties as Defendants' accountant.

Accordingly, Plaintiff's request for sanctions due to spoliation of the Accountant Computer hard drive is denied.

## **CONCLUSION**

For the reasons stated above, the Motion is denied.[2]

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         November 9, 2023

---

[2] The Court's decision does not affect the jury's ability to hear evidence regarding the loss of information, nor does it foreclose any motions in limine to prevent Defendants from arguing about the contents of the lost information.

12