UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
KASHMIR GILL,

                              Plaintiff,

          v.

JUS BROADCASTING CORP.,
JUS PUNJABI, LLC, JUS ONE CORP.,
JUS BROADCASTING CORP PVT
LTD, and PENNY SANDHU,

                              Defendants.
-------------------------------------------------------x

Civil Action No.: 1:19-cv-04216
(DLI) (PK)

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO DISQUALIFY PLAINTIFF'S PROPOSED EXPERT AND EXPERT REPORTS

      Defendants JUS Broadcasting Corp., JUS Punjabi, LLC, JUS One Corp., and JUS Broadcasting Corp PVT Ltd. (collectively, the "JUS Entities"), and Penny K. Sandhu, the President, Chief Executive Officer and owner of the JUS Entities, respectfully submit this legal memorandum in support of their motion *in limine* to disqualify Mark A. Santangelo, CPA, as an expert with respect to any aspect or phase of this litigation, including the trial, and to preclude the use as expert material written statements dated June 12, 2023, prepared by Mr. Santangelo.

### Introduction and Preliminary Statement

      At the most fundamental level, the Court (Hon. Dora L. Irizarry, *U.S.D.J.*), as the sole trier of fact in this non-jury case, under no circumstances will require or benefit from the assistance of Mr. Santangelo as an "expert" to reach the fact determinations that will dispose of any of the issues presented by this litigation.

## **Factual Background**

Candidly described, this is not a complex, technical or sophisticated litigation. Since the touchstone of whether "expert" testimony is required to assist the trier of fact depends entirely on the issues framed by the complaint, it is essential at this stage to identify the factual and legal issues contained in the Amended Complaint filed on January 9, 2020 (the "Amended Complaint") (*see* Doc. 56).[1]

    *(i)*    *The Amended Complaint's Summary of Its Own Contents*

On its very first page, the Amended Complaint provides a summary of its mélange of alleged claims against the JUS Entities and Ms. Sandhu. The Amended Complaint's summary (*see* Batista Decl., Exhibit A, at 1) states that the action seeks "damages, attorney's fees, litigation expenses and costs occasioned by Defendants' Fraud in the Inducement, Breach Of Fiduciary Duty, Fraud, And Accounting Of All Monies Received From Plaintiff, Breach Of Contract, Promissory Estoppel, Conversion, Deceit, Dissolution Of Defendant Entities, Statutory Dissolution Of Defendant Entities Pursuant To N.Y. BUS. CORP. LAW §1104-A, Unjust Enrichment and Piercing the Corporate Veil." *See* Exhibit A to Batista Decl., Amended Complaint at p. 1 (all capitalizations in original).

---

[1] A copy of the Amended Complaint filed January 9, 2020 is annexed as Exhibit A to the accompanying declaration of Paul Batista dated January 11, 2024 ("Batista Decl."). Despite the many deficiencies of the Amended Complaint – including substantive failings and numerous grammatical errors – plaintiff Kashmir Gill ("Gill") and his attorney, Alan R. Ackerman ("Ackerman"), have never sought to amend or clarify the Amended Complaint in the four years they have had the opportunity to attempt to do so.

Moreover, it is important at the outset to emphasize that this litigation began, in an earlier incarnation, on February 25, 2019 as a putative action against defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961-1968, filed in the United States District Court for the District of New Jersey (Case No. 3:19-cv-06742 (FLW) (TJB) (the "New Jersey Action")). By order entered on July 19, 2019 in the New Jersey Action (*see* Doc. No. 22), Judge Wolfson transferred this litigation to this Court. When Gill through his attorney filed the Amended Complaint, that document, at the insistence of defense counsel, deleted all allegations under RICO. Had Gill and his attorney not voluntarily eliminated the RICO allegations, defendants would have moved for sanctions under Fed. R. Civ. P. 11. (Regrettably, any Google search of defendants reveals that they once faced frivolous – although dismissed – allegations under RICO, a business and reputational harm for which there is unfortunately no remedy.)

       *(ii)*    *The Alleged "Common" Facts*

In the ensuing 38 pages, the Amended Complaint contains a highly prolix and confusing narrative alleging that Ms. Sandhu "and the Defendant Corporations [*i.e.*, the JUS Entities] have unlawfully schemed to harm [Gill] by gaining his confidence in the obtaining [of] monies which Defendants called at various times an investment into each Defendant Corporations [*sic*], and that other times called loans." (*See* Amended Complaint ¶7.)[2]

The so-called "common facts" also allege that, "[t]o carry out its [*sic*] unlawful schemes, Sandhu has knowingly and intentionally…maintain[ed] and pursu[ed] a fraudulent scheme to deprive Plaintiff of his monies…by borrow[ing] monies with false pretenses of an interest in the Defendant Corporations and thereby duping Plaintiff of his hard-earned monies." (*Id.* ¶8.)

---

[2] At the outset, it is crucial to underscore that, after more than four years of fact and "expert" discovery, not a single document was ever located – because none ever existed – in which (i) Gill was a party to a partnership agreement, (ii) Gill was ever a lender to, or had a loan agreement with, the JUS Entities or Ms. Sandhu, (iii) Gill ever received a shareholder or stock certificate in any of the JUS Entities which were corporations, (iv) Gill ever received a membership certificate in any of the JUS Entities which were limited liability companies, (v) Gill was ever granted a Uniform Commercial Code or other security filing, or (vi) Gill was ever a party to a management or any other type of agreement with any of the defendants.

In addition, all "fact" discovery in this action ended on July 7, 2023, and September 26, 2023. Likewise, this Court on December 12, 2023 "denied" Gill's attempt after the conclusion of the Santangelo deposition on October 20, 2023, to "reopen fact discovery." Significantly, in its December 12, 2023, text order categorically denying Gill's effort to "reopen fact discovery," this Court ruled as follows: "Plaintiff [Gill] states that he is seeking Defendants' 'financial records including tax returns, ledgers and accountant's notes for 2020-2022 because they are [allegedly] an integral part of Defendants' scheme of funneling [Gill's] funds and other funds from Defendants' entities in the United States to entities in India and [the] United Kingdom, or elsewhere.' (Mot. to Reopen Fact Discovery at 2-3, Dkt. 162.) *However, [Gill] fails to explain how these documents are relevant to any of his claims. Plaintiff [Gill] contends that his 'claim that [he] is a partner is adversely affected if the trail of funds cannot be traced.' (Mot. to Reopen Fact Discovery at 3.) But [Gill] provides no basis for how these financial documents from 2020 to 2022 will prove that he entered into a partnership with Defendant Sandhu in 2013 or 2014, or why Defendants' financial documents from 2013 to 2019, that he already possesses, are insufficient.*" (*See* text order dated December 12, 2023 (emphasis supplied).)

### (iii) Initial Contacts

In an effort to appear to substantiate these conclusory assertions, the Amended Complaint then launches into a history of Gill's first meeting with Ms. Sandhu at an event in *2010* – fourteen (14) years ago – "when a promoter of Gurdas Maan, a very popular Indian folk singer – requested [Gill] to take Gurdas Maan to the JUS studio for an interview. Shortly thereafter, another Indian politician, Sikhander Singh Maluka, was taken to the JUS Studio for a live show. During [Gill's] second visit, Sandhu invited him to her office in the Studio to talk." (*See* Amended Complaint ¶11.)

### (iv) Gill's Explicit Rejection of Any "Investment"

The Amended Complaint in addition asserts that in "November 2011, Sandhu came to meet with Gill and his business partner, Bikram Gill [and] asked them to invest $1.5 million for [a] 15% stake in her business.…[W]hen asked about the dividends or profits from [the] business, Sandhu stated [that] they would not get more than a 5% return on their investment.…Gill advised Sandhu that [he was] not impressed with the return on investment suggested, as [Gill] and Bikram Gill get a much better return in their fuel business." (*Id.* ¶14.)

As the Amended Complaint explicitly concedes, Gill "decided not to invest in to [*sic*] Sandhu's company." (*Id.* ¶15.)

### (v) Gill's Alleged Connections with Defendants

In the balance of the Amended Complaint, Gill asserts what can only be described as a bizarre series of events. Among other things, Gill alleges that:

    A.    In 2010, 2011 and 2012, Gill somehow assisted Ms. Sandhu in resolving disputes in which defendants were allegedly involved with people named Karl Khandalavala, Harvinder Riar, and Umesh and Sooraj Adjani (*see* Amended Complaint ¶¶18, 19, 20 and 22).

B.     On March 4, 2013, Ms. Sandhu, who was not married, and Gill, who was married, signed an ordinary United States dollar bill on which was written only the words "Partnership for life 03/04/2013." (*Id.* ¶25.)

C.     In an extraordinary assertion, the Amended Complaint then alleges in italics that *"This is a traditional way in India to make a 'business agreement' legal."* (*Id.* (emphasis supplied.))

D.     According to the Amended Complaint, Ms. Sandhu refused to enter any type of agreement on any issue with Gill because in "the spring of 2013, Sandhu stated that her astrologer…cautioned against entering into [any] agreement for a period of 5 years. [Gill], who was aware that Sandhu was a devotee of astrology, agreed not to pressure her for the formal agreement." (*Id.* ¶28.)

E.     "In November 13th, 2014, Sandhu visited Gill in his office and told him that it 'seems like [a] partnership may not work,' as both Gill [and] Sandhu are strong minded." (*Id.* ¶41.)

F.     "[Gill] felt that that [*sic*] all these talks with her, signing off on the dollar bill, introducing him as a partner [*sic*], email creation was a systematic setup to exploit him and obtain monies under the false pretense." (*Id.* ¶42.)

G.     Gill alleges that at some point in 2014, he "started promoting a dance competition called 'JUS Bhangra.' [Gill] provided…funds for this competition. *After the competition finished, Sandhu stopped sharing any business information with Gill. Gill pleaded with her to sign a shareholder agreement, but she continued to delay.*" (*Id.* ¶44 (emphasis supplied).)

H.     Gill "felt betrayed and stopped going to the studio. [Gill] realized that he had been used and Sandhu never had any intention of signing the partnership agreement." (*Id.* ¶45.)

I.     "In November of 2015, Sandhu requested Gill to help Sandhu to set up a studio in…India. Gill refused to invest

any…money into JUS Broadcasting, and demanded a shareholder agreement.…" (*Id.* ¶49.)[3]

    *(vi)*    *Gill's Causes of Action in the Amended Complaint*

**1.**    **The First Cause of Action:** As its "First Cause of Action," the Amended Complaint asserts that the "predicate acts of fraudulent activity were designed for the purpose of (1) concealing real facts or misleading [Gill] into parting with his monies, through emails, phone calls and texting, (2) setting up a façade of a partnership to continue to mislead Plaintiff, thereby depriving [Gill] time value of his money, and (3) after the scheme was discovered, forestalling litigation by Plaintiff by means of Sandhu's duplicitous interactions and fraudulent projections, emailing, texting falsities." (*Id.* ¶66.)[4]

Denominated "Fraud in the Inducement" (*see* Amended Complaint at p. 22), the "First Cause of Action" – which consists of four paragraphs (*see* Amended Complaint at pp. 22-23) – also contends that these "acts, and others to be identified after further investigation and discovery herein, shared a common or related purpose and goal. Through these fraudulent acts, [Gill] advanced funds on the…promise that these funds would be treated as an investment for the purchase of 50% of Sandhu's 100% stockholder interest in the Defendant Entities." (*Id.* ¶65.)

Significantly, the "First Cause of Action" states the obvious: the "transfer of 50%…of Sandhu's ownership interest in the Defendant Corporations did not occur." (*Id.* ¶67.)

**2.**    **The Second Cause of Action:** Subtitled "Breach of Fiduciary Duty" (*see* Amended Complaint at p. 23), the "Second Cause of Action" asserts conclusorily that "Sandhu

---

[3] As previously noted (*see* note 2, *supra*), Gill concededly never received a "shareholder" or any other type of agreement.

[4] It bears emphasis, among other things, that nothing in the Amended Complaint identifies "predicate acts," a term commonly associated with actions under RICO, a claim abandoned by the Amended Complaint, as previously indicated.

owed fiduciary duties to [Gill] including a duty of loyalty" and had "a fiduciary relationship to the shareholder [*sic*] Gill." (*See* Amended Complaint ¶¶69 and 70.)

The "Second Cause of Action," which consists of three (3) paragraphs, contends that Ms. Sandhu's "relationship is bound by conscientious fairness, morality and honesty in purpose, which the law imposes as the guides for those who are under the fiduciary obligations as responsibilities. They are held…to the extreme measure of candor, unselfishness and good faith. Sandhu breached these principles with impunity. These principles are rigid, essential and salutary." (*See* Amended Complaint ¶¶69-70.)

The "Second Cause of Action" concludes with the assertions that Ms. Sandhu's "disloyal conduct" allegedly damaged Gill in an amount of "no…less than $10 million." (*See* Amended Complaint ¶70.) In addition, Gill contends that he is "entitled to full disgorgement of all profits that Sandhu earned through her disloyal conduct.…" (*Id.* ¶71.)

       3.     **The Third Cause of Action:** Entitled "Fraud," the "Third Cause of Action" contends (with, needless to stress, no factual support whatsoever) that:

> As a shareholder, Sandhu owed fiduciary duties to [Gill], including a duty of loyalty. This fiduciary duty required Sandhu to disclose to [Gill] facts that were material to their shared [*sic*] business. Yet, Sandhu failed to disclose the revenues that she has collected over a period of time, claiming that the Defendants have never been profitable. Defendants failed to disclose these facts deliberately, with the intent of preventing [Gill] from discovering Sandhu's improper transfer to herself of contractual rights that the two of them owned jointly to share the profits. (*See* Amended Complaint ¶73.)

       4.     **The Fourth Cause of Action:** Subtitled "Accounting," the "Fourth Cause of Action" refers to "Business Corporation Law Section 720 [as authorizing] a director or officer to bring an action to compel another director or officer to account for his 'official conduct' in cases

of…loss or waste of corporate assets or to set aside an unlawful conveyance of corporate assets." (*Id.* ¶75.) Gill, of course, was never an officer or director of any of the JUS Entities.

      5.      **The Fifth Cause of Action:** Denominated "Breach of Contract," the "Fifth Cause of Action" consists of three paragraphs which contend that "Sandhu and [Gill] entered into a binding, valid, and enforceable contract pursuant to which [Gill] has more than performed and complied with his obligations under the contract by contributing substantial capital, time, effort and using his skill as a negotiator.…" (*See* Amended Complaint ¶80.)

      6.      **The Sixth Cause of Action:** Labelled "Promissory Estoppel," the "Sixth Cause of Action" asserts that, "[i]n reliance on the Defendants' [*sic*] promise that Plaintiff was a partner, [Gill] refrained from commencing litigation against Sandhu and the other Defendants herein seeking repayment of the loan [*sic*]." (*See* Amended Complaint ¶84.)

And, in an extraordinary pleading gambit, the "Sixth Cause of Action" contends that Gill relied on the "signed…dollar bill" (*id.* ¶85) and that because of the "signed…dollar bill" the JUS Entities and Ms. Sandhu allegedly "breached their promise by failing [to] prepare and execute any shareholder agreement.…" (*Id.* ¶66.)

      7.      **The Seventh Cause of Action:** The six paragraphs that comprise the "Seventh Cause of Action" – which bears the title "Conversion" (*see* Amended Complaint ¶¶90-95) – repeat yet again the allegation that "Sandhu used false pretenses to obtain funds from [Gill] promising him an equal ownership interest in the Defendant entities." (*See* Amended Complaint ¶90.) Moreover, the "Seventh Cause of Action" redundantly claims that the "partnership offer by Sandhu was a ploy to extract funds and use them for her own needs and depriving [Gill] of his hard money…and converted funds to her own use, though [Gill] was a partner [*sic*] in the Defendant companies and had a superior right of possession." (*See* Amended Complaint ¶¶92-93.)

8. **The Eighth Cause of Action:** Denominated "Deceit," the "Eighth Cause of Action" repetitively alleges that "Sandhu promised, assured and projected [*sic*] Plaintiff was a partner in the Defendant entities" (*id.* ¶97) and that Ms. Sandhu "made the partnership offer with the scienter and the intent to defraud Plaintiff" (*id.* ¶99).

9. **The Ninth Cause of Action:** In still another extraordinary claim, the "Ninth Cause of Action" (*see* Amended Complaint ¶¶103-126) demands the "Dissolution of Defendant Entities." According to the "Ninth Cause of Action," the "Defendant Corporations should be dissolved, or the Defendants, majority shareholders, and/or those in control of the Defendant Corporations should be ordered to take proceedings to dissolve the Defendant Corporations...." (*See* Amended Complaint ¶104.)

10. **The Tenth Cause of Action:** The "Tenth Cause of Action," entitled "Dissolution of Defendant Entities Pursuant to N.Y. Bus. Corp. Law §1104-A" (*see* Amended Complaint ¶¶127-142), continues the fantasy assertion that the defendant entities – which Ms. Sandhu founded in 2006 – should be dissolved because the "Director, Defendant Sandhu[,] is the person in control of Defendant Corporations and is guilty of gross continuing oppressive action towards [Gill]." (*Id.* ¶132.)

11. **The Eleventh and Twelfth Causes of Action:** Not content with ten implausible causes of action, the Amended Complaint tosses in two additional – and indeed frivolously irrational – causes of action for "Unjust Enrichment" as the "Eleventh Count" (*id.* ¶¶144-149), and "Piercing the Corporate Veil" as the "Twelfth Count" (*id.* ¶¶151-154).

**Argument**

## MR. SANTANGELO LACKS THE QUALIFICATIONS TO PROVIDE EXPERT TESTIMONY OR REPORTS IN THIS ACTION

As described in greater detail in the balance of this memorandum, there is no basis on which Santangelo or his putative "expert" reports (*see* Batista Decl., Exhibit C) can qualify for expert status under the relevant provisions of the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the United States Supreme Court's decision in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny.

The basic principle of *Daubert* and the decisions over the years since 1993 which apply *Daubert* rests on the fundamental requirement that "expert" opinion "requires that the evidence or testimony assist the trier of tact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (*quoting* 3 Weinstein & Berger ¶702 [O2] p. 702-18). *Daubert* also, of course, not only emphasized the requirement that "expert" opinion assist the trier of fact to understand complex issues but that those issues traditionally are "scientific and technical." 509 U.S. at 586.

Crucially, this action will be tried not in front of a jury but before a highly experienced United States District Judge as the trier of fact. Given the nature of the contentions of Gill's Amended Complaint, there is absolutely no reason to believe that the able District Judge will need or benefit from any views or opinions Santangelo or his reports may offer.

Indeed, the very first page of Santangelo's "report" (*see* Batista Decl., Exhibit C) lays bare the report's insufficiency. Under the title "Independent Accountant's Report on Applying Agreed Upon Procedures,"[5] Santangelo writes:

> We have performed the procedures enumerated below, which were agreed to by you [*i.e.*, Gill and Ackerman] solely to assist you in evaluating JUS Punjabi, LLLC and JUS Broadcasting Corp. for the purpose of determining its [*sic*] fair market value in connection with *Kashmir Gill* v. *JUS Broadcasting Corp., JUS Punjabi, LLC, JUS One Corp., JUS Broadcasting Corp PVT LTD, and Penny Sandhu*, Case No. 1:19-cv-4216 (ILG) (PK)…[6]
>
> *Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which the report has been requested or for any other purpose.* [*See* Batista Decl., Report at p. 1 (emphasis supplied).]

Other portions of the Santangelo report are replete with statements that are in no conceivable fashion "expert" views. The report states – accurately enough but by no means an "expert" opinion – that Gill "has never been listed as a member of [JUS Punjabi LLC] nor has he ever received a K-1 from the Company." [*See* Santangelo statement at p. 8.]

In an incredible comment, the Santangelo statement, referring to the United States dollar bill on which words are written, emphasizes that "the only documentation presented was the signed dollar bill stating 'partners for life' and signed by both parties on March 4, 2013. Per Mr. Gill, this is well accepted custom in the Indian culture." [*Id.* at p. 9.] On what conceivable basis can Santangelo advance this bizarre assertion as an "expert" opinion?

In a highly revealing concluding paragraph, Santangelo writes: "This report [dated June 12, 2023] is intended solely for the use of the above-mentioned parties [*i.e.*, Gill and

---

[5] To preclude any ambiguity, neither defendants nor their attorney "agreed upon any procedures." The Santangelo report is addressed to Gill and Ackerman.

[6] Indicative of the poor quality of the report is that, contrary to Santangelo's introductory comments, there was never an entity known as "JUS Punjabi, LLLC."

Ackerman] and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes." [*Id.* at p. 11.]

As if the deficiencies of Santangelo's putative "expert" reports were not obvious on their face, crucial aspects of his deposition testimony on October 20, 2023 underscore his unsuitability as an "expert" in this action. Among other things:

- For from being "independent," Santangelo conceded that he has been a client of Ackerman and performed services for Ackerman for "25, 30 years. [Ackerman] would refer a client to me that may have had a tax issue….[Santangelo] would refer a real estate client to [Ackerman] or maybe an estate, will and trust issue to [Ackerman]. So there were definitely referrals back and forth over the years and we've had common clients…." [*See* Batista Decl., Exhibit D, Santangelo Tr. at 11].

- Santangelo has never published any articles or books. [*Id.*]

- Santangelo never spoke with, or even saw, Gill until they met on the day of the October 20, 2023 deposition. [*Id.* 14.]

- Santangelo did not provide defendants with a copy of his resume until the day of the October 20, 2023 deposition. [*Id.* 16-17.]

- Santangelo refused, at the direction of Ackerman, to provide drafts of his "expert" reports. [*Id.* 19.]

- Santangelo, again at the direction of Ackerman, refused to disclose the fees Santangelo had been paid or arrangements for future fee payments. [*Id.* 21-22.]

- Santangelo never spoke with the long-term accountant for defendants. [*Id.* 25.]

- Santangelo never spoke with, nor attempted to speak with, Ms. Sandhu, the Chief Executive Officer of the JUS Entities or with any management or other personnel of the JUS Entities. [*Id.* 27.]

- Santangelo knew that Gill was never "a member of any of the [JUS] LLCs…." [*Id.* 30-31.]

- Santangelo "never saw certificates of ownership [for Gill] and there were none disclosed on the tax return[s]. Everything indicated Ms. Sandhu was the owner." [*Id.* 31.]

- Santangelo asked for partnership agreements and "there were no partnership agreements, that there were no certificates." [*Id.* 31.]

- Santangelo "[n]ever saw a membership-operating agreement or any certificate issued…that's absolutely correct." [*Id.* 33.]

- Santangelo "valued" JUS Punjabi, LLC at "around $60,000." [*Id.* 52.]

- Santangelo "valued" JUS Broadcating Corp. at "325 [*i.e.*, $325,000]…based on 2019 information." [*Id.* 52.]

- Santangelo based his report and views on "assumptions" [*Id.* 55.]

- Santangelo knew nothing about Gill's "financial position or [Gill's] income tax returns." [*Id.* 61.]

- Santangelo testified that he could not arrive at an opinion that Gill "had [an] equity interest in all the JUS entities as a group." [*Id.* 70.]

- Santangelo has never "performed an expert evaluation of any media company." [*Id.* 74.]

Consistent with *Daubert*, Fed. R. Evid. 702 is directly relevant and provides in full:

> A witness who is qualified as an expert by knowledge, skill, expertise, training or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Also relevant, of course, to demonstrating the lack of any basis for Santangelo's role as an "expert" for any purpose or for his purported "expert" statements are the provisions of Fed. R. Civ. P. 26(a)(2). In relevant part, that rule, entitled "Disclosure of Expert Testimony," states:

13

> (A) *In General.* In addition, to [other disclosures], a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the Court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case.…The report must contain:
>
>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>>
>> (ii) the facts or data considered by the witness in forming them;
>>
>> (iii) any exhibits that will be used to summarize or support them;
>>
>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>>
>> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>>
>> (vi) a statement of the compensation to be paid for the study and testimony in the case.

These mandated rules – as well as the evolution of the *Daubert* principles – make it plain that Santangelo cannot be qualified as an "expert" in this action and that his putative "expert" statements do not remotely qualify for expert status.

Among other things, Santangelo did not provide, and could not provide, "a list of all publications authored in the previous 10 years" as required by Fed. R. Civ. P. 26 (a)(2). Nor did Santangelo provide, as is required by the rule, "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition."

Moreover, Santangelo refused, at the direction of his friend and colleague Ackerman, to provide the requisite "statement of the compensation to be paid for the study and testimony in the case," as Rule 26 also mandates.

## Conclusion

For all the foregoing reasons, this Court should grant defendants' motion *in limine* to preclude any "expert" role for Santangelo and his written statements.

Dated: New York, New York
      January 11, 2024

                                            PAUL BATISTA, P.C.

                                By: _____
                                            Paul Batista
                                        Attorney for Defendants
                                            JUS Broadcasting Corp.,
                                            JUS Punjabi, LLC, JUS One Corp.,
                                            JUS Broadcasting Corp PVT Ltd.
                                            and Penny K. Sandhu
                                        26 Broadway, Suite 1901
                                        New York, New York 10004
                                        (631) 377-0111 (T)
                                        Batista007@aol.com