UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
KASHMIR GILL,                                        :
                                                     :
                          Plaintiff,                 :
                                                     :
              -against-                              :
                                                     :          **MEMORANDUM & ORDER**
JUS BROADCASTING CORP., *et al.*,                    :          **19-cv-4216 (DLI)(PK)**
                                                     :
                          Defendants,                :
----------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

Defendants JUS Broadcasting Corp., JUS Punjabi LLC, JUS One, Corp., JUS Broadcasting Corp. PVT Ltd. (collectively, the "Corporate Defendants") and Penny Sandhu ("Sandhu") (together with the Corporate Defendants, "Defendants") filed a motion *in limine* to preclude the testimony and reports of Plaintiff Kashmir Gill's ("Plaintiff") expert, Mark Santangelo ("Santangelo"). Defs.' Mot. *in Limine* ("Defs.' Mot."), Dkt. Entry No. 167; Expert Reports of Mark Santangelo ("Expert Reports"), Dkt. Entry No. 172-2 at 1–76. Plaintiff opposed the motion. Pl. Opp'n ("Opp'n"), Dkt. Entry No. 172. Defendants did not reply. *See*, Dkt. Entry No. 173. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.      Background**

Between 2010 and 2013, Plaintiff made multiple payments to the Corporate Defendants and Sandhu totaling over $2 million. Amended Complaint ("Am. Compl.") ¶ 9, Dkt. Entry No. 56; Opp'n at 3. Sandhu is the founder, President, CEO, and owner of the Corporate Defendants. Am. Compl. ¶ 111. Plaintiff alleges that these payments were consideration in exchange for a 50% partnership or stockholder interest in the Corporate Defendants, which Defendants never provided. Am. Compl. ¶ 65; Opp'n at 3. Specifically, Plaintiff alleges that he and Sandhu memorialized their agreement in 2013 by signing a dollar bill that said, "Partnership for life 03/04/2013," which

Plaintiff claims is a "traditional way in India to make a 'business agreement' legal." Am. Compl. ¶ 25.  Defendants argue that they did not agree to make Plaintiff a partner or stockholder.  Opp'n at 3.  The parties seek a bench trial in this case.  Defs.' Mot. at 1; Civil Cover Sheet at 1, Dkt. Entry No. 1-1.  The Expert Reports at issue valued two of the Corporate Defendants, JUS Broadcasting Corp. and JUS Punjabi LLC, using financial data from 2011 through 2019 and opined that Plaintiff's payments were made in exchange for equity rather than a debt.  *Id.*

## II.    The Motion

Defendant claims that:

1. Expert testimony is not necessary because this case will be tried by the Court, not a jury.  Defs.' Mot. at 10.
2. Santangelo is not qualified because he has never valued a media company or published his work.  *Id.* at 13.
3. Santangelo is biased due to a preexisting business relationship with Plaintiff's counsel in which they referred business to and performed services for each other.  *Id.* at 12.
4. Santangelo's opinions are unreliable because: (1) the Expert Reports include a disclaimer that they "make no representation regarding the sufficiency of the procedures" used; (2) Santangelo did not speak to Defendants' CEO, Sandhu, or their accountant, Niranjan Bapat; and (3) the Expert Reports are based on impermissible assumptions and lack a sufficient factual basis.  *Id.* at 11–13.
5. Plaintiff failed to make certain disclosures required by FRCP 26(a), such as Santangelo's fees, prior publications, and resume.  *Id.* at 11–13.

Plaintiff opposes, contending that:

1. The Expert Reports are relevant because they "document[] the investment by Plaintiff into the Defendant entities, trace the movement of funds into each entity, highlight how the Defendant's [sic] financial records were improperly maintained, present the legal theory of 'debt v. equity' . . . [and] document[] . . . the transfer of funds to foreign entities."  Opp'n at 4–5.

2. The Expert Reports use accepted accounting principles and are based on sufficient facts and data. *Id.* at 5.

3. Santangelo is a qualified accountant who has prepared numerous valuation reports as an expert. *Id.* at 6.

4. Santangelo's "professional ongoing relationship" with Plaintiff's counsel is not disqualifying. *Id.* at 5.

5. Defendants' Rule 26(a) objections lack merit because they are factually inaccurate. *Id.* at 6.

For the reasons set forth below, Defendants' motion *in limine* is granted in part and denied in part. The Court finds that Santangelo's valuations of JUS Broadcasting Corp. and JUS Punjabi LLC are admissible. However, Santangelo may not opine on whether and to what extent Plaintiff's payments created a stockholder or partnership interest in the Defendants, which is an ultimate conclusion in this case to be determined by the trier of fact. Accordingly, the following portions of the Expert Reports are excluded:

1. Expert Reports at 4, Item 6 (from "[r]eview the issue . . ." to ". . . JUS Punjabi, LLC");

2. Expert Reports at 6, Item 5 ("See our separate discussion on debt versus equity.");

3. Expert Reports at 10–12 (entire "Debt vs. Equity" analysis is excluded);

4. Expert Reports at 51 (from "[t]he advances made by Mr. Gill . . ." to ". . .December 31, 2019");

5. Expert Reports at 52 (from "[g]iven the decline . . ." to ". . . Penny Sandhu").

## III.   *Daubert* Standard for Bench Trials

Federal Rule of Evidence 104(a) provides that the admissibility of expert testimony is a preliminary question of law for the court to determine. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). The proponent of the testimony bears the burden of demonstrating its admissibility by a preponderance of the evidence. *See*, *Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp.2d 334, 349 (S.D.N.Y. Aug. 11, 2005) (citations omitted).

3

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. *See*, *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). Rule 702 sets forth a three-step inquiry to determine whether the testimony of a party's proffered expert should be deemed admissible. First, the court must review the relevance of the proposed expert's testimony to determine whether the conclusions it draws will aid the factfinder in answering the questions at issue in the case. *Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp.2d 334, 350 (S.D.N.Y. Aug. 11, 2005). Second, the court must investigate the expert's compliance with the provision of Fed. R. Evid. 702 that requires an expert to be "qualified as an expert by knowledge, skill, experience, training, or education." *Nimely*, 414 F.3d at 395 n. 11. Finally, the court must consider whether the testimony is reliable. To be reliable, expert testimony must be based on sufficient facts or data, and it must be the product of reliable, properly applied principles or methodology.

Defendants claim that expert testimony is unnecessary because this case will be tried by the Court, not a jury. Defs.' Mot. at 10. Defendants cite no authority for this meritless proposition. Courts are "especially reluctant to *exclude* expert testimony in a bench trial." *Salahuddin v. United States*, 564 F. Supp.3d 75, 84–85 (E.D.N.Y. 2021) (emphasis added). When the parties present evidence to a judge instead of a jury, "there is no possibility of prejudice, and no need to protect the factfinder from being overawed by 'expert' analysis." *Id.* (citing *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp.2d 475, 502 (S.D.N.Y. 2013)). "Particularly in a bench trial, '[v]igorous cross-examination, presentation of contrary evidence, and careful . . . [attention to] the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Adams v. Liberty Mar. Corp.*, 407 F. Supp.3d 196, 203 (E.D.N.Y. 2019) (citing *Daubert*, 509 U.S. at 596). Accordingly, courts may "take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology" at trial, when the

4

testimony is subject to cross-examination.  *See*, *Joseph S. v. Hogan*, 2011 WL 2848330, at *3 (E.D.N.Y. July 15, 2011).  However, courts still will exclude expert testimony if it "amounts to pure speculation, [such that] it would have no probative value and would not assist the fact finder, be it the Court or the jury." *Hogan*, 2011 WL 2848330 at *2.

## IV.    Valuation Analysis

To the extent that Plaintiff is offering Santangelo's valuations for the purpose of proving damages, they are admissible because: (1) Santangelo is qualified; (2) his valuations reliably apply principals and methods accepted by the American Institute of Certified Public Accountants ("AICPA"); and (3) his valuations are based on sufficient pertinent facts and data.  Fed. R. Evid. 702.

### A.    Relevance

Plaintiff claims that the Expert Reports are intended to "document the investment by Plaintiff into the Defendant entities, trace the movement of funds into each entity, highlight how the Defendant's [sic] financial records were improperly maintained, present the legal theory of 'debt v. equity' . . . [and] document[] . . . the transfer of funds to foreign entities." Opp'n at 4–5. However, he does not explain why any of that is relevant to his claims.  For example, Plaintiff places particular emphasis on "trac[ing] the movement" of his payments to Defendants, but does not explain why that would be relevant to his allegation that Defendants promised him a partnership or stockholder interest in the Corporate Defendants.

While not the rationale Plaintiff sets forth, Santangelo's valuations are relevant to Plaintiff's damages.  If Plaintiff proves that he has a partnership or stockholder interest in JUS Broadcasting Corp. or JUS Punjabi LLC, the Court will need to know the value of said interest. Thus, in light of the flexible *Daubert* standard for bench trials, the Court finds that the valuations are relevant to the extent that Plaintiff plans to use them to prove damages.  Relatedly, the Court

will admit the Expert Reports to the extent that they opine on: (1) how the Corporate Defendants accounted for Plaintiff's payments; and (2) the Corporate Defendants' internal and external transfer of funds, since, presumably, both are relevant to the valuations.

### B.    Expert's Qualifications

Defendants claim that Santangelo is not qualified because he has not valued a media company or published his work before.  Defs.' Mot. at 13.  However, the Court finds that Santangelo is qualified, particularly in light of the flexible *Daubert* standard for bench trials.

The parties did not provide Santangelo's resume with their motion papers, but he testified about his qualifications at his deposition.  Specifically, Santangelo testified that he has: (1) a Bachelor of Science degree; (2) a Masters of Business Administration from New York University in tax and finance; (3) been a licensed Certified Public Accountant in New York and New Jersey since 1982; (4) securities licenses, including a Series 7, Series 64, and Series 66; (5) decades of work experience; and (6) testified as a valuation expert a "couple of dozen" times.  Santangelo Tr. at 5:23–8:12, Dkt. Entry No. 166-4.

The Court will not exclude Plaintiff's expert simply because he has not valued a media company or published his work before.  "[E]xperts may be qualified based on their general expertise even when they lack more specific expertise in the industry in question." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp.3d 227, 281 (E.D.N.Y. 2022) Indeed, the liberal construction of Rule 702 permits "experienced forensic accountant[s] . . . to testify to the valuation of businesses without regard to the particular industry focus of those enterprises." *Washington v. Kellwood Co.*, 105 F. Supp.3d 293, 308–09 (S.D.N.Y. 2015).

Similarly, "[t]here is no requirement that a witness have [sic] previously testified as an expert to be qualified . . . nor must an expert have published scholarly articles on the subject matter

at issue to be qualified under Rule 702." *SEC v. iFresh, Inc.*, 2024 WL 416709, at *4 (E.D.N.Y. Feb. 5, 2024) (citations omitted).   Accordingly, Defendants' assertion that Santangelo is not qualified because he has never been published lacks merit, and their objection to his testimony on this ground is overruled.

      **C.**    **Reliability**

      Santangelo's valuation methodology is reliable.  He utilized standard valuation techniques promulgated by the AICPA, which other courts in this circuit have "recognized . . . as valid for *Daubert* purposes." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp.3d 302, 331–32 (S.D.N.Y. 2022) (admitting AICPA valuation of company in which Plaintiff claimed an interest); *Kellwood*, 105 F. Supp.3d at 327 (admitting accountant's valuation that used the "accounting standards promulgated by the AICPA"); Expert Reports at 16, 46.

      The valuations also were based on sufficient facts and data, including: (1) the Corporate Defendants' tax returns; (2) internal financial information such as the Corporate Defendants' balance sheets; and (3) economic and industry data.  Expert Reports at 31, 62; *See also*, *Lickteig*, 589 F. Supp.3d at 332 (permitting valuation based on "financial projections based upon financial data [including]. . . Balance Sheets . . . [and] board presentations").

      Defendants do not explain how Santangelo's underlying financial data is unreliable. Apparently, Defendant Sandhu "denied the legitimacy" of the financial data at her deposition, but Defendants' motion did not claim that there were any such issues.  Opp'n at 3.  Accordingly, in the absence of any information regarding the alleged issues with the underlying financial data, there is no basis to exclude Santangelo's valuation analysis at this stage.

## V.    **Legal Characterization of Plaintiff's Payments**

      While the *Daubert* standard is flexible for bench trials, the Court will not allow Santangelo to opine on whether and to what extent Plaintiff's payments created a stockholder or partnership

interest in the Corporate Defendants.  *See*, Expert Reports at 4–5, 10–12, 51–52.  Those portions of the Expert Reports must be excluded  as they constitute impermissible legal conclusions.

Courts must "exclu[de] . . . expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).  "Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury." *Id.* at 364.  This principal applies to bench trials and jury trials with equal force. *CIT Grp. Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp.2d 673, 678 (S.D.N.Y. 2011) (prohibiting expert in bench trial from "opin[ing] as to whether certain events constituted a material breach of the Credit Agreement" because the testimony would constitute an "impermissible opinion as to an ultimate legal conclusion in this case"); *Salahuddin*, 564 F. Supp.3d at 86 (excluding expert testimony in bench trial that "[a car] was legally parked" because experts "may not give testimony stating ultimate legal conclusions"); *In re Golden*, 2022 WL 362913, at *14–15 (Bankr. E.D.N.Y. Feb. 4, 2022) (excluding expert opinion in bench trial to the extent it "state[d] legal opinions, interpretations, or conclusions" or opined on "ultimate issues . . . that would supplant the role of the court in interpreting the law and applying the law to the facts").

Whether Plaintiff's payments created a partnership or stockholder interest in the Corporate Defendants is one of the ultimate legal questions in this case.  Plaintiff himself admits that the Expert Reports "present the *legal theory* of 'debt v. equity'" regarding Plaintiff's payments.  Opp'n at 4 (emphasis added).  For example, the Expert Reports: (1) claim that the "participation by Mr. Gill in several management instances strongly suggests that Mr. Gill was seeking to invest in [the Corporate Defendants] as an equity investor"; and (2) reclassified Plaintiff's payments as "equity" instead of "debt" in the valuation analysis, even though Santangelo himself acknowledged that the distinction "did not materially affect [the] valuation[s]." Expert Reports at 12, 51.  Accordingly,

Santangelo may not offer this legal conclusion.

## VI.   Rule 26(a) Disclosure Objections

Defendants argue that Santangelo's testimony and Expert Reports should be excluded because Plaintiff failed to make certain disclosures pursuant to FRCP 26(a). Defendants' objections are overruled because: (1) they are unsupported or factually inaccurate; and (2) Defendants have failed to show that they were prejudiced in any way.

### A.   Applicable Law:

Federal Rule of Civil Procedure 26(a)(2) requires parties to produce "a written report . . . prepared and signed by the [expert] witness," containing, among other things: (1) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; (2) a "list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition"; and (3) a "statement of the compensation to be paid for the study and testimony. . .".

Federal Rule of Civil Procedure Rule 37(c)(1) provides that when "a party fails to provide information . . . required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).   Preclusion is a drastic remedy that should be reserved for rare circumstances, and courts have the discretion to impose less drastic sanctions. *See*, *Cates v. Trustees of Columbia Univ. in City of New York*, 330 F.R.D. 369, 373 (S.D.N.Y. 2019).   A violation of the Federal Rules' disclosure obligations is harmless when there is no prejudice to the party entitled to the disclosure. *Feltenstein v. City of New Rochelle*, 2018 WL 3752874, at *6 (S.D.N.Y. Aug. 8, 2018).

### B.   Analysis

All of Defendants' Rule 26(a) objections are baseless or factually inaccurate, and regardless, Defendants have not shown that they were prejudiced by any alleged nondisclosure:

1. **Disclosure of Fees**: Defendants incorrectly claim that Santangelo refused to disclose the fees he charged to prepare the Expert Reports.  Defs.' Mot. at 12.  Santangelo testified that he was paid $15,000 for his services.  Santangelo Tr. at 21:20–23:24.

2. **Resume and List of Prior Cases**: Defendants assert that Plaintiff did not provide: (1) a formal list of cases in which Santangelo was an expert witness, or (2) Santangelo's resume until the day of his deposition.  Defs.' Mot. at 12, 14.  However, Santangelo testified that his resume included "a list[] of cases [in which he] was an expert witness."  Santangelo Tr. at 7:13–20.  Plaintiff claims that he produced Santangelo's resume "months before the deposition" and Defense Counsel "misplaced" it.  Opp'n at 6.  Either way, Defendants: (1) admit that they eventually received Santangelo's resume, which included the list of cases; and (2) did not explain how the timing of the receipt of the resume affected their ability to question Santangelo at the deposition.

3. **List of Publications**: Defendants note that Plaintiff did not provide a list of Santangelo's publications because he has not been published.  Defs.' Mot. at 12, 14.  However, as discussed above, *Daubert* does not require that experts be published.  *See*, *iFresh, Inc.*, 2024 WL 416709 at *4.

4. **Drafts of the Expert Reports**: Defendants claim that they are entitled to drafts of the Expert Reports, but do not explain why.  Defs.' Mot. at 12.  Moreover, they do not explain how such drafts would be relevant to any claim or defense in this action.

Even if these objections had merit, Defendants do not explain how they were prejudiced by any alleged nondisclosure.  In the absence of any evidence that Defendants were prejudiced, there is no basis for exclusion pursuant to Rule 37. However, to the extent Plaintiff has not provided the Rule 26(a) disclosures **in writing**, he shall do so **by no later than October 11, 2024.**

## VII.   Miscellaneous Objections

Defendants' remaining objections are baseless, conclusory, and lack any supporting authority.  Accordingly, they are overruled as follows:

1. **Bias/Conflict of Interest**: Defendants argue that Santangelo should be disqualified because he and Plaintiff's counsel refer business to and perform services for each other. Defs.' Mot. at 12. Bias or conflict of interest usually are subjects for cross-examination, not grounds for exclusion. While "[a]n expert may be excluded if the expert has a clear conflict of interest or bias *of an extraordinary degree*," that is not the case here. *El Ansari v. Graham*, 2019 WL 3526714, at *8 (S.D.N.Y. Aug. 2, 2019) (collecting cases) (emphasis added).

2. **AICPA Disclaimer**: Defendants claim that the Expert Reports are unreliable because they include a boilerplate disclaimer stating that they "make no representation regarding the sufficiency of the procedures" used. Defs.' Mot. at 11. However, as Santangelo explained in his deposition, this disclaimer is "standard [] language" required by the AICPA. Santangelo Tr. at 43:8–44:1.

3. **Failure to Speak to Accountant/CEO**: Defendants claim that the Expert Reports are unreliable because Santangelo did not speak to the Corporate Defendants' CEO, Sandhu, or their accountant, Niranjan Bapat. Defs.' Mot. at 12. However, Defendants do not cite any authority for this proposition, nor do they explain why it would be necessary for Santangelo to speak with these individuals.

4. **Expert's "Assumptions"**: Defendants claim that the Expert Reports are based on unfounded "assumptions" without explaining what the assumptions are or why they are unfounded. Defs.' Mot. at 13. Courts only "exclude expert testimony if it is . . . based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213–14 (2d Cir. 2009) (internal quotation marks omitted). Less extreme allegations "that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Id.* at 214.

**<u>CONCLUSION</u>**

For the reasons set forth above, Defendants' motion *in limine* is granted in part and denied in part.  Santangelo's valuations of JUS Broadcasting Corp. and JUS Punjabi LLC are admissible.  However, Santangelo may not opine on whether and to what extent Plaintiff's payments created a stockholder or partnership interest in the Defendants, which is an ultimate conclusion for the factfinder in this case.

SO ORDERED.

Dated: Brooklyn, New York
        September 6, 2024

                                                     /s/
                                       DORA L. IRIZARRY
                                United States District Judge